*In re: '318 Patent Infringement Litigation,*
*C.A. No. 05-356 (KAJ) (consolidated) (D. Del.)*

# EXHIBIT K
# to Mylan's Rule 12(c) Motion:

*Lear Corp. v. Bertrand Faure Technical Ctr., Inc.,*
No. 00-CV-72895,
slip op. (E.D. Mich. Sept. 4, 2001)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED

'01 SEP -4 P4:16

LEAR CORPORATION,

      Plaintiff,

vs,

BERTRAND FAURE TECHNICAL
CENTER, INC.,

      Defendant.

Case No. 00-CV-72895
HON. GEORGE CARAM STEEH

## OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION TO BIFURCATE DISCOVERY AND
## TRIAL ON THE ISSUES OF LIABILITY AND DAMAGES, WITH
## DISCOVERY ON THE ISSUE OF WILFULNESS STAYED UNTIL
## THE SECOND DAMAGES PHASE

In this patent infringement case, defendant Bertrand Faure Technical Center, Inc.

("BFTC") moves to bifurcate discovery and trial on the issues of liability from the issues of

damages and wilful infringement. Pursuant to E.D. Mich. Local R. 7.1(e)(2), it is

ORDERED that the motion be resolved without oral argument. For the reasons set forth

below, defendant's motion to bifurcate will be GRANTED, with discovery on the issue of

wilfulness stayed until the second damages phase.

### I. Background

Plaintiff Lear Corporation filed a First Amended Complaint on October 31, 2000

alleging it is the owner of United States Patent No. 5,795,019 ("019 Patent"). Lear alleges

defendant BFTC has known of the patent since at least April 2000. Lear continues by

alleging:

14. [BFTC] has made, used, offered for sale, and/or sold in the United
States certain vehicle seat and headrest arrangements and, as an allegation

likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, Lear asserts that such arrangements include an arrangement known as the Spinal CARE System ®.

15. As an allegation likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, Lear asserts that [BFTC] has offered for sale, to at least one original equipment manufacturer (OEM) of motor vehicles in the United States, the Spinal CARE System ®.

16. As an allegation likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, Lear asserts that [BFTC] has offered the Spinal CARE System ® for sale in the United States through promotion and marketing materials distributed or disseminated in the United States.

17. As an allegation likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, Lear asserts that at least one OEM of motor vehicles in the United States has contracted with [BFTC] for the purchase of the Spinal CARE System ® whether by itself or in conjunction with other products.

October 31, 2000 First Amended Complaint, at 3-4.  In Count I, Lear alleges BFTC is

infringing the 019 Patent "by making, using, offering for sale, or selling in the United States

certain vehicle seat and headrest arrangements, including without limitation the Spinal

CARE System ®." Id, ¶ 19, at 4.  Lear also alleges in Count I that "[s]uch infringement by

[BFTC] has been and/or is willful." Id, ¶ 20, at 4.  Lear seeks declaratory and injunctive

relief, damages, and "a determination that the infringement has been and is deliberate and

willful, and that damages awarded to Lear be trebled or otherwise increased[.]" Id, at 5.

On November 20, 2000, defendant BFTC filed its Answer To First Amended

Complaint and Counterclaim.  By way of affirmative defenses, BFTC alleges it cannot be

held liable for patent infringement due to: laches; patent invalidity; estoppel based on

prosecution history, prior art history, or possible representations, misrepresentations or

omissions; licenses retained by the General Motors Corporation, and; noncompliance with

35 U.S.C. § 287 (patent notice and disclosure).  By way of counterclaim, defendant BFTC

2

seeks a declaration that the 019 Patent is invalid and unenforceable, as well as a declaration that Lear is enjoined from asserting the 019 Patent against BFTC and BFTC's actual or potential customers and suppliers. Defendant BFTC further seeks attorney fees consistent with a finding that this litigation is "exceptional." See 35 U.S.C. § 285 (permitting court to award attorney fees to prevailing party in exceptional cases).

On June 15, 2001, defendant BFTC moved to bifurcate discovery and trial on the issues of patent infringement and validity from discovery and trial on the issues of willfulness and damages. BFTC's argument for bifurcation was based in part on the fact that discovery was scheduled to close on August 31, 2001. On July 2, 2001, plaintiff Lear filed its response, opposing ceratin factual assertions made by BFTC, but "not presently oppos[ing] bifurcating the liability and damages phases of discovery and trial." Lear July 2, 2001 Response, at 2. As a result, the court conducted a July 11, 2001 scheduling conference. At the conference, Lear and BFTC disagreed whether the issue of willful infringement should be the subject of discovery and trial in the initial liability phase of a bifurcated lawsuit, or in the second damages phase of the litigation. The parties were invited to file supplemental briefs on the issue.

## II. Motion to Bifurcate

Federal Rule of Civil Procedure 42(b) authorizes a district court to bifurcate trial on separate issues in furtherance of convenience, to avoid prejudice, or when separate trials will be conducive to expedition and economy. Whether to try issues separately under Rule 42(b) is within the district court's discretion. Yung v. Raymark Industries, Inc., 789 F.2d 397, 400 (6th Cir. 1986); Moss v. Associated Transport, Inc., 344 F.2d 23, 25 (6th Cir.1965). "The party seeking bifurcation has the burden of demonstrating judicial economy would be promoted and that no party would be prejudiced by separate trials."

3

Princeton Biochemicals, Inc. v. Beckman Instruments, Inc., 180 F.R.D. 254, 256 (D. N.J. 1997).

> Factors to be considered include (1) convenience; (2) prejudice; (3) expedition; (4) economy; (5) whether the issues sought to be tried separately are significantly different; (6) whether they are triable by jury or the court; (7) whether discovery has been directed to a single trial of all issues; (8) whether the evidence required for each issue is substantially different; (9) whether one party would gain some unfair advantage from separate trials; (10) whether a single trial of all issues would create the potential for jury bias or confusion; and (11) whether bifurcation would enhance or reduce the possibility of a pretrial settlement.

THK America, Inc. v. NSK Co., Ltd., 151 F.R.D. 625, 632 (N.D. Ill. 1993). In general, patent cases often lend themselves to bifurcation:

> In the normal case separate trial of issues is seldom required, but in a patent infringement suit considerations exist which suggest that efficient judicial administration would be served by separate trials on the issues of liability and damages. The trial of the damages question in such a suit is often difficult and expensive, while being easily severed from the trial of the questions of validity and infringement of the patent. A preliminary finding on the question of liability may well make unnecessary the damages inquiry, and thus result in substantial saving of time of the Court and counsel and reduction of expenses to the parties. Moreover, separate trial of the issue of liability may present counsel the opportunity to obtain final settlement of that issue or appeal without having reached the often time-consuming and difficult damages question.

Acme Resin Corp. v. Ashland Oil, Inc., 689 F. Supp. 751, 753 (S.D. Ohio 1987) (quoting Swofford v. B & W, Inc., 34 F.R.D. 15, 19-20 (S.D.Texas 1963), aff'd, 336 F.2d 406 (5th Cir.1964), cert. denied, 379 U.S. 962 (1965)).

Although Lear and BFTC agree that the instant patent litigation should be bifurcated into separate liability and damages phases, the parties adamantly disagree whether the issue of BFTC's alleged willful infringement should be addressed in the liability or damages phase of this lawsuit. BFTC argues that deferring discovery and trial on the issue of willful infringement until the second damages phase will eliminate the potential for protracted

discovery disputes, avoid a premature waiver of its attorney-client privilege with respect to opinions of counsel, and prevent the unnecessary disclosure of commercially sensitive information. Lear counters that BFTC's alleged willful infringement should be the subject of the initial liability phase because the proofs going to infringement liability and willful infringement overlap and are inextricably bound. Lear also argues that delaying disclosure of BFTC's opinions of counsel until the second damages phase would unfairly permit BFTC to use its attorney-client privilege as both a sword and a shield.

A finding of willful patent infringement permits a court to award up to three times the amount of proven damages. See 35 U.S.C. § 284. As a defense to willful infringement, the alleged infringer is entitled to assert that it relied in good faith upon the advice of its counsel. See Novopharm Ltd. v. Torpharm, 181 F.R.D. 308, 311 (E.D. N.C. 1998); Flex Products Inc. v. BASF, No. 97-CV-60211-AA, 1998 WL 425475, 47 U.S.P.Q.2d 1380, *1381 (E.D. Mich. 1998) (citing Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc., 976 F.2d 1559, 1580 (Fed. Cir. 1992); Thorn EMI N. Am., Inc. v. Micron Tech. Inc., 837 F. Supp. 616, 620-621 (D. Del. 1993)). If the defendant raises this good faith defense, but refuses to waive the attorney-client privilege by disclosing counsel's opinions, an adverse inference may be drawn against the defendant. Flex Products, 47 U.S.P.Q.2d at *1381 (citing Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc., 34 F.3d 1048, 1056-57 (Fed. Cir. 1994)). The defendant is left to chose whether to waive the attorney-client privilege or forego the good faith defense.

> Proper resolution of the dilemma of an accused infringer who must choose between the lawful assertion of the attorney-client privilege and avoidance of a willfulness finding if infringement is found, is of great importance not only to the parties but to the fundamental values sought to be preserved by the attorney-client privilege. An accused infringer, therefore, should not, without the trial court's careful consideration, be forced to choose between waiving the privilege in order to protect itself from a willfulness finding, in which case

It may risk prejudicing itself on the question of liability, and maintaining the privilege, in which case it may risk being found to be a willful infringer if liability is found.  Trial courts thus should give serious consideration to a separate trial on willfulness whenever the particular attorney-client communications, once inspected by the court in camera, reveal that the defendant is indeed confronted with this dilemma.  While our court has recognized that refusal of a separate trial will not require reversal in every case involving attorney client communications bearing on willfulness, we have suggested the advisability of separate trials in appropriate cases. See Fromson v. Western Litho-Plate & Supply Co., 853 F.2d 1568, 1572, 7 USPQ2d 1606, 1611 (Fed. Cir. 1988) ("That approach may be useful in meeting the attorney-client privilege problem.").

Quantum Corp. v. Tandon Corp., 940 F.2d 642, 643-644 (Fed. Cir. 1991).  Considerations of economy, convenience and expediency have been cited as reasons for staying discovery on the issue of willfulness until a second damages phase of litigation.  See Rohm and Haas Co. v. Mobile Oil Corp., 654 F. Supp. 82, 86 (D. Del. 1987) (ruling that the overall efficiency and expediency of the case would be achieved by precluding "discovery involving privileged evidence and the depositions of attorneys . . . during the liability phase for the purpose of establishing willfulness.").

Notwithstanding these considerations, courts have differed whether willful infringement should nonetheless be tried in the liability phase of a bifurcated proceeding due to a potential overlap of evidence.  Reasoning that the issue of willfulness should be tried in the damages phase, one federal district court reasoned:

. . . . We agree with the Fifth Circuit when it stated, ". . . [W]e cannot think of an instance in a patent action where the damage issue is so interwoven with the other issues that it cannot be submitted to the jury independently of the others without confusion and uncertainty, which would amount to a denial of a fair trial." Swofford v. B & W, Inc., 336 F.2d 406, 415 [142 USPQ 291] (5th Cir. 1964).

Before closing our discussion on bifurcation, we must determine whether the issue of willfulness will be heard with liability or damages. This issue is relevant to all three cases currently before us.

