**EXHIBIT B**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WYETH PHARMACEUTICAL, | : Civil Action No. 03-1293(KSH) |
| Plaintiff, | : |
| | : Newark, New Jersey |
| vs. | : |
| | : |
| TEVA PHARMACEUTICALS | : |
| USA, INC., | : VOLUME 1 OF 2 |
| | : PAGES 1 - 142 |
| Defendant. | : Thursday, August 5, 2004 |

TRANSCRIPT OF DISCOVERY MOTIONS
BEFORE THE HONORABLE PATTY SHWARTZ, U.S.M.J.

APPEARANCES:

FOR THE PLAINTIFF:        BY:  KEVIN J. MC KENNA, ESQ.,
                              MARA ZAZZALI, ESQ.,
                         (Gibbons, Del Deo, Dolan,
                         Griffinger & Vecchione)
                         One Riverfront Plaza
                         Newark, N.J.  07102
                                   -and-
                         BY:  BASIL J. LEWRIS, ESQ.,
                              LINDA A. WADLER, ESQ.,
                         (Finnegan, Henderson, Farabow,
                         Garrett & Dunner)
                         1300 I Street, NW
                         Washington, DC  20005

FOR THE DEFENDANT:        BY:  ALLYN Z. LITE, ESQ.,
                         (Lite, DePalma, Greenberg & Rivas)
                         Two Gateway Center
                         Newark, NJ  07102
                                   -and-
                         BY:  DARYL L. WIESEN, ESQ.,
                              ELAINE HERRMANN BLAIS, ESQ.,
                         (Goodwin Procter)
                         53 State Street
                         Boston, MA  02109

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

*******************************************************
RAPID TRANSCRIPT SERVICE, INC.
4 Elodie Lane
Randolph, New Jersey 07869
(973) 328-1730  Fax (973) 328-8016
*******************************************************

1          MS. BLAIS:  We think Glaxo is dispositive.

2          THE COURT:  Okay.  Let me give you the benefit of

3    my thoughts on this bifurcation issue.  We all know that

4    you're here seeking bifurcation of issues of patent liability

5    versus willful infringement and requesting a stay of

6    discovery.  One of the requests for the stay was based on the

7    Knorr-Bremse Systems v. Dana Corp. decision, 344 F.3d. 1336

8    (F.Cir. 2003).  As far as I know, there's been no rulings and

9    we don't know if it's been ruled upon.

10         MS. BLAIS:  There has not been.

11         MR. LEWRIS:  To my knowledge, no ruling.

12         THE COURT:  No, okay.  That was the -- among the

13   requests for the stay.  Then thereafter, the Court received

14   correspondence, and the Court does appreciate have this case

15   law brought to its attention, recent decisions out of the

16   Federal Circuit as recently as July 27, 2004 in Glaxo Corp.

17   v. Apotex, which form the basis upon which Teva has asked the

18   Court to -- I withdraw that -- has asked the plaintiffs to

19   withdraw their willfulness claim under the view that the case

20   says you can't have a -- you can't pursue willfulness in an

21   ANDA filing case.

22         By way of background, the parties are aware of

23   course that on March 24, 2003 they -- Wyeth filed this action

24   asserting Teva infringed three United States patents, the 171

25   patent, 120 patent; and the 958 patent referred to herein as

Court Decision                                            162

1   collectively the patents in suit, and incorporate, by

2   reference, the full citations from the complaint.

3        They allege the infringement occurred when Teva

4   filed an Abbreviated New Drug Application pursuant to 21

5   U.S.C. 355(j) for approval to market a generic version of

6   Wyeth's antidepressant drug, Effexor XR.  See the amended

7   complaint at Paragraphs 8 and 14, as well as the letter of

8   Teva dated June 29, 2004, Page 1.

9        Wyeth alleges that the proposed generic version of

10  Effexor XR will infringe one or more of the claims of the

11  patent in suit and that Teva has willfully infringed the

12  patents in suit by filing its ANDA.  Counsel has further

13  amplified some of its theories regarding willfulness here

14  today.