Guided by the factors in Rule 42(b), Fed. R. Civ. P., the Court has the

6

discretion to determine whether evidence on willfulness will be heard with liability or damages. See Rohm and Haas Co. v. Mobil Oil Corp., 654 F. Supp. 82 [ 3 USPQ2d 1619 ] (D. Del. 1987). In exercising our discretion, we must consider the concerns of the parties in relationship to the Rule 42(b) factors of prejudice, economy, convenience and expediency.

In defending a willfulness charge, a party may choose to rely on prelitigation opinion letters of counsel regarding the patents in suit. Such reliance will involve the production of documents otherwise protected by the attorney-client privilege. Lilly and Genentech are concerned that compelling them to determine their defense strategy to the willfulness charge and to produce opinion letters at this stage would prejudice the two companies in their liability defense. Specifically, Lilly argues that revealing such opinion letters could be ". . . tantamount to providing the foundation of a party's whole litigation strategy to its opponent." Lilly Br. at 14-15.

After consideration of the parties' viewpoints, we believe that the issue of willfulness should be tried as part of the damages trial. See Rohm, 654 F.Supp. at 86 (holding that for reasons of economy, convenience and expediency, willfulness would be heard in the damages phase). Such construction will avoid the prejudice to Lilly and Genentech that could result if they were forced to provide their opposition with a "detailed 'work product' road map" to arguments Lilly and Genentech desire to use in the liability trial.

In re Recombinant DNA Technology Patent and Contract Litigation, MDL Docket No. 912, 1994 WL 270712, at * 1800 (S.D. Ind. Dec. 22, 1993), See also Princeton Biochemicals, Inc., 180 F.R.D., at 258 (finding that the overlap of evidence on issues of willfulness and commercial success was insignificant, and holding that "the more recent case law . . . holds that willful infringement is more appropriately determined after liability has been established, thereby avoiding even the possibility of prejudice to a patent defendant's litigation rights."); Novopharm Ltd., 181 F.R.D., at 312 (holding that delaying an adjudication of willfulness avoids the possibility of prejudicing a patent defendant's litigation rights even absent a showing of a threat to the attorney-client privilege).

Conversely, another federal district court concluded:

Whether infringement is willful is a question of fact.    A willfulness determination, that is, the defendant's state of mind when it infringed the patent, is a finding of fact inextricably bound to the facts underlying the

alleged infringement. In reaching a willfulness determination, a trial court weighs evidence of the totality of the surrounding circumstances in order to ascertain the infringer's good faith or its willfulness. Factors considered include: the infringer's deliberate copying of the ideas or designs of the inventor, the infringer's knowledge of the inventor's patent rights, any good faith belief of invalidity or non-infringement formed by the infringer after an investigation of the inventor's patent rights, and the infringer's behavior as a litigant. Undoubtedly, because willfulness is determined from the totality of the circumstances, it is the reason why some courts prefer to include the issue of willfulness with the liability phase of a bifurcated trial.

THK America, Inc., 151 F.R.D., at 629-630. See also Foesco, Inc. v. Consolidated Aluminum Corp., 851 F. Supp. 369, 370-371 (E.D. Mo. 1991) (reasoning that "in a majority of cases the willfulness issue has generally been developed during the liability phase of a bifurcated trial", and concluding that discovery as to damages should be conducted at the same time as discovery as to liability issues in order to facilitate settlement negotiations); Kimberly-Clark Corp. v. James River Corp. of Virginia, 131 F.R.D. 607, 609 (N.D. Ga. 1989) (holding that "the willfulness determination, i.e., the defendant's state of mind when it infringed the patent, is a finding of fact inextricably bound to the facts underlying the infringement"); Intellectual Property Development Corp. v. UA-Columbia Cablevision of Westchester Inc., No. 94 Civ. 6296, 1995 WL 81276, at * 1607 (S.D.N.Y. Feb. 28, 1995) (holding that the patent defendant's "request for a stay of discovery of privileged information related to willfulness until after the liability trial is impracticable, as the issues of liability and willfulness closely intertwine").[1]

One rule is consistent throughout the case law: bifurcation issues must be decided in the trial court's discretion on a case-by-case basis. See Yung, 789 F.2d, at 400; Moss,

---

[1] See also Eric M. Dobrusin & Katherine E. White, Intellectual Property Litigation § 7.06[B], at 7-24, 25 (2d ed, 1999) ("At the district level, several courts have bifurcated the willfulness issue from liability issues. However, despite a growing trend toward bifurcation of the willfulness issue, courts still have denied a request to bifurcate or have treated willfulness with liability issues rather than damages.") (footnotes and case cites omitted).

344 F.2d, at 25; Acme Resin Corp., 689 F. Supp., at 752; Princeton Biochemicals, 180

F.R.D., at 256; Intellectual Property Development Corp., 1995 WL 61276, at * 1606. It is

undisputed by Lear and BFTC that bifurcating this litigation into separate liability and

damage phases will promote judicial economy and expedite this matter by deferring

potentially difficult and expensive damages issues until a an initial liability phase is first

completed.  See Moss, 344 F.2d, at 25; Acme Resin Corp., 689 F. Supp., at 753.

Additional considerations of economy and expediency favor staying discovery and trial on

the willfulness issue until the second discovery phase. See Rohm and Haas Co., 654 F.

Supp., at 86.  The potential prejudice to defendant BFTC's litigation rights, should BFTC

now be required to chose between waiving its attorney-client privilege or risk a finding of

liability arising from an evidentiary adverse inverse, also weighs in favor of addressing the

willfulness issue in the second liability phase. See Quantum Corp., 940 F.2d, at 643-644;

Rohm and Haas Co., 654 F. Supp., at 86; In re Recombinant DNA, 1994 WL 270712, at

* 1900; Princeton Biochemicals, Inc., 180 F.R.D., at 258.

     The court is not persuaded that the asserted overlap of issues relating to liability and

willful infringement is significant enough to tip the scales in favor of addressing willful

infringement in the initial liability phase.  In rejecting the argument that evidence of copying

creates an evidentiary overlap favoring a determination of willful infringement in the initial

liability phase of a bifurcated proceeding, one court reasoned:

> Indeed, patent infringement generally requires proof that an individual or
> entity, without authority makes, uses, offers to sell, sells or imports the
> patented invention within the United States, its territories, or its possessions
> during the term of the patent, see 35 U.S.C. § 271(a), while a determination
> of willful infringement focuses on the intent of the infringer.  Hence, in
> assessing liability for the principal offense of patent infringement, courts
> need not conduct an in-depth analysis of the accused infringer's state of
> mind. Plaintiff, however, seeks to bridge a nexus between these two distinct
> causes of action by suggesting that there is an overlap.  Plaintiff has

characterized the inter-relationship as follows: defendant has challenged the validity of the patent in suit as "obvious" and therefore invalid. Thus, since the Supreme Court and the Federal Circuit have held that copying (or, as plaintiff concludes, willful infringement) is strong evidence of non-obviousness, willful infringement is intertwined with the liability issues in question. See Plaintiff's Brief at 12-13 citing Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 441, 31 S.Ct. 444, 55 L.Ed. 527 (1811) and Panduit Corp. v. Dennison Mfg. Co., 774 F.2d 1082, 1099 (Fed.Cir.1985). However, plaintiff's inference that copying is synonymous with willful infringement, is erroneous. Instead, copying is merely evidence of willful infringement. See Herbert F. Schwartz, Patent Law and Practice at 120 n. 654 (2d ed.1995). Consequently, plaintiff may pursue a "copying" defense to non-obviousness and indeed, a determination on this issue in this liability case could be a finding which need not be proven and presented to a jury a second time at a willfulness trial.

Princeton Biochemicals, Inc., 180 F.R.D., at 258 n.3. Similarly, the record here supports

a finding that, while some overlap of proofs is possible, Lear's proofs relating to copying

do not warrant a more detailed and time consuming inquiry into the willfulness issue in the

first stage of this litigation. Id. at 258.[2] The same holds true for Lear's argument that

evidence of BFTC's lack of good faith in investigating the 019 Patent, and the "closeness

of the case", warrant addressing the willful infringement issue in the initial liability phase.

"In determining whether or not infringement exists, the desire or intent to infringe a patent

is irrelevant." THK America, Inc., 151 F.R.D., at 629. It is the court's opinion that the

advantages of bifurcating this litigation into a liability phase and damages phase would be

significantly diminished if discovery and trial on the issue of BFTC's intent and alleged

---

[2] One commentator suggests that allegations of willful infringement should be subject to the "particularity" requirements of Federal Rule of Civil Procedure 9(b), reasoning that "[n]either willfulness nor inequitable conduct should be pled unless and until there is evidence that prima facie supports such charges. Discovery should be permitted to determine whether such evidence exists, and it should not be a basis for resisting such discovery that the allegations have not yet been made. If willfulness is properly alleged, it should be bifurcated and its consideration should be deferred until after liability is established. Any discovery directed to advice given by counsel, or in any other way concerning privileged information should also be deferred to post-liability proceedings." James M. Amend, Patent Law A Primer For Federal District Court Judges, 1998, at 9-10.

wilful infringement were addressed in the initial liability phase.

The court is not persuaded that BFTC gains an unfair advantage by deferring its decision whether to waive its attorney-client privilege until the second damages phase of this litigation. The situation in which a patent defendant improperly uses the privilege as both "a sword and a shield" arises when the defendant relies upon the advice of its counsel to negate the willfulness element of willful infringement (the "sword") while hiding the basis of its good faith belief, the actual opinion, behind the attorney-client privilege (the "shield"). *See* Avery Dennison Corp. v. UCB Films Inc., No. 95 C 6351, 1998 WL 70346, at *4 (N.D. Ill. Sept. 30, 1998). Deferring discovery and trial on the willful infringement issue until the second damages phase will not confer such an unfair advantage upon BFTC; BFTC need not waive its privilege until the second damages phase of this litigation. As stated by one court:

> Delaying an adjudication on willfulness, even absent a specific showing of a threat to the attorney-client privilege, avoids "even the possibility of prejudice to a patent defendant's litigation rights." Princeton Biochemicals, 180 F.R.D. at 258. Thus, like the court in Princeton Biochemicals, this Court finds that, "[h]aving already determined that the instant case should be bifurcated, and thereby finding that there is no significant overlap between issues of liability for patent infringement and willfulness, the issues pertaining to willful infringement are logically reserved for adjudication after liability has been determined. Consequently, this Court need not decide whether there is a Quantum dilemma." 180 F.R.D. at 260. The Court therefore finds that the issue of willful infringement should be tried during the damages stage of this matter.

Novopharm Ltd., 181 F.R.D., at 312.

In summary, the court concludes that the factors of convenience, minimal prejudice to the parties, the expeditious and economic resolution of this matter, the significantly different issues of patent liability and wilful infringement, the significantly different evidence required to develop each issue, and the potential for jury confusion that might arise from

addressing willful infringement in the initial damages phase, weigh in favor of bifurcating this lawsuit into a liability phase and damages phase, with discovery on the issue of willfulness stayed until the second damages phase of litigation. THK America, Inc., 151 F.R.D., at 632. Accordingly,

BFTC's motion to bifurcate discovery and trial on the issues of liability from the issues of damages and wilful infringement is hereby GRANTED. Discovery on the issue of BFTC's alleged willful infringement is hereby STAYED until the second damages phase of this litigation.

SO ORDERED.

GEORGE CARAM STEEH
United States District Judge

Dated: 0 4 SEP 2001
Detroit, Michigan.