15       In its answer, Teva denies Wyeth's claims, asserts

16  a failure to state a claim upon which relief can be granted,

17  alleges noninfringement and patent invalidity as affirmative

18  defenses and has counterclaims for judgments declaring

19  noninfringement and patent invalidity.  The answer does not

20  specifically assert Teva relied on the advice of counsel in

21  filing its ANDA.  The parties have made clear that it's --

22  this is not a case about monetary damages, but rather, when

23  it comes to money, about attorney's fees, and that will occur

24  if there's a finding, perhaps, of willfulness, depending on

25  how one uses the Glaxo case.

1    There's been discovery demands served, as the

2  Court understands it, seeking information regarding issues of

3  willfulness.  Teva now claims discovery on this willfulness

4  topic either should never occur because in its view, Glaxo

5  holds the filing of an ANDA cannot constitute a willful

6  infringement, or in its papers, it should argue -- it has

7  argued that it should not occur until liability is decided.

8    Are you withdrawing that argument or are you

9  arguing it in the alternative, either don't allow anything to

10 happen, or at least don't let anything happen until liability

11 is found?  MS. BLAIS:  Yes.

12    THE COURT:  Okay.  I just want to make sure you --

13 you want to go through both analysis, okay.

14    MS. BLAIS:  Yes, that's right.

15    THE COURT:  Let me first address the Glaxo case

16 and I do so mindful of the fact that I'm doing it with the

17 eye towards whether or not discovery is relevant, whether or

18 not there's a dispositive finding about the application of

19 the cases for Judge Hayden to make.  So be mindful of how I'm

20 using it, because I'm here evaluating a discovery dispute as

21 I read the case law.

22    As I mentioned already, counsel for Teva provided

23 the Court with a copy of the Glaxo Group, Ltd. v. Apotex

24 case, Civil No. 03-1575, 2004 WL 1660960 (Fed. Cir. 2004).

25 In that case, the Federal Circuit, at least as I read it,

1 held that the filing of an ANDA without more cannot support

2 the claim that a manufacturer willfully infringed existing

3 patents to support the award of attorney's fees.

4        Teva has argued that given Wyeth's sole allegation

5 of infringement is based on the filing of the ANDA, the Glaxo

6 case renders Wyeth's claims of willfulness moot, and the

7 Court should preclude discovery on any claims regarding

8 willfulness.  Wyeth argues that Glaxo is indistinguishable

9 from this case and, therefore, does not render Teva's

10 bifurcation motion moot or preclude it from proceeding with

11 discovery on willfulness.  They argue that Glaxo is

12 distinguishable because it involved an ANDA, which did not

13 contain a Paragraph 4 certification and they further argue

14 that the case is more akin to Yamanouchi Pharmaceutical

15 Company, Ltd. v. Danbury Pharmacal, Inc., 231 F.3d 1339, 1342

16 (Fed. Cir.) in which the Federal Circuit upheld a legal fee

17 award because of willfulness in an ANDA case, based in part

18 on the ANDA filer's submission of an unfounded Paragraph 4

19 certification.  That's Wyeth's reading of the case.

20        Wyeth argues Yamanouchi should be read

21 harmoniously with Glaxo and that Glaxo would be

22 distinguishable here.  Looking at the Glaxo case, the Federal

23 Circuit reversed the District Court's finding of willful

24 infringement and noted, "the highly artificial" act of

25 infringement of filing an ANDA and that the "limited set of

Court Decision                                                                165

1  statutorily defined consequences [to such a filing] set forth

2  in 35 U.S.C. 271(e)(4)."  See the Glaxo case at Page 8.  And

3  I'm using the WestLaw cite.

4        The court specifically noted that Section

5  271(e)(4) which limits remedies to an innovator company

6  related to the filing of an ANDA to delaying the effective

7  date of the ANDA approval until the expiration of the

8  existing patent be enjoining the infringer from marketing the

9  infringing product and see money damages only "if there has

10 been commercial manufacturer use offered to sell or sale

11 within the United States."  See the Glaxo case at Page 8.