12

*In re: '318 Patent Infringement Litigation,*
*C.A. No. 05-356 (KAJ) (consolidated) (D. Del.)*

# EXHIBIT L
# to Mylan's Rule 12(c) Motion:

*Thomcast, A.G. v. Cont'l Elecs. Corp.,*
No. 94-G-2486-S, slip op.
(N.D. Ala. Apr. 24, 1995)

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

'95 APR 24 PM 3:27

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

'APR 24 1995

|   |   |   |
|---|---|---|
| THOMCAST, A.G., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 94-G-2486-S |
| | ) | |
| CONTINENTAL ELECTRONICS | ) | |
| CORPORATION; and ETERNAL WORD | ) | |
| TELEVISION NETWORK, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER OF BIFURCATION

This cause is before the court on defendants' motion to bifurcate discovery and trial of liability issues from willfulness and damages issues and to stay discovery on willfulness and damages issues. Having considered the motion, the submissions of counsel, the oral arguments of counsel, and the applicable law, the court finds that this motion is due to be granted. Accordingly, it is

ORDERED, ADJUDGED and DECREED that the liability issues are hereby BIFURCATED from the issues of willfulness and damages for all purposes. It is

33

FURTHER ORDERED that DISCOVERY REGARDING THE ISSUES OF WILLFULNESS AND DAMAGES is hereby STAYED until the issues of liability are resolved.

DONE and ORDERED this 24th day of April 1995.

UNITED STATES DISTRICT JUDGE
J. FOX GUIN, JR.

2

United States District Court
for the
Northern District of Alabama
April 24, 1995

* * MAILING CERTIFICATE OF CLERK * *

Re: 2:94-cv-02486

True and correct copies of the attached were mailed by the clerk to the
following:

Fournier J Gale III, Esq.
MAYNARD COOPER & GALE
AmSouth Harbert Plaza, Suite 2400
1901 6th Avenue North
Birmingham, AL 35203-2602

David J Hensler, Esq.
HOGAN & HARTSON
Columbus Square
555 13th Street, NW
Washington, DC 20004-1109

Steven P Hollman, Esq.
HOGAN & HARTSON
Columbus Square
555 13th Street, NW
Washington, DC 20004-1109

Susan L Fox, Esq.
HOGAN & HARTSON
Columbus Square
555 13th Street, NW
Washington, DC 20004-1109

G Franklin Rothwell, Esq.
ROTHWELL FIGG ERNST & KURZ PC
555 13th Street, NW
Washington, DC 20004-1109

Vincent M DeLuca, Esq.
ROTHWELL FIGG ERNST & KURZ PC
555 13th Street, NW
Washington, DC 20004-1109

Charles D Ossola, Esq.
LOWE PRICE LEBLANC & BECKER
99 Canal Center Plaza, Suite 300
Alexandria, VA 22314

Timothy R DeWitt, Esq.

.. ..... center Pla..., Suite 300
Alexandria, VA  22314

Harrie R Samaras, Esq.
LOWE PRICE LEBLANC & BECKER
99 Canal Center Plaza, Suite 300
Alexandria, VA  22314

Michael L Edwards, Esq.
BALCH & BINGHAM
PO Box 306
Birmingham, AL  35201-0306

Steven B Harris, Esq.
BOYER EWING & HARRIS
9 Greenway Plaza, Suite 3100
Houston, TX  77041

*In re: '318 Patent Infringement Litigation,*
*C.A. No. 05-356 (KAJ) (consolidated) (D. Del.)*

# EXHIBIT M
# to Mylan's Rule 12(c) Motion:

*Eli Lilly & Co. v. Barr Labs., Inc.*,
No. 1:02-CV-1844-SEB, slip op.
(S.D. Ind. Mar. 31, 2004)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

**ENTERED**

APR 0 1 2004

U.S. CLERK'S OFFICE
INDIANAPOLIS, INDIANA

ELI LILLY AND COMPANY,          )
                                )  Civil Action No. 1:02-CV-1844-SEB
            Plaintiff,          )
                                )  Judge Sarah Evans Barker
      v.                        )
                                )  Magistrate Judge V. Sue Shields
BARR LABORATORIES, INC.,        )
                                )
                                )
            Defendant.          )

## ENTRY

THIS CAUSE COMES before the Court on Defendant Barr Laboratories, Inc.'s Motion

to Bifurcate and Stay Discovery on Plaintiff Eli Lilly and Company's Willful Infringement

Claims.  Having reviewed Defendants' motion and the related pleadings,

IT IS HEREBY ORDERED that Barr's motion to bifurcate Lilly's willfulness claims is

GRANTED and all discovery on Lilly's willful infringement claims is STAYED until

resolution of all liability issues.

Dated: March 31 , 2003

Sarah Evans Barker
Hon. Sarah Evans Barker
United States District Judge
United States District Court for the
Southern District of Indiana

Copy to:

Terri L. Bruksch
BARNES & THORNBURG
tbruksch@btlaw.com

L. Scott Burwell
FINNEGAN HENDERSON FARABOW
GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190-5675

Vincent L. Capuano
STERNE KESSLER GOLDSTEIN & FOX,
P.L.L.C.
1100 New York Ave., N.W.
Washington, DC 20005

Paul S. Berghoff
S. Richard Carden
Nicole A. Fiorella
David M. Frischkorn
MCDONNELL BOEHNEN HULBERT &
BERGHOFF
300 South Wacker Drive
Chicago, IL 60606

Jan M. Carroll
BARNES & THORNBURG
jan.carroll@btlaw.com

Grantland G. Drutchas
MCDONNELL BOEHNEN HULBERT &
BERGHOFF
drutchas@mbhb.com

Thomas C. Fiala
STERNE KESSLER GOLDSTEIN & FOX,
P.L.L.C.
1100 New York Ave., N.W.
Washington, DC 20005

James F. Hurst
George C. Lombardi
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601

Laura P. Masurovsky
FINNEGAN HENDERSON FARABOW
GARRETT & DUNNER, LLP
laura.masurovsky@finnegan.com

David S. Forman
Charles E. Lipsey
Robert F. McCauley
FINNEGAN HENDERSON FARABOW
GARRETT & DUNNER, LLP
1300 I Street, N.W.
Washington, DC 20005-3315

Robert C. Millonig Jr.
STERNE KESSLER GOLDSTEIN & FOX,
P.L.L.C.
1100 New York Ave, N.W.
Washington, DC 20005

Michael Rabinowitch
WOODEN & MCLAUGHLIN LLP
mrabinowitch@woodmaclaw.com

Christine J. Siwik
WINSTON & STRAWN LLP
csiwik@winston.com

*In re: '318 Patent Infringement Litigation,*
*C.A. No. 05-356 (KAJ) (consolidated) (D. Del.)*

# EXHIBIT N
# to Mylan's Rule 12(c) Motion:

*SmithKline Beecham Corp. v. Teva Pharms. USA, Inc.*,
No. 02-3779(JWB), slip op.
(D.N.J. Mar. 5, 2003)

28

RECEIVED
WILLIAM T. WALSH, CLERK

2003 MAR -6  A 11: 38

FILED   ENTERED
ON
THE DOCKET

MAR 0 6 2003   MAR 0 7 2003

UNITED STATES
DISTRICT COURT

AT 8:30
WILLIAM T. WALSH
CLERK
By_____  WILLIAM T. WALSH, CLERK
(Deputy Clerk)

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SMITHKLINE BEECHAM CORPORATION:
d/b/a GLAXOSMITHKLINE,

        Plaintiff,

      v.

TEVA PHARMACEUTICALS USA, INC.,

        Defendant.

Civil Action No. 02-3779(JWB)

O R D E R

For the reasons set forth in the Court's Opinion filed

herewith,

It is on this ___ day of March, 2003,

ORDERED that defendant's motion for a separate trial and a

stay of discovery on willfulness and damages be, and it hereby

is, granted.

RECEIVED
MAR 13 2003

JOHN W. BISSELL
Chief Judge
United States District Court

<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SMITHKLINE BEECHAM CORPORATION:
d/b/a GLAXOSMITHKLINE,

            Plaintiff,   :

                   :   Civil Action No. 02-3779(JWB)

        v.          :

                             **O P I N I O N**

TEVA PHARMACEUTICALS USA, INC., :

            Defendant.  :

<u>APPEARANCES:</u>

DRINKER BIDDLE & REATH
By:  John J. Francis, Jr., Esquire
500 Campus Drive
Florham Park, New Jersey  07932-1047
(Attorneys for Plaintiff)

WOLF, BLOCK, SCHORR and SOLIS-COHEN
By:  Robert J. Fettweis, Esquire
744 Broad Street, Suite 1515
Newark, New Jersey  07102

        - and -

KENYON & KENYON
By:  James Galbraith, Esquire
     Steven J. Lee, Esquire
One Broadway
New York, New York  10004
(Attorneys for Defendant)

**BISSELL,** <u>Chief Judge</u>

This matter comes before the Court on a motion by defendant Teva Pharmaceuticals USA, Inc. ("Teva") for a separate trial and a stay of discovery on willfulness and damages. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1338.

FACTS AND BACKGROUND

This motion arises from a patent infringement suit filed by plaintiff SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("SKB") to protect its rights under U.S. Patent 4,602,017 ("'017 patent"). (Bateman Decl., Exh. 1). The '017 patent claims, <u>inter alia</u>, the compound 3,5-Diamino-6-(2,3-dichlorophenyl)-1,2,4-triazine, commonly known as lamotrigine. (Plaintiff's Br. at 2). The '017 patent also claims pharmaceutical compositions comprising lamotrigine and methods of treating convulsions or epilepsy using lamotrigine. (<u>Id</u>.) Plaintiff sells and markets lamotrigine under the trade name Lamictal. (<u>Id</u>.)

Under the Hatch-Waxman Act, a party who wishes to make a generic version of a drug protected by an unexpired patent must file with the Food and Drug Administration ("FDA") an Abbreviated New Drug Application ("ANDA") for the generic version. 21 U.S.C. § 355(j). The ANDA must include a certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) ("Paragraph IV certification") stating that the patent is invalid and/or will not be infringed by the generic version. Filing a Paragraph IV certification is a

2

technical act of patent infringement. 35 U.S.C. § 271(e)(1)(A);
Eli Lilly & Co. v. Medtronic, Inc., 496 U.S. 661, 678 (1990). In
addition to filing an ANDA with the FDA, the generic manufacturer
must give notice of the ANDA and Paragraph IV certification
("Paragraph IV notice") to the patent holder. 21 U.S.C. §
355(j)(2)(B)(i). The Paragraph IV notice must include a detailed
statement of the legal and factual basis for the generic
manufacturer's contention that the patent is invalid or will not
be infringed by the generic version. 21 U.S.C. §
355(j)(2)(B)(ii).

The FDA may approve the generic manufacturer's ANDA unless
the patent holder files suit against the generic manufacturer
within 45 days of receiving the Paragraph IV notice. 21 U.S.C. §
355(j)(5)(B)(iii). If the patent holder sues within 45 days, the
FDA may not approve the ANDA for 30 months, or until the patent
dispute has been resolved, whichever is earlier. 21 U.S.C. §
355(j)(5)(B)(iii).