12       Otherwise, a court may award attorney's fees under

13 Section 285 for an ANDA seeking approval of an infringing

14 drug.  Section 285, the Glaxo court noted, provides for an

15 award of legal fees to the prevailing party only in

16 exceptional circumstances such as "inequitable conduct before

17 the PTO, litigation misconduct such as vexatious or

18 unjustified litigation or frivolous findings, and willful

19 infringement."  See the Glaxo case also at Pate 8.

20       Counsel has argued today that in Glaxo the courts

21 were stating that while "a myriad of factual circumstances

22 may give rise to a finding of cases exceptional for the

23 purposes of 35 U.S.C. 285, this court has limited what types

24 of conduct may give rise to award of attorney's fees for the

25 purposes of Section 271(e)(4)."

Court Decision                                              166

1    The Glaxo court continued by examining the

2  Yamanouchi case and in Glaxo, in summarizing the District

3  Court's decision in Yamanouchi, the Glaxo court stated, "The

4  District Court [in Yamanouchi] had found that the generic

5  company's ANDA filing constituted willful infringement, but

6  we did not adopt the rationale on appeal.  Instead, we

7  caution the trial court need not have elevated the ANDA

8  certification into a finding of willful infringement and held

9  that the Danbury entire conduct justified the award of

10  attorney's fees, noting that the generic company failed to

11  present even a prima facie case of invalidity in filing its

12  Paragraph 4 certification, hence making a baseless filing and

13  proceeded to present its case in litigation, despite glaring

14  weaknesses."  Internal quotation marks are omitted and it's a

15  citation by Glaxo to Yamanouchi at 231 F.3d. at 1347.

16    Therefore, the court continued, "In Yamanouchi we

17  did not agree that the generic company had engaged in willful

18  infringement, but rather determined an award of attorney's

19  fees was permitted because the generic had filed numerous

20  baseless filings supporting its fruitless and meritless

21  arguments both in its cases at trial and in its ANDA

22  certification.  Such unjustified litigation misconduct has

23  always justified a finding of an exceptional case.

24  Consequently, as suggested by Yamanouchi, we now hold that

25  the mere fact that a company has filed an ANDA application or

Court Decision                                                    167

1    certification cannot support a finding of willful

2    infringement for the purposes of awarding attorney's fees

3    pursuant to 35 U.S.C. 271(e)(4)...because 35 U.S.C. 271(e)(2)

4    is designed to create an artificial act of infringement for

5    purposes of establishing jurisdiction in federal courts, we

6    hold the District Court committed a clear legal error in

7    finding a mere filing of an ANDA could form the basis of a

8    willful infringement finding."

9         I've read this decision, its language, and

10   considered it in light of Yamanouchi and based on its reading

11   the Court concludes that discovery could be permissible on

12   issues of willfulness because there could be activity that

13   would support willfulness on top of the filing of the ANDA.

14   I understand the Glaxo case to be teaching that just the ANDA

15   filing, without more, is not going to give you a finding of

16   willfulness, but there could be circumstances that would

17   support a finding of willfulness potentially, and that a

18   dispositive motion on this point may be appropriate at the

19   appropriate time, but for this purpose, and based on my

20   reading of this case, it appears that the willfulness issue

21   is still a proper issue to pursue.  Whether or not the ANDA

22   filing alone is enough is a different issue.

23        So for those reasons, the Court will not --

24   withdraw that.  Let me strike that. . . .

25        For those reasons, the Court will address the

B-8

1  propriety of whether willfulness discovery should go forward

2  in a bifurcated or nonbifurcated fashion.

3          Now turning to the application for bifurcation.

4  Teva seeks an order to bifurcate these cases in two phases.

5  First, on liability of whether Teva infringed the patents in

6  suit and whether Teva infringed willfully.  Teva argues

7  bifurcating the case and staying discovery on willfulness

8  would expedite the resolution of the liability issues and

9  defer or avoid costly, possibly unnecessary, litigation on

10  the issues of willfulness, which would be reached only upon a

11  finding of liability.