In the case at bar, Teva filed ANDAs seeking FDA approval to
market generic versions of SKB's lamotrigine tablets and
lamotrigine chewable dispersible tablets ("CDT"). These ANDAs
were filed on April 1, 2002 and May 28, 2002, respectively.
(Francis Decl., Exhs 1, 2). Pursuant to the Hatch-Waxman Act,
Teva submitted a Paragraph IV certification with each ANDA that

3

every claim except claim 5[1] of the '017 patent is either invalid
or would not be infringed by the commercial manufacture, use or
sale of the lamotrigine product covered in the ANDA.[2] (Francis
Decl., Exhs. 1, 2). The FDA accepted Teva's ANDAs. Teva
subsequently sent Paragraph IV notice to SKB in which Teva set
forth the factual and legal bases for its contentions that the
claims of the '017 patent are invalid and/or not infringed,
pursuant to 21 U.S.C. § 355(j)(2)(B)(ii). SKB received Teva's
Paragraph IV notices in June 2002 and August 2002 and timely
filed separate infringement actions against Teva on August 5,
2002 and September 18, 2002. The cases were consolidated by this
Court on November 27, 2002.

Because plaintiff SKB timely filed suit, the FDA is not
permitted to approve Teva's ANDA for lamotrigine tablets until
December 2004 nor its ANDA for lamotrigine CDT until February
2005. Until a generic manufacturer's ANDA has been approved, the
manufacturer is precluded from commercially marketing the product
covered by the ANDA. As such, Teva has not done so. On January

---

[1]    Claim 5 pertains to an injectable solution containing
lamotrigine. (Bateman Decl., Exh. 1). As Teva's ANDAs cover
only lamotrigine tablets and lamotrigine CDT, Teva asserts that
this claim covering injectable solution is not infringed, and SKB
appears to agree. (Bateman Decl., Exh. 5 at 6; Plaintiff's Br.
at 3 n.2).

[2]    Teva's lamotrigine CDT ANDA also included a Paragraph
IV certification that SKB's U.S. Patent No. 5,698,226 ("'226
patent") was invalid and/or not infringed, but SKB did not assert
the '226 patent against Teva in the instant suit.

4

31, 2003, Teva filed the instant motion for a separate trial on
the issues of liability and willfulness and for a stay of
discovery on willfulness and damages.

**DISCUSSION**

**I.  Bifurcation of Liability and Damages in Patent Cases**

Pursuant to Federal Rule of Civil Procedure 42(b), a court
may bifurcate a trial if it would be "in furtherance of
convenience or to avoid prejudice, or when separate trials will
be conducive to expedition and economy."  The court's decision to
bifurcate must be made on a case-by-case basis, taking into
account various considerations of complexity, convenience and
efficiency, prejudice to the parties and economy of resources.
Emerick v. U.S. Suzuki Motor Corp., 750 F.2d 19, 22 (3d Cir.
1984); Lis v. Robert Packer Hosp., 579 F.2d 819, 824 (3d Cir.
1978).[3]  The movant bears the burden of demonstrating that

---

[3]    The district court in Valois of America, Inc. v. Risdon
Corp. set forth a more detailed list of factors that a court
should consider in deciding whether bifurcation of discovery
and/or trial is warranted in a case such as the present suit:

> whether a stay of discovery is uneconomical
> and a waste of judicial resource, whether a
> needless delay will be created, the
> complexity of the case, potential juror
> confusion, the stage of the litigation at
> which the request is made, whether any delay
> in filing such motion was a tactical
> strategy, the overlap of evidence and
> witnesses between liability and willfulness,
> the prejudice to patent owner by delaying the
> ultimate conclusion of the case, the risk of
> prejudice as to the liability issues which

5

judicial economy would be promoted and that neither party would
be prejudiced by bifurcation.[4]  Princeton Biochemicals. Inc. v.
Beckman Instruments. Inc., 180 F.R.D. 254, 256 (D.N.J. 1997); F&G
Scrolling Mouse, L.L.C. v. IBM Corp., 190 F.R.D. 385, 387
(M.D.N.C. 1999).  Accordingly, bifurcation is unwarranted if it
would result in prejudice to one party, duplicative effort,
inconvenience to the parties and the court, undue delay or
expense.  (Id.)

   Although bifurcation is the exception rather than the rule,
it is common in patent litigation.  See, e.g., Pfizer Inc. v.
Novopharm Ltd., No. 00 C 1475, 2000 WL 1847604, *1 (N.D. Ill.
Dec. 14, 2000) (citing Real v. Bunn-O-Matic Corp., 195 F.R.D.

---

           may result from disclosure, and the prejudice
           of having counsel who wrote the opinions
           disqualified as trial counsel.

Valois of America. Inc. v. Risdon Corp., No. 3-95-CV-1850-AHN,
1998 WL 1661397, *3 (D. Conn. Dec. 18, 1998), cited in Baer, et
al., supra, at 681.

   [4]   A unique form of prejudice particular to willful
infringement cases occurs where an "accused infringer [is]
presented with a Hobson's choice between waiving the attorney-
client privilege in order to mount an 'advice of counsel' defense
and maintaining the privilege with the risk that it will be found
to be a willful infringer if liability is found."  Pfizer, 2000
WL 1847604 at #2.  This situation has become known as a Quantum
dilemma, after Quantum Corp. v. Tandon Corp., 940 F.2d 642, 643-
44 (Fed. Cir. 1991).  The court in Quantum counseled, "Trial
courts thus should give serious consideration to a separate trial
on willfulness whenever the particular attorney-client
communications, once inspected by the court in camera, reveal
that the defendant is indeed confronted with this dilemma."  (Id.
at 644).

                                6

618, 620 (N.D. Ill. 2000)) (Bateman Decl., Exh. 8); <u>Johns Hopkins v. Cellpro</u>, 160 F.R.D. 30, 33 (D. Del. 1995) ("Historically, courts have found it worthwhile to hold separate trials on liability and damages issues in patent cases."); Baer, et al., <u>supra</u>, at 676 ("[B]ifurcation is more common in patent disputes than in many other types of litigation."); Steven S. Gensler, <u>Bifurcation Unbound</u>, 75 Wash. L. Rev. 705, 725 (2000) (same).  In addition, bifurcation in a bench patent trial "poses fewer practical problems[] and is ... more easily granted" than in a jury trial, which "the majority of district courts view ... as impractical."  Stephen A. Soffen & J. Anthony Lovensheimer, <u>Discovery and Use of Opinions in Litigations</u>,  668 PLI/Pat 101, 124-25 (Nov. 2001).  Here, the parties are seeking a bench trial.  The Court notes, however, that "the mere status of being a patent case does not create a presumption or inference in favor of bifurcation and separate trials."  <u>F&G Scrolling Mouse</u>, 190 F.R.D. at 387.

## II.  Application

In the instant motion, defendant argues that (1) bifurcation is especially appropriate in an ANDA case; (2) bifurcation is appropriate because Teva has not sold the accused product and therefore there are no actual damages; (3) willfulness is only relevant to damages (attorneys' fees) so that bifurcation would avoid potentially unnecessary discovery and trial, as well as

protect Teva from a "Quantum dilemma"; and (4) bifurcation will
not make the case more expensive to litigate.  Plaintiff argues
that (1) bifurcation is rare in ANDA cases; (2) bifurcation will
cause delay and additional expense; (3) there is overlap between
the issues to be bifurcated; and (4) Teva will not be prejudiced
if the case is not bifurcated because it has already provided SKB
with the statutorily required "detailed statement" setting forth
the factual and legal bases for its contentions on the merits.

   1.  Bifurcation in ANDA Cases

   Defendant cites to several unreported decisions in which
courts bifurcated ANDA matters, including one in this District:
Ortho-McNeil, et al. v. Teva Pharmaceuticals USA, Civ. A. No. 02-
2794(GEB) (D.N.J. Jan. 28, 2003) (Bateman Reply Decl., Exh. 15);
Pfizer, 2000 WL 1847604;[5] and In re '639 Patent Litig., Civ. A.
No. 97-12416-RCL, Slip. Op. (D. Mass. Dec. 6, 1999) (Bateman
Decl., Exh. 10).  Although they are not precedential, they are
nonetheless persuasive.  In each case, the court determined that
bifurcation was warranted either to prevent a Quantum dilemma or
in the interest of judicial economy.  However, this Court
recognizes that because each case is unique, "only the specific
facts and circumstances of the case before the court can provide
the answer to the question of whether the advantages of

_____

   [5]   This case was published in the United States Patent
Quarterly.  See Pfizer, 57 U.S.P.Q. 2d 1442 (N.D., Ill. 2000).

8

bifurcation outweigh the disadvantages." <u>F&G Scrolling Mouse</u>,
190 F.R.D. at 387.

Plaintiff cites a number of cases in which bifurcation was
denied, but only one involves an ANDA: <u>Knoll Pharmaceuticals
Co., Inc. v. Teva Pharmaceuticals USA, Inc.</u>, No. 01-C-1646, 2001
WL 1795592 (N.D. Ill. Aug. 24, 2001). (Plaintiff's Br. at 4-5).
In that case, the court denied bifurcation because it would need
to empanel a second jury and the defendant did not offer any
documents for <u>in camera</u> review. (<u>Id.</u> at *2). In the case at
bar, the parties have requested a bench trial, which means that
"the efficiency concerns do not loom so large. [The Court] will
be the factfinder both as to liability and willfulness.... [so
that] [t]he case will simply move, if necessary, from one issue
to the next with a single factfinder." <u>In re '639 Patent Litig.</u>
(Bateman Decl., Exh. 10 at 3).

Thus, the mere fact that this is an ANDA case does not
preclude bifurcation. The Court next considers other factors
such as efficiency, judicial economy and prejudice to the parties
in determining whether bifurcation is warranted in this case.

2. <u>Efficiency and Judicial Economy</u>

Defendant argues that bifurcating the trial and staying
discovery on the willfulness issue will promote efficiency and
judicial economy because if the '017 patent is found to be
invalid, there would be no need for any additional proceedings on

9

willfulness or damages. Further, even if the Court were to find that the '017 patent is valid, a determination of willfulness is relevant only to the calculation of damages. Defendant Teva argues that there can be no actual damages in this case, where Teva has not yet marketed the products covered by its ANDAs; therefore, a finding of willfulness would only generate an award of attorneys' fees. Plaintiff of course contends that bifurcation will lengthen the proceedings and cause additional delay and expense as there is significant overlap between the issues.

Because there is only one patent-in-suit, the issues are not especially complex. Moreover, "[a] case involving an [ANDA] ... is less likely to be considered complex." Baer et al., supra, at 688; see also In re '639 Patent Litig., (Bateman Decl., Exh. 10 at 5). Although plaintiff argues that this factor weighs in favor of a unified trial, defendant contends that it signifies that the liability portion could be resolved quickly, potentially obviating the need for any additional proceedings. See Princeton Biochemicals, 180 F.R.D. at 256 ("'A preliminary finding on the question of liability may well make unnecessary the damages inquiry, and thus result in substantial saving of time of the Court and counsel and reduction of expense to the parties.'" (quoting Smith v. Alyeska Pipeline Serv. Co., 538 F. Supp. 977, 982-83 (D. Del. 1982))). Should plaintiff prevail on liability,

10

however, both parties acknowledge that any additional discovery on willfulness would consist of "little more than a handful of documents and an additional witness or two." (Defendant's Reply Br. at 6 (quoting Plaintiff's Br. at 6)). Although in so stating plaintiff is attempting to minimize the burden that would be caused by trying both issues together, the Court agrees with defendant that plaintiff's arguments "belie its position that separate discovery and trial on willfulness would be time-consuming." (Defendant's Reply Br. at 6). The Court notes, however, that "if the damage phase will be very simple, bifurcation may not be justified." F&G Scrolling Mouse, 190 F.R.D. at 388.