12          Teva further argues that bifurcating the trial

13  would spare it from having to choose during the liability

14  phase of trial to waive the attorney-client privilege in

15  order to assert an opinion of counsel defense and risking an

16  inference of willfulness to preserve the privilege, which is

17  a problem that's described in -- as the Quantum dilemma, and

18  it's named for the Quantum Corp. v. Tandon Corporation case,

19  940 F.2d. 642, 643-44 (Fed. Cir. 1991).

20          Teva also argues that staying the willfulness

21  phase of the trial is advisable because the Federal Circuit

22  is considering the issues in the Knorr-Bremse case, which I

23  made reference to at the outset, and this may, in their view,

24  affect this case and the decision of the court will likely

25  occur during the pendency of this litigation.

Court Decision                                    169

1        Finally, Teva argues bifurcation advances the

2   purpose of the Hatch-Waxman Act, which would require the FDA

3   to withhold approval of any ANDA that is subject to an

4   infringement action for 30 months, or until a decision

5   rendered on validity and infringement, whichever is shorter.

6   Bifurcation, Teva argues, would result in a quicker

7   adjudication of the validity of the patents in suit and thus,

8   assuming there's a finding of liability in Teva's favor,

9   expeditiously bring "affordable prescription drugs to the

10  public."  See its brief at Pages 5 and 6.

11        In opposition, Wyeth has argued separate trials

12  would be inefficient and would inconvenience the Court,

13  witnesses, and the parties.  Wyeth further argues since

14  there's no issues of damages in an ANDA case, a basis upon

15  which courts have historically bifurcated patent cases, and

16  since this is a bench trial rather than a jury trial, the

17  risk of confusing a fact finder is lessened and bifurcation

18  is unwarranted.

19        Wyeth further argues the case is analogous to

20  those in which courts have denied bifurcation and stays of

21  discovery relating to issues of willfulness.  Wyeth further

22  argues that separate trials may waste judicial resources

23  because of the significant overlaps of proofs between

24  infringement and willfulness.

25        Wyeth further argues that the Hatch-Waxman Act

1  would be frustrated rather than furthered because bifurcation

2  here would delay trial. Wyeth further argues it would be

3  prejudiced by bifurcation and a stay would delay -- because

4  of the delay in trial, duplication of discovery and

5  duplication of witness testimony.

6        They further argue and they've made that argument

7  here today that the Quantum dilemma issue is not presented

8  because the court has not been presented by way of in-camera

9  submission the documents at issue. In absence of such

10 evidence, Wyeth argues the Court should reject Teva's

11 invitation of bifurcation and staying this case. They

12 further argue that there should be no stay pending the Knorr-

13 Bremse decision.

14        Wyeth has made additional and related arguments

15 here in open court today. Moreover, Wyeth seeks an order

16 requiring Teva to produce the opinions of counsel -- make the

17 election of whether it's going to produce or not by a date

18 certain.

19        Federal Rule of Civil Procedure 42 provides, "The

20 court, in furtherance of convenience and to avoid prejudice

21 or when separate trials would be conducive to expeditious and

22 economy, may order a separate trial of any claim, cross-

23 claim, counterclaim, or third-party claim, or of any separate

24 third-party claims or issues." FRCP 42(b). The decision on

25 whether to bifurcate is based on the circumstances of the

Court Decision                                171

1    individual case at issue and is within the District Court's

2    sound discretion.  Gardco Manufacturing, Inc. v. Herst

3    Lighting Company, Inc., 820 F.2d 1209, 1212 (Fed. Cir. 1987).

4    See also Barr Labs, Inc. v. Abbott Labs, 978 F.2d 98, 115 (3d

5    Cir. 1992).

6         The decision to bifurcate is within the Court's

7    sound discretion and that's been recognized in both the Third

8    Circuit and the Federal Circuit.  While it may be appropriate

9    to order separate trials in some cases, separation is not the

10   usual course that's followed.  Response of Carolina, Inc. v.