Most importantly, the Court is not persuaded that there would be any overlap between the witnesses or evidence required to show that the claims of the patent-in-suit are invalid or not infringed and the witnesses who would likely testify as to willfulness. "[A] determination regarding patent infringement [] does not require a detailed inquiry into the elements of willful infringement." Princeton Biochemicals, 180 F.R.D. at 258; see also Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17, 25 (1997) (holding that proof of intent is not required under either literal or doctrine of equivalents infringement analysis). As defendant points out, a patent attorney who gave Teva advice about the patent-in-suit and/or a decision-maker at

11

Teva who received and relied upon that advice would likely testify as to willfulness;[6] outside experts in the relevant technology or individuals knowledgeable about the prior art would likely testify about validity. (Defendant's Reply Br. at 7). The Court is also not persuaded by plaintiff's rather tenuous arguments concerning its need for defendant's detailed financial information at this juncture. (Compare Plaintiff's Br. at 7-8 with Defendant's Reply Br. at 7-8). Indeed, the court in Princeton Biochemicals rejected the plaintiff's claim that commercial success constituted grounds for overlap: "The question of commercial success is not ordinarily determined by a detailed analysis of exhaustive and intricate financial data, such as is required for proof of damages." 180 F.R.D. at 259. Instead, the court reasoned that basic sales information about quantities sold was sufficient. (Id.) In this case, however, defendant has never marketed the product at issue and, in fact, mounts no serious challenge to the commercial success of plaintiff's drug Lamictal. (Defendant's Reply Br. at 8 ("SKB has been selling its lamotrigine tablets for many years.")) The Court rejects SKB's attempt to establish overlap through commercial success by relying on economic discovery from Teva.

---

[6]     The opinion letter written by the patent attorney about the validity of the patent-in-suit also goes to willfulness, but defendant argues that plaintiff's discovery demand for this letter has caused a Quantum dilemma. (See Discussion, infra, section 3.

### 3.  Prejudice to the Parties

Defendant argues that it would be severely prejudiced if it had to waive attorney-client privilege and disclose its opinion of counsel before a determination of liability is made; in other words, defendant contends that it faces a classic "Quantum dilemma." Plaintiff argues that defendant has not demonstrated that it would be so prejudiced and, moreover, that defendant would not be prejudiced by disclosure because it previously served SKB with the statutorily required "detailed statements" setting forth the bases of its contentions on liability issues.

As discussed above, a party faces a Quantum dilemma when

> [a]n accused infringer ... [is] forced to
> choose between waiving the [attorney-client]
> privilege in order to protect itself from a
> willfulness finding, in which case it may
> risk prejudicing itself on the question of
> liability, and maintaining the privilege, in
> which case it may risk being found to be a
> willful infringer if liability is found.

Quantum, 940 F.2d at 644; see also Ortho-McNeil, (Bateman Reply Decl., Exh. 15 at 7-8), ("[T]he Court is mindful of the fact that allowing Plaintiffs to pursue discovery on the willful infringement issue may cause Defendant to prematurely waive its attorney-client privilege thereby possibly prejudicing its case.")  Although the discovery process is designed to minimize surprise at trial, if plaintiff were to gain access to Teva's opinions of counsel at this juncture, it would be provided with "insights not only to any vulnerabilities of the defendant[']s

13

positions, but to the defendant[']s likely trial strategy as well." <u>In re '639 Patent Litig.</u>, (Bateman Decl., Exh. 10 at 5). As such, it is the law of this District that "willful infringement is more appropriately determined after liability has been established, thereby avoiding even the possibility of prejudice to a patent defendant's litigation rights." <u>Princeton Biochemicals,</u> 180 F.R.D. at 258.

Finally, the Court rejects plaintiff's argument that Teva could not be prejudiced by disclosure of the opinion letter because Teva previously served SKB with the same information in its Paragraph IV notice pursuant to 21 U.S.C. § 355(j)(2)(B)(ii). If Paragraph IV notices were in fact "virtually verbatim copies" of the accused infringer's counsel's opinion (Plaintiff's Br. at 10), there would be no such thing as a <u>Quantum</u> dilemma: "If the mere fact that the accused infringer had previously given the patent owner the bases of its liability contentions meant that no prejudice could flow from disclosure of privileged opinions, then willfulness would never be bifurcated from liability to avoid the <u>Quantum</u> dilemma." (Defendant's Reply Br. at 9-10). Furthermore, in the words of Judge Wolfson in <u>Princeton Biochemicals,</u> "this Court need not decide whether there is a <u>Quantum</u> dilemma. Instead, this Court has averted any possibility of prejudice to defendant by reserving the question of willfulness pending a finding of liability." 180 F.R.D. at 260.

14

The Court has decided "to strike the balance of convenience in favor of bifurcation." Pfizer, 2000 WL 1847604 at *4. In camera examination of the documents at issue prior to resolving the bifurcation question is not required. 2 Attorney-Client Privilege in the U.S. § 9:48 (citing Home Elevators, Inc. v. Millar Elevator Serv. Co., 933 F. Supp. 1090, 1092 (N.D. Ga. 1996); IPPV Enter. v. Cable/Home Communication Corp., No. 91-1541-K(M), 1993 WL 186168 (S.D. Cal. Jan. 4 1993)). Bifurcated hearings may be ordered when judicially economical. (Id., citing Pfizer, 2000 WL 1847604 at *3); see also Ortho-McNeil, (Bateman Reply Decl., Exh. 15 at 7-8). The interests of efficiency and judicial economy, the fact that the parties have requested a bench trial, and plaintiff's failure to demonstrate overlap between the evidence required to establish liability and willfulness all weigh in favor of bifurcation. In addition, the risk of delay and extra expense are non-issues since any additional discovery subsequent to a finding of liability would admittedly be minimal. (Defendant's Reply Br. at 6; Plaintiff's Br. at 6).

15

## CONCLUSION

For the foregoing reasons, defendant's motion for a separate trial and a stay of discovery on willfulness and damages is granted.

JOHN W. BISSELL
Chief Judge
United States District Court

DATED: March 5, 2003

16

*In re: '318 Patent Infringement Litigation,*
*C.A. No. 05-356 (KAJ) (consolidated) (D. Del.)*

# EXHIBIT O
# to Mylan's Rule 12(c) Motion:

*Ortho-McNeil v. Teva Pharms. USA,*
No. 02-2794(GEB), slip op.
(D.N.J. Jan. 28, 2003)

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ORTHO-MCNEIL, et al.,                    :        Civil Action No.: 02-2794(GEB)
                                          :
        Plaintiffs,                       :
                                          :
        v.                                :
                                          :        O R D E R
TEVA PHARMACEUTICALS USA,                 :
                                          :
        Defendant.                        :
_____ :

        This matter having come before the Court upon Motion of the Defendant Teva

Pharmaceuticals USA to Bifurcate Trial and to Stay Discovery [Docket entry #22], returnable

December 2, 2002; and Plaintiffs having submitted Opposition and a Sur-Reply; and Defendant

having submitted a Reply; and the Court having reviewed all parties' submissions and considered

the matter pursuant to FED. R. CIV. P. 78; and for the reasons stated in the accompanying

Memorandum Opinion; and good cause having been shown;

        IT IS on this _____ day of January, 2003,

        ORDERED that Defendant Teva Pharmaceuticals USA's Motion to Bifurcate Trial and to

Stay Discovery is granted; and it is

        FURTHER ORDERED that discovery on willfulness is hereby stayed and trial on

liability and willfulness will be bifurcated .

                                          JOHN J. HUGHES
                                          UNITED STATES MAGISTRATE JUDGE


                                                          TOTAL P.04

FROM

ORIGINAL FILED

NOT FOR PUBLICATION

JAN 3 0 2003

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

WILLIAM T. WALSH, CLERK

| | | |
|---|---|---|
| ORTHO-MCNEIL, et al., | : | Civil Action No.: 02-2794(GEB) |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| TEVA PHARMACEUTICALS USA, | : | |
| | : | MEMORANDUM OPINION |
| Defendant. | : | |

HUGHES, U.S.M.J.

This matter is before the Court upon the Motion of the Defendant, Teva Pharmaceuticals

USA ("Defendant or Teva"), to Bifurcate Trial and to Stay Discovery pursuant to FED. R. CIV. P.

42(b). Plaintiffs, Ortho-McNeil Pharmaceutical, Inc., Johnson & Johnson, Pharmaceutical

Research & Development, LLC, and Daiichi Pharmaceutical, Co., Ltd. ("Plaintiffs") oppose the

Motion. The Court has reviewed the written submissions of the parties and considered the matter

pursuant to FED. R. CIV. P. 78. For the reasons that follow, the Defendant's Motion is granted.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, Daiichi Pharmaceutical Co., Ltd. is the owner of the '407 patent, known as

Levaquin® that was licensed to Plaintiffs, Ortho-McNeil Pharmaceutical, Inc. and Johnson &

Johnson Pharmaceutical Research and Development, LLC. Defendant Teva filed an abbreviated

new drug application ("ANDA") with the United States Food and Drug Administration ("FDA")

in order to obtain approval to manufacture and market drug products containing levofloxacin.

The ANDA included a Paragraph IV Certification asserting Teva's opinion that the '407 patent

was invalid, unenforceable, or not infringed. Subsequent to Teva's filing an ANDA, Plaintiffs

filed the present action as authorized by 35 U.S.C. § 271(e)(2).

In the present action, Plaintiffs allege that Teva willfully infringed its U.S. Patent No.

5,053,407 ("the '407 patent") when Teva submitted an ANDA with the United States FDA in

order to obtain approval to manufacture and market a generic version of Levaquin®.

Specifically, Plaintiffs allege that Defendant's infringement of its Patent '407 is willful because

Defendant was "[f]ully aware that a valid and enforceable patent protect[ed] the LEVAQUIN®

products. . . [when it] deliberately created copies of [them] . . . ." (Pls.['] Br. at 2).

Teva challenges the validity of the '407 patent, owned by Plaintiff, Daiichi

Pharmaceutical Co., Ltd. and argues that the patent is invalid. Teva has filed counterclaims

seeking a declaration that the '407 patent is invalid and an award of attorney's fees.

Additionally, Defendant states that it has yet to market or sell any product containing the

ingredient in issue, and thus, there are no damages, nor are any damages sought by the Plaintiffs.

Therefore, Teva brings the present Motion seeking an Order from this Court bifurcating trial and

staying discovery on the willful infringement issue, arguing that separating the liability issue of

validity from willfulness will promote efficiency, convenience and prevent prejudice. (Def.['s]

Br. at 1).

On the other hand, Plaintiffs contend that bifurcation is the exception and not the rule in

patent cases and where the issues of liability and willful infringement are intertwined, as here, the

moving party has the burden of showing why bifurcation is necessary. Of course, Plaintiffs argue

that Defendant has failed to meet the necessary burden to bifurcate trial and stay discovery on the

issue of willful infringement. Defendant challenges Plaintiffs' position that liability and willful

FROM

infringement are intertwined and argues that willful infringement is "relevant only to the issue of attorney's fees pursuant to 35 U.S.C. § 285 . . . ." (*Id.* at 3). Therefore, Defendant argues that the issues of liability and willful infringement can fairly be separated for trial purposes.

In addition to the issues of liability and willful infringement being intertwined, Plaintiffs argue that bifurcating trial will impose unnecessary delay and burden upon the parties because of the costs of additional discovery, preparation, and trial. (Pls.['] Br. at 3, 6). To the contrary, Defendant argues that bifurcating trial and staying discovery on the willfulness issue will promote efficiency as well as judicial economy and offers three arguments to support its position. First, Defendant argues that should the '407 patent be found invalid, there will be no need for discovery or fact-finding on the willfulness issue because there would necessarily be no infringement, willful or otherwise. Second, Defendant contends that even if the '407 patent is found to be valid, a determination of willful infringement is relevant only to the issue of awarding attorney's fees. Lastly, Defendant asserts that attorney's fees are awarded only in exceptional cases of willful infringement and here, where there are no damages, there cannot be such a finding.