11   Lesco Response, Inc. (phonetic), 537 F.2d 1307, 1323-24 (5th

12   Cir. 1976).  Kimberly-Clark Corp. v. James River Corp. of

13   Virginia, 131 FRD 607-608 (N.D. Ga. 1989).  See also Fuji

14   Machine Manufacturing v. Hover-Davis, Inc., 982 F.Supp. 923,

15   924 (W.D.N.Y. 1997).  In the Fuji case the court succinctly

16   stated that bifurcation is the exception, not the rule.

17        Teva as "The party seeking bifurcation has the

18   burden of showing that bifurcation is proper in light of the

19   general principle that a single trial tends to lessen the

20   delay, expense, and inconvenience to all parties."  Miller v.

21   N.J. Transit Authority Rail Operations, 160 FRD 37-40 (D.N.J.

22   1995) quotations and internal citations omitted.  See also

23   Fuji 982 F.Supp. at 924.

24        The party seeking bifurcation must further

25   demonstrate it would be prejudiced if separate trials were

1  not granted.  Thus, in deciding this motion this court must

2  consider whether Teva has met its burden of showing judicial

3  economy would be served by bifurcation and that it would

4  avoid if a prejudice if issues of willfulness were bifurcated

5  from those of liability.

6         While there is a great deal of nonbinding

7  authority suggesting bifurcation may be appropriate in

8  certain cases, see for example, Princeton Biochem v. Beckman

9  Instruments, Inc., 180 FRD 254, 258 (D.N.J. 1997), Apatar

10  Group, Inc. v. Owens Illinois, Inc. (phonetic), Civil No. 02-

11  56058, 2003 WL 21557632 at 1 (N.D. Ill. 2003), Naxen v. GTE

12  Info Systems (phonetic), 89 FRD 341, 342 Note 10.  It does

13  not appear judicial economy is necessarily served by

14  bifurcating discovery or trial here and many cases addressing

15  these topics have agreed.

16         First, the argument that willfulness and liability

17  issues do not overlap and, therefore, simultaneous trials

18  would be confusing is not persuasive under the circumstances

19  of this case.  Courts are split over the general proposition

20  of whether issues of willfulness overlap with those of

21  liability.  Compare William Rieber, LLC v. Samsung

22  Electronics America, Inc. (phonetic), 220 FRD 533, 541 (N.D.

23  Ill. 2004) where the court found a significant overlap

24  between information and witnesses related to both liability

25  and willfulness and went as far as saying unified discovery

1   of those issues, with the exception of attorney opinions made

2   sense and was the better course.

3          Real v. Bunn-O-Matic Corp.), 195 FRD 618, 625

4   (N.D. Ill. 2000) where the court found a willfulness

5   determination; that is, the defendant's state of mind when it

6   infringed the patent, was a finding inextricably bound to the

7   facts underlying the alleged infringement. See also

8   Kimberly-Clark, Corp., 131 FRD 609 finding in the same way.

9   And you can compare that with the Princeton Biochem case

10  which made an observation that "a determination regarding

11  patent infringement did not require detail according to

12  elements of willful infringement."

13         So different courts have viewed this in different

14  ways. The parties -- I guess, Wyeth in its papers suggested

15  that there was evidence in support of an overlap of evidence

16  and this Court can envision a circumstance where there would

17  be overlapping evidence. Indeed, this evidence will all be

18  presented to one fact finder. Whether Her Honor chooses to

19  have you stagger what's presented when will be a judgment

20  call for her.

21         And this relates to the second reason why

22  bifurcation doesn't seem to make sense. Unlike many cases

23  seeking bifurcation, the risk of jury confusion is absent

24  here. This is a bench trial. Unlike a jury, the District

25  Judge is well positioned and able to disregard irrelevant

Court Decision                                                          174

1    evidence, and as I've already mentioned, the parties could

2    approach the Court with perhaps staggering the presentation

3    of evidence saving willfulness until and if liability is

4    established.