More importantly, Defendant argues that bifurcating trial and staying discovery will avoid the need for it to prematurely decide whether to waive attorney-client privilege in order to defend allegations of willfulness when the prevailing party on the invalidity issue has yet to be determined. Plaintiffs challenge Defendant's argument by reasserting that (1) bifurcation of trial will cause unnecessary delay and duplication of evidence and (2) the risk of disclosing privilege prematurely is a conflict that Defendant, itself, created when it used the same law firm for trial and opinion. Thus, Plaintiffs argue that the conflict created by Defendant itself does not justify

3

FROM

bifurcation. Nevertheless, Defendant requests bifurcation of trial and staying discovery on the willful infringement issue because without it, it would otherwise cause a significant risk of unfair prejudice. (*See* Def.['s] Mem. at 11).

## II.    DISCUSSION

Pursuant to FED. R. CIV. P. 42(b), a court may bifurcate a trial if it would be "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy[.]" FED. R. CIV. P. 42(b). "[T]he decision to bifurcate . . . is a matter to be decided on a case-by-case basis and must be subject to an informed discretion by the trial judge in each instance." *Lis v. Robert Packer Hospital*, 579 F.2d 819, 824 (3d Cir. 1978), *cert. denied*, 429 U.S. 955 (1978). The moving party has the burden of demonstrating that judicial economy would best be served by bifurcating the case, and that no party would be unduly prejudiced by having separate trials. *Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.*, 180 F.R.D. 254, 256 (D.N.J. 1997); *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 101 (N.D.Cal. 1992).

Bifurcation would be unwarranted if it would result in duplication of effort, inconvenience to the parties and the Court, undue delay, unreasonable expense, or prejudice. *Princeton Biochemicals, Inc.*, 180 F.R.D. at 256; *Johns Hopkins University v. Cellpro*, 160 F.R.D. 30, 32 (D.Del. 1995).

### A.    Bifurcating Liability

Federal courts have bifurcated patent cases when the party seeking bifurcation has demonstrated that the issues are complex and would involve the presentation of extensive evidence, which could result in jury confusion and prejudice to the parties. *Princeton*

4

FROM

*Biochemicals, Inc.*, 180 F.R.D. at 257; *Spectra-Physics Lasers, Inc.*, 144 F.R.D. at 101; *B. Braun*

*Medical Inc. v. Abbott Laboratories*, 1994 WL 468155, at *1 (E.D.Pa. August 24, 1994).

In *Smith v. Alyeska*, the court noted:

> In the normal case separate trial of issues is seldom required, but in
> a patent infringement suit considerations exist which suggest that
> efficient judicial administration would be served by separate trials
> on the issues of liability and damages. The trial of the damages
> question in such a suit is often difficult and expensive, while being
> easily severed from the trial of the questions of validity and
> infringement of the patent. A preliminary finding on the question
> of liability may well make unnecessary the damages inquiry, and
> thus result in substantive saving of time of the Court and counsel
> and reduction of expense to the parties. Moreover, separate trial of
> the issue of liability may present counsel the opportunity to obtain
> final settlement of that issue or appeal without having reached the
> often time-consuming and difficult damages question.

*Smith v. Alyeska*, 538 F.Supp. 977, 982-83 (D.Del. 1982), *aff'd*, 758 F.2d 664 (Fed. Cir. 1984),

*cert. denied*, 471 U.S. 1066 (1985) (*quoting Swofford v. B & W, Inc.*, 34 F.R.D. 15, 19-20 (S.D.

Tex. 1963) *aff'd*, 336 F.2d 406 (5th Cir. 1964), *cert. denied*, 379 U.S. 962 (1965)).

In the present case, the Court finds that the issues are not necessarily complex, as it

involves only one patent, specifically, the '407 patent. Additionally, there are no issues of

damages to be resolved because there has been no marketing or sale of the product.

Nevertheless, courts have considered and balanced other factors such as the prejudice that may be

caused for a party should bifurcation not be ordered.  *See* FED. R. CIV. P. 42(b). Here, the Court

finds that while the validity of the patent at issue is not complex, the issue of "liability and

willfulness are two distinct causes of action" as the court found in *Princeton Biochemicals, Inc.*,

and thus have different elements which must be proved. *Princeton Biochemicals, Inc.*, 180

F.R.D. at 258 fn.3. Moreover, the Court finds that at this juncture, the potential prejudice to the

5

Defendant outweighs the potential waste of resources as the Plaintiffs suggest. Accordingly, the Court is unconvinced that there would be any substantial overlap or duplicity as a result of bifurcating trial and discovery with regards to liability and willfulness. Lastly, the Court agrees with the Defendant that once the validity of the patent is determined and infringement is or is not found, then the Court can speedily proceed with its determination of willfulness. Furthermore, the Court finds that bifurcation, while certainly not the rule but the exception, would nevertheless, promote efficiency and judicial economy in this particular case.

**B.    Willful Infringement and Exceptional Case Issue**

Defendant moves to bifurcate and stay discovery on the willful infringement/exceptional case issue arguing that a determination of the validity of the '407 patent will provide more focus as to discovery on the willful infringement/exceptional case issue. Defendant contends that there is no need to expend additional resources and burden parties regarding damages when Plaintiffs did not even seek damages in the present case. The Court agrees with the Defendant that conducting discovery on issues surrounding willful infringement is premature at this point, especially, when no damages have been sought by the Plaintiffs. Accordingly, there is no need at this time to determine willful infringement and even more so, the exceptional case issue which is related to a finding of willful infringement.[1]  Therefore, the Court finds that a two-step process of

---

[1] Both Plaintiffs and Defendant have requested an award of attorneys' fees should either prevail in the lawsuit. An award of attorneys' fees in patent cases is granted only in exceptional cases where the infringement was found to be willful. However, a finding of willful infringement does not automatically mandate a court to award attorneys' fees. *Whelan v. A. Ward Enterprises, Inc.*, 2002 WL 1745614, at * 5 (E.D.Pa. July 23, 2002) (*citing Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992)). There are nine factors that the *Read* Court listed in determining whether to award an attorney's fees in patent infringement cases. *Read*, 970 F.2d at 827. At this time, the Court finds it unnecessary to even review those nine factors.

determining first the liability and then damages, if any, will not deter efficiency and judicial economy.

More importantly, the Court is persuaded by Defendant's argument that the issue of willful infringement should be bifurcated because discovery on that issue would involve the disclosure of attorney-client communications. In *Quantum v. Tandon*, 940 F.2d 642, 643-44 (Fed. Cir. 1991) the Court stated:

> Proper resolution of the dilemma of an accused infringer who must choose between the lawful assertion of the attorney-client privilege and avoidance of a willfulness finding if infringement is found, is of great importance not only to the parties but to the fundamental values sought to be preserved by the attorney-client privilege. An accused infringer, therefore, should not, without the trial court's careful consideration, be forced to choose between waiving the privilege in order to protect itself from a willingness finding, in which case it may risk prejudicing itself on the question of liability, and maintaining the privilege, in which case it may risk being found to be a willful infringer if liability is found. Trial courts thus should give serious consideration to a separate trial on willfulness whenever the particular attorney-client communications, once inspected by the court, *in camera*, reveal that defendant is indeed confronted with this dilemma.

*Id.* at 644; *see also Princeton Biochemicals, Inc.*, 180 F.R.D. at 259. As federal courts in this District have properly held, "willful infringement is more appropriately determined after liability has been established, thereby avoiding even the possibility of prejudice to a patent defendant's litigation rights." *Princeton Biochemicals, Inc.*, 180 F.R.D. at 258.

Moreover, the Court is unconvinced at this juncture that the proofs required to demonstrate Defendant's willfulness, when it infringed against Plaintiffs' patent '407, are intertwined with the proofs regarding the validity of the patent. Accordingly, the Court cannot foresee that there will be any significant overlapping of evidence. In addition, as the parties have

7

pointed out the fact that there is only one patent at issue in the present litigation should minimize any substantial duplication of evidence which might have increase costs. More importantly, the Court is mindful of the fact that allowing Plaintiffs to pursue discovery on the willful infringement issue may cause Defendant to prematurely waive its attorney-client privilege thereby possibly prejudicing its case. Therefore, the Court finds that bifurcating trial and staying discovery as to the issue of willful infringement/exceptional case is appropriate in this particular case.

## III.    CONCLUSION

For the reasons stated above, Defendant Teva Pharmaceuticals' Motion to Bifurcate Trial and Stay Discovery on the Willful Infringement/Exceptional Case Issue is granted. Discovery on willfulness is stayed and shall commence after the parties conduct a meeting and confer pursuant to FED. R. CIV. P. 26(f) to determine the timing and parameters of such discovery. In addition, trial on liability and willfulness will be bifurcated.

An appropriate Order accompanies this Memorandum Opinion.

Dated: January 28, 2003

*In re:  '318 Patent Infringement Litigation,*
*C.A. No. 05-356 (KAJ) (consolidated) (D. Del.)*

# EXHIBIT P
# to Mylan's Rule 12(c) Motion:

*Eli Lilly & Co. v. Barr Labs., Inc.*,
No. IP 96-0491-C-B/S, slip op.
(S.D. Ind. Oct. 29, 1998)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ELI LILLY AND COMPANY,          )
                                )
            Plaintiff,          )
                                )
    vs.                         )         IP 96-0419-C-B/S
                                )
BARR LABORATORIES, INC.,        )
APOTEX, INC., INTERPHARM, INC., )
BERNARD C. SHERMAN and GENEVA   )
PHARMACEUTICALS, INC.,          )
                                )
            Defendants.         )

## ENTRY

This matter comes before the Court on (1) a motion by Plaintiff Eli Lilly and

Company ("Lilly") to amend the complaint to add a claim for willful infringement, (2) a

motion by Defendant Barr Laboratories, Inc ("Barr") for bifurcation of the issues of

liability and the willful infringement claim under Federal Rule of Civil Procedure 42(b)

and a stay of discovery on the willful infringement claim[1] and (3) Lilly's motion to deem

admitted a fact establishing infringement by Geneva. This case involves complex issues

of intellectual property law and scientific and technological evidence and is set for trial in

January 1999, a mere three months away. Barr's primary objection to Lilly's motion to

amend the complaint is for reasons of undue prejudice, as addressed more fully in Barr's

---

[1] We note that Defendant Geneva Pharmaceuticals, Inc. ("Geneva") joins in Barr's motion
to bifurcate in its objection to Lilly's motion to amend.

motion to bifurcate the issues of liability and willful infringement. Thus, we find it most efficient to address Barr's motion to bifurcate first.

Rule 42(b) provides, "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim . . . or of any separate issue . . . , always preserving inviolate the right of trial by jury . . . ." Barr moves for bifurcation, arguing that Lilly's raising this new claim so late in the litigation of the case will prejudice Barr, that there is not sufficient time to prepare the willful infringement claim and defenses for the scheduled January 1999 trial date, that presentation of evidence regarding willful infringement will confuse the trier of fact unnecessarily and that Lilly will not be prejudiced by separate trials and a stay of discovery. Lilly asserts that bifurcation will result in "an immense waste of resources and duplication of effort" and evidence. See Plaint. Opp. Bifurc. at 1.