5          On the other hand, Her Honor could accept all of

6    the evidence simultaneously, and I believe the parties would

7    have no great fear that there would be anything but a proper

8    consideration of the evidence for its proper purposes.

9          Third, there's nothing before the Court to suggest

10   the willfulness proof is going to be particularly complex, or

11   excessive, or expensive to put together.  Teva has not shown

12   there's been any -- there will be any relevant benefit in

13   terms of savings of time and expense in staying willfulness

14   discovery or bifurcating the trials.  And for this

15   proposition, courts such as the Real case, 195 FRD at 623,

16   624 has come to the same conclusion.

17         Fourth, staying discovery until after liability

18   could just build in more delay and complications.

19   Theoretically, if we were to stay everything on the

20   willfulness component, it could go forward to Judge Hayden,

21   have your trial on liability, and have to come back before

22   this Court for a new discovery schedule, a new final pretrial

23   order, and that is not consistent with what Rule 1 talks

24   about is just, speedy, and inexpensive resolution of cases.

25   See Johns Hopkins, 160 FRD at Page 36, and the full cite for

Court Decision                                                    175

1   Johns Hopkins is <u>Johns Hopkins University v. Cellpro</u>, 160 FRD

2   30.  The point I was citing from was Page 36 (D. Del. 1995).

3            Finally, judicial economy and conserving resources

4   of the parties supports allowing all discovery to go forward

5   and not bifurcating the trial.  If bifurcation would be

6   granted, particularly in a case like this where we're talking

7   about foreign depositions, it's possible we could have

8   multiple depositions of witnesses, some of whom reside in

9   foreign countries, and expense, and inconvenience to both

10  counsel and those witnesses would be apparent.  Moreover, it

11  is much more efficient to work towards one trial and one

12  appeal.  See the <u>Johns</u> --

13            (Tape 119 ends, Tape 120 begins.  Tapes don't

14  match up.)

15            THE COURT:  -- would not be an economical use of

16  the Court or the litigant's resources, and on those grounds

17  the Court is denying the application to bifurcate the trial

18  and staying discovery.

19            Now the other reason why a stay is being sought is

20  based on the so-called <u>Quantum</u> dilemma.  As I understand the

21  application from Teva, they don't believe they should be

22  forced, at this time, to indicate whether or not they're

23  going to rely -- a certain reliance on counsel defense.  They

24  argue by requiring it to participate in discovery on the

25  issue of willfulness we would be prejudiced because we're

1   required to disclose privileged materials or face an adverse

2   inference for failing to do so, as they read the case law out

3   of the Federal Circuit.

4          The Federal Circuit has considered these

5   circumstances in the Quantum case, as I've already cited, and

6   I imagine counsel here is very familiar with the Quantum case

7   and its procedural background.  For the purposes of the

8   record, during the pretrial discovery phase, Quantum moved to

9   compel Tandon to produce opinion letters regarding the

10  patents in suit or, in the alternative, be precluded from

11  making any reference to, or reliance upon counsel as a

12  defense.

13         After an in-camera review, the District Court

14  granted Quantum's motion to compel and later denied the

15  motion to bifurcate discovery at trial and willfulness.

16  Tandon appealed.  The Federal Circuit dismissed the appeal as

17  interlocutory, but noted in dicta, "An accused

18  infringer...should not, without the trial court's careful

19  consideration, be forced to choose between waiving the

20  privilege in order to protect itself from a willfulness

21  finding in which case it may risk prejudicing itself on the

22  question of liability and maintaining the privilege, in which

23  case it may risk being found to be a willful infringer if

24  liability is found.  Trial courts thus should give serious

25  consideration to a separate trial on willfulness whenever the

1   particular attorney-client communications, once inspected by

2   the court in-camera, reveal the defendant is indeed

3   confronted with this dilemma." See the Quantum case at Pages

4   643-44. The court did not consider whether the District

5   Court decisions were proper, but recommended this procedure

6   of reviewing the documents in-camera.