Having considered the parties' arguments on this issue in their briefs and the facts in this case, we conclude that the newly-raised claim of willful infringement should be tried separately from the issue of liability and that discovery on the willful infringement claim should be stayed until the liability phase of this case is complete (1) to avoid undue prejudice to Barr, (2) to prevent forcing Barr to choose between the advice of counsel defense to willful infringement and asserting attorney-client privilege, as would be implicated in this case, and (3) in the interests of judicial economy and efficiency. See,

2

e.g., Quantum Corp. v. Tandon Corp., 940 F.2d 642, 644 (Fed. Cir. 1991); Princeton

Biochemicals, Inc. v. Beckman Instrumentals, Inc., 45 U.S.P.Q.2d 1757, 1761 (D.N.J.

1997); In re Recombinant DNA Technology Patent and Contract Litigation, 30

U.S.P.Q.2d 1881, 1900 (S.D. Ind. 1994). Accordingly, we grant Barr's motion to

bifurcate liability and willful infringement and stay discovery on the willful infringement

claim until liability for infringement has been determined.

Having disposed of Barr's concerns regarding prejudice, we now turn to Lilly's

motion to amend the complaint. Geneva and Barr both object to Lilly's motion,

contending that Lilly fails to state a claim of willful infringement, arguing that the filing

of an Abbreviated New Drug Application ("ANDA") cannot give rise to an allegation of

willful infringement. After considering the parties' arguments and supporting authority,

we conclude that it is by no means clear that Lilly's willful infringement claim is futile

and that further factual development is necessary to determine the merits of Lilly's claim.

See, e.g., Yamanouchi Pharmaceutical Co. v. Danbury Pharmacal, Inc., 1998 WL 696011

(S.D.N.Y. Oct. 1, 1998). Thus, we grant Lilly's motion to amend the complaint.

However, Defendants may want to reassert their objections later in the event that the

willful infringement claim remains viable after liability has been determined.

Lilly also seeks an order deeming admitted a fact establishing Geneva's

infringement of claim 7 of Lilly's '549 patent. Lilly claims that Geneva's response to

Lilly's third set of interrogatories constitutes an admission of infringement. This issue is

3

somewhat complicated because it does not appear that Geneva disputes infringement, precisely, but only challenges the use of its response to Lilly's interrogatories. It seems as though if Lilly simply had asked Geneva in its interrogatories to admit infringement of claim 7 of the '549 patent in the same language Lilly uses with respect to claim 5 of the '081 patent, Lilly may have received the admission it sought. Rather, Lilly appears to have been fishing for some broader type of admission relevant to other of its claims or defenses, which strategy Geneva resisted. Geneva's response may well constitute an admission of infringement of claim 7, but we find that this is an evidentiary dispute more properly resolved at trial. Lilly should proffer the evidence at trial, proposing it as an admission by Geneva, and it will be for the trier of fact, whether it be a jury or this Court, to conclude whether Geneva's response constitutes an admission of infringement. Accordingly, we deny Lilly's motion at this time. However, we encourage Lilly and Geneva to attempt to reach a stipulation before trial as to any issues that are not genuinely in dispute, such as whether Geneva admits infringement of claim 7, to save the Court from trying the issue of infringement unnecessarily.

Lilly also requests temporary ancillary relief from filing an expert report on infringement issues. Such report was due on August 14, 1998, which date was extended by the Court to August 21, 1998, and Lilly requested additional time to file its report until after the Court disposed of the motion to deem admitted the fact establishing infringement by Geneva. If Lilly has not already submitted its expert report on this issue, it should do

4

so no later than November 20, 1998, three weeks from the date of this entry, if it finds

such report necessary after the Court's ruling and after attempting to enter into a

stipulation with Geneva.

For the reasons set forth above, we grant Lilly's motion to amend, grant Barr's

motion for bifurcation and stay of discovery and deny Lilly's motion to deem admitted

Geneva's infringement.

It is so ORDERED this __29ᵗʰ__ day of October 1998.

_Sarah Evans Barker_
SARAH EVANS BARKER, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copy to:

π Jan M Carroll
Barnes & Thornburg
1313 Merchants Bank Bldg
11 South Meridian Street
Indianapolis, IN 46204

π Simon D Roberts
Shanks & Herbert
1033 North Fairfax Street
Suite 306
Alexandria, VA 22314

π Allen M Sokal
Finnegan Henderson Farabow Garrett
& Dunner LLP
1300 I Street N W Suite 700
Washington, DC 20005-3315

Thomas L Davis
Locke Reynolds Boyd & Weisell
1000 Capital Center South
201 North Illinois Street
Indianapolis, IN 46204

Hugh L Moore
Lord Bissell & Brook
115 South LaSalle Street
Chicago, IL 60603

Robert Neuner
Brumbaugh Graves Donohue &
Raymond
30 Rockefeller Plaza
New York, NY 10112

5

Dennis P Orr
Mayer Brown & Platt
1675 Broadway
New York, NY 10019-5820

James W Riley Jr
Riley Bennett & Egloff
One American Square Suite 1810
Box 82035
Indianapolis, IN 46282

Maurice B Stiefel
Bryan Cave
245 Park Avenue
New York, NY 10167

Mary Titsworth Chandler
Wooden McLaughlin & Sterner
201 N. Illinois Street
Indianapolis, IN 46204

Dan K Webb
Winston & Strawn
35 West Wacker Dr
Chicago, IL 60601

6

*In re: '318 Patent Infringement Litigation,*
*C.A. No. 05-356 (KAJ) (consolidated) (D. Del.)*

# EXHIBIT Q
# to Mylan's Rule 12(c) Motion:

*Bayer AG v. Barr Labs., Inc.,*
No. 92 Civ. 0381 (WK), slip op.
(S.D.N.Y. Sept. 11, 1995)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



-------------------------------------------X

BAYER AG and MILES, INC.,

   Plaintiffs,

 - against -

BARR LABORATORIES, INC.,

    Defendant.

-------------------------------------------X

<u>MEMORANDUM AND ORDER</u>
92 Civ. 0381 (WK)

WHITMAN KNAPP, SENIOR D.J.

 Having carefully considered defendant's "Memorandum in Opposition to Plaintiffs' Request for Discovery of Privileged Materials"; plaintiffs' "Memorandum of Law in Opposition to Defendant's Request to Bifurcate Trial"; and defendant's "Reply Memorandum in Further Opposition to Plaintiffs' Request," we grant defendant's motion to bifurcate trial; and we stay all discovery regarding the issues of "willful infringement" and attorneys' fees until after the question of defendant's liability has been resolved.

SO ORDERED.

September 11, 1995
New York, New York

       WHITMAN KNAPP, SENIOR U.S.D.J.

MICROFILM
SEP 12 1995   12:00 PM

1

For Plaintiff:

Milton Sherman, Esq.
Kaye, Scholer, Fierman, Hays & Handler
425 Park Avenue
New York, NY  10022

For Defendant:

Myron Cohen, Esq.
Cohen, Pontani, Lieberman & Pavane
551 Fifth Avenue
New York, NY  10176

2

*In re:  '318 Patent Infringement Litigation,*
*C.A. No. 05-356 (KAJ) (consolidated) (D. Del.)*

# EXHIBIT R
# to Mylan's Rule 12(c) Motion:

*United States Gypsum Co. v. Nat'l Gypsum Co.,*
No. 89 C 7533, 1994 WL 74989
(N.D. Ill. Mar. 10, 1994)

Westlaw.

Not Reported in F.Supp.                                                   Page 1

Not Reported in F.Supp., 1994 WL 74989 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
UNITED STATES GYPSUM COMPANY,
Plaintiff,
v.
NATIONAL GYPSUM COMPANY, Defendant.
No. 89 C 7533.

March 10, 1994.

MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.
*1 The facts of the case are extensively set out in an
earlier Opinion, *see United States Gypsum v.
National Gypsum Co.,* No. 89 C 7533 (N.D.Ill. Jan.
27, 1993) (Plunkett, J.), and we need not restate
them herein. Suffice it to say that USG sued
National for infringement of two patents involving
lightweight joint compound. National filed a
Counterclaim alleging that USG's enforcement of
the patents was a bad faith attempt to interfere with
National's business relationships in violation of
antitrust laws. After years of litigation and at least
four Memorandum Opinion and Orders from this
court, this case is finally ready to try, and is before
us once again today so that we may decide how we
will proceed at trial.

Plaintiff USG argues that we should bifurcate the
trial of the patent infringement from the antitrust
counterclaims. Defendant National, on the other
hand, argues that bifurcation of the antitrust and
patent issues will result in needless duplication of
evidence and will not necessarily result in saving
any trial time. National also argues that a separate
trial of the damages phase is the norm that should
be followed in the present case. USG opposes that
suggestion because it anticipates presenting its
proof of damages in a short and uncomplicated

fashion.

*Discussion*

Rule 42(b) of the Federal Rules of Civil Procedure
states, in pertinent part:
The court, in furtherance of convenience or to avoid
prejudice, or when separate trials will be conducive
to expedition and economy, may order a separate
trial of any claim, crossclaim, counterclaim or
third-party claim, or of any separate issue or of any
number of claims ... always preserving inviolate the
right of trial by jury....

Fed.R.Civ.P. 42(b). The question of bifurcation,
or, as in this case, trifurcation, is to be decided by
the trial court on a case-by-case basis. *Lis v.
Robert Packer Hosp.,* 579 F.2d 819, 824 (3d Cir.),
*cert. denied,* 439 U.S. 955 (1978); *PPG Indus. v.
LIbbey-Owens-Ford Co.,* No. 90 C 6067, slip op. at
2 (N.D.Ill. Sept. 23 1992) (Marovich, J.); *Avia
Grp. Intn'l v. Nike,* 22 U.S.P.Q.2d 1475, 1476
(D.C.Or.1991). The trial court's discretion here is
broad, and is guided by its sense of what format will
"be conducive to the promotion of judicial economy
and the avoidance of prejudice." *PPG,* slip op. at 2
(citing *Naxon Telesign Corp. v. GTE Info. Sys.,* 89
F.R.D. 333, 341 (N.D.Ill.1980)). Though the court
should not routinely order separate trials, " 'issues
of validity, title, infringement, and damages in
patent and copyright cases may be separately tried
unless this course will inconvenience the court or
seriously prejudice the rights of some of the parties."
*PPG, id.* (quoting *Swofford v. B. & W.,* 34 F.R.D.
15 (S.D.Tex.1963), *aff'd,* 336 F.2d 406 (5th
Cir.1964), *cert. denied,* 379 U.S. 962 (1965)).
However, the major consideration is which choice is
"most likely to result in a just final disposition of
the litigation." *In re Innotron Diag.,* 800 F.2d
1077, 1084 (Fed.Cir.1986) (citing 9 Charles Wright
& Arthur Miller, *Federal Practice and Procedure,* §
2388 (1971)).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 2

Not Reported in F.Supp., 1994 WL 74989 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

**\*2** As to the bifurcation of the patent infringement from the antitrust trial, it is common practice to bifurcate these issues so that the complex antitrust issues are reached only if a showing of fraud, necessary to a *Walker Process* antitrust recovery, is still tenable after litigating the issue of inequitable conduct in procuring the patent:

Deferral of trial on antitrust issues, with their additional requirements of proof of the various elements of an antitrust violation and of injury to the complaining party, would be likely in many cases to lead to a complete avoidance of a complex antitrust trial by settlement after trial of the patent issues, as in *Walker Process.*

James B. Pegram, *Separate Trial in Patent-Antitrust and Patent-Unenforceability Litigation,* 64 F.R.D. 185, 200 (footnotes omitted). *See also Innotron,* 800 F.2d at 1084 (bifurcating patent and antitrust trials is "now standard practice" ).