7           In a case decided by Judge Sarokin -- former Judge

8   Sarokin, the Norex (phonetic) case, he construed the dicta in

9   Quantum as "Suggesting that once defendant asserts he's faced

10  with dilemma identified in Quantum, the trial court should

11  inspect the defendant's attorney-client documents in-camera

12  to ascertain that the dilemma is legitimate and "if the

13  dilemma is real...bifurcation of the willfulness issue is an

14  appropriate way to proceed." The Norex case is 1993 WL

15  592531. And quote I just read was from Page 2.

16          Judge Sarokin provided alternative ways that this

17  could be dealt with. He -- just give me a moment.  The

18  District Judge further opined, "If the Magistrate decides

19  that early discovery of defendant's documents would unfairly

20  prejudice defendant on the liability issue, the Magistrate

21  could order the issue of willfulness to be severed.

22  Defendant would then have the opportunity, after a liability

23  determination was reached, to decide whether to assert their

24  reliance upon the advice of counsel defense. Conversely, if

25  the Magistrate determines that a defendant would not be

1  unfairly prejudiced by early disclosure of its attorney-
2  client communications, the Court would be justified in
3  refusing to sever the issue of willfulness and ordering a
4  unified trial.  At this point, defendant would be required to
5  make an election regarding his defenses.  If the defendant
6  chose to assert the advice of counsel defense, plaintiff
7  would be entitled to timely discovery of the attorney-client
8  communications, otherwise, the attorney-client privilege
9  would be preserved."  See the case at Page 2.
10          Judge Sarokin noted, however, that the Magistrate
11  Judge could "still decide not to sever the issue of
12  willfulness based on such other considerations as prejudice
13  to the plaintiff, unnecessary expense and delay, and
14  duplication of evidence."
15          Taking these cases together, the inference is if
16  there's -- there must be an in-camera inspection.  There's
17  been no submission to this Court for any review of any
18  documents.  In any case, after careful consideration, and
19  even when there is an in-camera review, the level of relief
20  granted to a defendant who seeks a stay and bifurcation very
21  much is a fact-sensitive inquiry.  Some courts have granted
22  bifurcation and a stay, even at the mere risk of a Quantum
23  dilemma.  See Novopharm, Ltd. v. Torpharm, Inc., 181 FRD 308
24  at 312 (E.D. N.C. 1998).  See the Princeton Biochem case, 180
25  FRD at 258.

Court Decision                              179

1       Other courts have allowed discovery to proceed on

2   all issues, but phased the trial.  See the Johns Hopkins

3   University case, 160 FRD at Page 36, Haney v. Timesavers,

4   Inc., Civil No. 92-270 (1992 WL 36536 at Page 1), Armstrong

5   Manufacturing v. Wright Machines Tool Company (phonetic),

6   Civil No. 91-1021, 1992 WL 58733 at Page 1 (D.Or. 1992),

7   Latrim Corp. v. Hewlett-Packard (phonetic), 791 F. Supp. 113,

8   118 (E.D.La. 1992).

9       Another option is to allow discovery to proceed on

10  all issues except the advice of counsel issue, leaving the

11  defendant to its Quantum choice of whether to assert the

12  privilege or waive it only after the disposition of

13  dispositive motions.  See the A.L. Hanson Manufacturing v.

14  Bauer Products, Civil No. 03-3642, 2004 WL 1125911 at Page 3

15  (N.D. Ill. 2001).  See William Rieber, LLC, 220 FRD 541.

16      Other courts have concluded willfulness shouldn't

17  be bifurcated at all, discovery should go forward because

18  there'd be no undue prejudice to the defendant.  See the Real

19  case, 195 FRD 625-26, Fuji Machines, 982 F.Supp. at 924.  In

20  those cases the courts have noted that proof of defendant's

21  state of mind was intertwined with the facts underlying the

22  alleged infringement and that the issue of willfulness may be

23  relevant to both liability and damages.  See the Kimberly-

24  Clark case, 131 FRD 609, Smith v. Alaska Pipeline, 538

25  F.Supp. 977, 986 (D.Del. 1982), Braun, Inc. v. Dynamics

1   Corp., 975 F.2d 815 at 822.

2           Some courts have required an election by the date

3   dispositive motions are to be filed.  Kind of the bottom line

4   to all this case law is, different courts are doing different

5   things based on what the cases say and what the circumstances

6   of those cases are.