We feel that bifurcation of the quite complex, and at this point, contingent, antitrust trial from the patent issues, in accordance with the general practice, best serves the interests of justice in this case. Though, as National points out, there is a degree of overlap between the evidence as to inequitable conduct element in their invalidity defense on USG's infringement claim and the common law fraud element in their *Walker Process* counterclaim, should the patents be found valid and enforceable in the patent trial, a motion for a directed verdict on the Defendant's *Walker Process* counterclaims may be in order. *See, e.g. FMC Corp. v. Manitowoc Co.,* 835 F.2d 1411, 1417 (Fed.Cir.1987) ("FMC's failure to establish inequitable conduct precludes a determination that it had borne its greater burden of establishing the fraud required to support its *Walker Process* claim."). *See also Hewlett Packard Co. v. Bausch & Lomb,* 882 F.2d 1556, 1563 (Fed.Cir.1989) (noting that an "extremely high level of misconduct, actual fraud, is necessary to sustain a *Walker Process* claim ..."), *cert. denied,* 493 U.S. 1076 (1990).

As to the question of separating liability from willfulness, we also feel bifurcation is called for. *See Pittway Corp. v. Maple Chase Co.,* No. 91 C 3582, 1992 WL 392584, 1992 U.S.Dist. LEXIS 19237, \*16 (N.D.Ill. Dec. 15, 1992) (Zagel, J.) (bifurcating liability and willfulness). National points out that, if these issues are not separated, it is faced with the unpleasant choice of either waiving its attorney-client privilege as to documents it hopes to use to defend itself on the willfulness question, or retaining the privilege to keep the documents out on the liability issue. If both issues are tried together, National will either be deprived of a colorable defense to the willfulness claim or be damaged by the admissions in those documents in the liability phase. That is an untenable situation. *See Quantum Corp. v. Tandon Corp.,* 940 F.2d 642, 643-44 (Fed.Cir.1991) (court recognizes the problem, and, in *dicta,* suggests that "[t]rial courts thus should give serious consideration to a separate trial on willfulness whenever the particular attorney-client communications ... reveal that the defendant is confronted with this dilemma.")

**\*3** Aside from the willfulness issue, however, we do not believe damages should be bifurcated. The Plaintiff has represented to us that they do not expect to take more than a day to put their damages case in evidence. Where, as here, the damages case is not overly complex or extensive, there is no need to bifurcate. *See, e.g., Output Tech. Corp. v. Data Prod. Corp.,* 22 U.S.P.Q.2d 1072 (W.D.Wash.1991) (bifurcation of damages denied in two-week trial where damages were not expected to take more than a day to present).

*Conclusion*

For the reasons stated above, we "trifurcate" this trial into patent liability, willfulness, and antitrust phases.

N.D.Ill.,1994.
U.S. Gypsum Co. v. National Gypsum Co.
Not Reported in F.Supp., 1994 WL 74989 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 1:89cv07533 (Docket) (Oct. 05, 1989)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of December, 2005, I electronically filed the foregoing document, **COMPENDIUM OF UNREPORTED CASES RELATING TO DEFENDANT MYLAN'S RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS DISMISSING JANSSEN'S WILLFUL INFRINGEMENT CLAIM OR, IN THE ALTERNATIVE, TO BIFURCATE AND STAY DISCOVERY ON SUCH CLAIM**, with the Clerk of the Court using CM/ECF, which will send notification to the following:

<table>
<tr>
<td>

George F. Pappas *(gpappas@cov.com)*
Christopher N. Sipes *(csipes@cov.com)*
Jeffrey B. Elikan *(jelikan@cov.com)*
Laura H. McNeill *(lmcneill@cov.com)*
Joseph H. Huynh *(jhuynh@cov.com)*
Uma N. Everett *(ueverett@cov.com)*
Michael E. Paulhus *(mpaulhus@cov.com)*
William D.A. Zerhouni *(wzerhouni@cov.com)*
**COVINGTON & BURLING**
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

</td>
<td>

John G. Day *(jday@ashby-geddes.com)*
Steven J. Balick *(sbalick@ashby-geddes.com)*
**ASHBY & GEDDES**
222 Delaware Ave., 17th Fl.
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067

</td>
</tr>
<tr>
<td>

Steve P. Berman *(sberman@corus.jnj.com)*
Office of General Counsel
Johnson & Johnson
One Johnson & Johnson Plaza
New Brunswick, NJ 08933
Telephone: (732) 524-2805
Facsimile: (732) 524-5866

</td>
<td></td>
</tr>
<tr>
<td colspan="2" align="center">

***Counsel for Plaintiffs Janssen Pharmaceutica N.V.,
Janssen, L.P. and Synaptech, Inc.***

</td>
</tr>
</table>

| | |
|---|---|
| Frederick L. Cottrell, III *(cottrell@rlf.com)*<br>Anne Shea Gaza *(gaza@rlf.com)*<br>**RICHARDS, LAYTON & FINGER, P.A.**<br>One Rodney Square<br>P.O. Box 551<br>Wilmington, DE 19801<br>Telephone: (302) 651-7509<br>Facsimile: (302) 651-7701 | Josy W. Ingersoll *(jingersoll@ycst.com)*<br>John W. Shaw *(jshaw@ycst.com)*<br>Adam W. Poff *(apoff@ycst.com)*<br>**YOUNG CONAWAY STARGATT & TAYLOR LLP**<br>The Brandywine Building<br>1000 West St., 17th Floor<br>P.O. Box 391<br>Wilmington, DE 19899-0391<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253 |
| *Counsel for Defendant Alphapharm Pty Ltd.* | *Counsel for Defendants Teva Pharmaceuticals USA and Teva Pharmaceuticals Industries Ltd.* |

| | |
|---|---|
| John C. Phillips. Jr. *(jcp@pgslaw.com)*<br>Brian E. Farnan *(bef@pgslaw.com)*<br>**PHILLIPS, GOLDMAN & SPENCE, P.A.**<br>1200 N. Broom St.<br>Wilmington, DE 19806<br>Telephone: (302) 655-4200<br>Facsimile: (302) 655-4210 | Richard D. Kirk *(rkirk@bayardfirm.com)*<br>**THE BAYARD FIRM**<br>222 Delaware Ave., Suite 900<br>P.O. Box 25130<br>Wilmington, DE 19899<br>Telephone: (302) 655-5000<br>Facsimile: (302) 658-6395 |
| *Counsel for Defendants Barr Laboratories, Inc. and Barr Pharmaceuticals, Inc.* | *Counsel for Defendants Purepac Pharmaceutical Co. and Alpharma Inc.* |

| | |
|---|---|
| Barbara S. Wahl *(wahl.barbara@arentfox.com)*<br>Richard J. Berman<br>*(berman.richard@arentfox.com)*<br>D. Jacques Smith *(smith.jacques@arentfox.com)*<br>Janine A. Carlan *(carlanjanine@arentfox.com)*<br>John K. Hsu *(hsu.john@arentfox.com)*<br>**ARENT FOX PLLC**<br>1050 Connecticut Ave., N.W.<br>Washington, D.C. 20036-5339<br>Telephone: (202) 857-6000<br>Facsimile: (202) 857-6395 | Philip A. Rovner<br>*(provner@potteranderson.com)*<br>**POTTER ANDERSON & CORROON LLP**<br>1313 N. Market Street, Hercules Plaza, 6th Floor<br>P.O. Box 951<br>Wilmington, DE 19899-0951<br>Telephone: (302) 984-6000<br>Facsimile: (302) 658-1192 |
| *Counsel for Defendants Par Pharmaceutical, Inc. and Par Pharmaceutical Companies, Inc.* ||

- 2 -

| | |
|---|---|
| Richard L. Horwitz<br>(*rhorwitz@potteranderson.com*)<br>David Ellis Moore<br>(*dmoore@potteranderson.com*)<br>**POTTER ANDERSON & CORROON LLP**<br>Hercules Plaza<br>P.O. Box 951<br>Wilmington, DE 19899<br>Telephone: (302) 984-6027<br>Facsimile: (302) 658-1192 | |
| *Counsel for Defendants Dr. Reddy's*<br>*Laboratories, Inc. and Dr. Reddy's*<br>*Laboratories, Ltd.* | |

Additionally, I hereby certify that on the 13th day of December, 2005, the foregoing document was served via U.S. Mail and e-mail on the following non-registered participants:

| | |
|---|---|
| Alan Bernstein (*abernstein@crbcp.com*)<br>Mona Gupta (*mgupta@crbcp.com*)<br>**CAESAR, RIVISE, BERNSTEIN, COHEN &**<br>**POKOTILOW, LTD.**<br>1635 Market Street, 11th Floor<br>Philadelphia, PA 19103-2212<br>Telephone: (215) 567-2010<br>Facsimile: (215) 751-1142 | Daniel F. Attridge, P.C.<br>(*dattridge@kirkland.com*)<br>Edward C. Donovan (*edonovan@kirkland.com*)<br>Karen M. Robinson (*krobinson@kirkland.com*)<br>Corey J. Manley (*cmanley@kirkland.com*)<br>**KIRKLAND & ELLIS LLP**<br>655 Fifteenth Street, N.W., Suite 1200<br>Washington, D.C. 20005-5793<br>Telephone: (202) 879-5000<br>Facsimile: (202) 879-5200 |
| *Counsel for Defendant Alphapharm Pty Ltd.* | *Counsel for Defendants Teva Pharmaceuticals*<br>*USA and Teva Pharmaceuticals Industries Ltd.* |

| | |
|---|---|
| George C. Lombardi (*glombardi@winston.com*)<br>Taras A. Gracey (*tgracey@winston.com*)<br>Lynn M. Ulrich (*lulrich@winston.com*)<br>Brian L. Franklin (*bfranklin@winston.com*)<br>**WINSTON & STRAWN LLP**<br>35 West Wacker Dr.<br>Chicago, IL 60601<br>Telephone: (312) 558-5000<br>Facsimile: (312) 558-5700 | Robert J. Gunther, Jr. (*robert.gunther@lw.com*)<br>James P. Barabas (*james.barabas@lw.com*)<br>**LATHAM & WATKINS LLP**<br>885 Third Ave., Suite 1000<br>New York, NY 10022-4802<br>Telephone: (212) 906-1200<br>Facsimile: (212) 751-4864 |
| *Counsel for Defendants Barr Laboratories,*<br>*Inc. and Barr Pharmaceuticals, Inc.* | *Counsel for Defendants Purepac*<br>*Pharmaceutical Co. and Alpharma Inc.* |

| | |
|---|---|
| Stuart Sender (*ssender@budd-larner.com*)<br>**BUDD LARNER**<br>150 John F. Kennedy Parkway<br>Short Hills, NY 07078-0999<br>Telephone: (973) 315-4462<br>Facsimile: (973) 379-7734 | |
| ***Counsel for Defendants Dr. Reddy's Laboratories, Inc. and Dr. Reddy's Laboratories, Ltd.*** | |

*/s/ Mary B. Matterer*

Mary B. Matterer # 2696
MORRIS JAMES HITCHENS & WILLIAMS LLP
222 Delaware Ave., 10th Floor
Wilmington, DE 19801
Telephone: (302) 888-6800
mmatterer@morrisjames.com