7           What really informs this Court in large part is

8   the fact this is a bench trial and the concerns can be

9   addressed by virtue of the fact that we're not talking about

10  a jury misusing information, number one.  Number two, there's

11  been no submissions to this Court to review what privilege --

12  what prejudice would occur if the documents were disclosed.

13  So not only would judicial economy be frustrated by the stay,

14  but I don't have anything before me that shows that the

15  Quantum problem is apparent.

16          In Novopharm v. Teva Pharm., the District Court in

17  the Northern District of Illinois denied Teva's motion to

18  bifurcate issues of willfulness and damages from liability

19  finding "judicial economy will be promoted by one trial on

20  all relevant patent issues."  And in response to Teva's

21  Quantum dilemma argument, the court found, "It had failed to

22  show that prejudice would be avoided by a separate trial of

23  willfulness and damages issues" because it produced no

24  documents for in-camera review.

25          Accordingly, Teva's motion is denied.  Discovery

1   will proceed on all issues.  I will set a date by which you

2   can make your election and we can proceed after that.  And

3   I've made reasons with respect to judicial economy, the lack

4   of showing of any prejudice all weigh in favor.

5          With respect to the request to stay everything

6   pending the outcome of -- I mean willfulness discovery with

7   -- pending the Knorr-Bremse case, even if the Federal Circuit

8   is well-positioned to resolve this dilemma, it's been the

9   subject of many different opinions already.  See the A.L.

10  Hanson Manufacturing case.  The decision by the Federal

11  Circuit could be some time off and this Court, like others,

12  will not stay a matter in whole or in part pending its

13  arrival.  See the Cimi v. PPG Industries, Inc. (phonetic),

14  218 FRD 416, 418 (D.Del. 2003).  In that case the court

15  recognized the multitude of litigation related to the opinion

16  of counsel defense and how that may be impacted by the Knorr-

17  Bremse case but noted that "the day of clarification is

18  somewhere in the future and the present parties require an

19  answer now."  See also Pioneer Hybrid International, Inc. v.

20  Ottowa Plant Food, Inc., 219 FRD 135, 147 (N.D. Ia. 2003)

21  finding it "inappropriate for this court to attempt to

22  predict or anticipate what the ruling of the Federal Circuit

23  Court of Appeals may be at some indefinite time in the

24  future.  Rather, the court must follow what is controlling at

25  law at this time."

Court Decision                                    182

1          For similar reasons, this Court will not grant a

2    stay pending the outcome of the Knorr-Bremse case. That's

3    not to say the parties can't stagger when they do things.

4    You may all make a decision that it makes sense to stagger

5    when you accomplish certain types of discovery, but that's a

6    different issue.

7          Okay. The next issue is -- that relates to this

8    is a request for leave to make a dispositive motion on the

9    Glaxo case. So I really didn't hear from the other side on

10   the application on that point.

11         MR. LEWRIS: Your Honor, this whole issue has been

12   before the -- has been on the table since last July. They

13   can go forward and rely on the Glaxo case. They don't have

14   to produce any opinions of counsel.

15         THE COURT: So you don't think -- but I think what

16   they're -- well, let me let you speak for yourself, sorry.

17         MS. BLAIS: The case was decided last week and we

18   think it's legitimate to move on that basis.

19         THE COURT: Tell me about the other dispositive

20   motion practice that would happen in this case. At what

21   point would it happen, after all expert discovery?

22         MR. LEWRIS: Dispositive motions on substantive

23   issues presumably after expert discovery.

24         THE COURT: It would have to be that far out?

25         MR. LEWRIS: Yeah. I would think that -- I don't

B-23