# YOUNG CONAWAY STARGATT & TAYLOR, LLP

BRUCE M. STARGATT
BEN T. CASTLE
SHELDON N. SANDLER
RICHARD A. LEVINE
RICHARD A. ZAPPA
FREDERICK W. IOBST
RICHARD H. MORSE
DAVID C. MCBRIDE
JOSEPH M. NICHOLSON
CRAIG A. KARSNITZ
BARRY M. WILLOUGHBY
JOSY W. INGERSOLL
ANTHONY G. FLYNN
JEROME K. GROSSMAN
EUGENE A. DIPRINZIO
JAMES L. PATTON, JR.
ROBERT L. THOMAS
WILLIAM D. JOHNSTON
TIMOTHY J. SNYDER
BRUCE L. SILVERSTEIN
WILLIAM W. BOWSER
LARRY J. TARABICOS
RICHARD A. DILIBERTO, JR.
MELANIE K. SHARP
CASSANDRA F. ROBERTS
RICHARD J.A. POPPER
TERESA A. CHEEK

NEILLI MULLEN WALSH
JANET Z. CHARLTON
ROBERT S. BRADY
JOEL A. WAITE
BRENT C. SHAFFER
DANIEL P. JOHNSON
CRAIG D. GREAR
TIMOTHY JAY HOUSEAL
MARTIN S. LESSNER
PAULINE K. MORGAN
C. BARR FLINN
NATALIE WOLF
LISA B. GOODMAN
JOHN W. SHAW
JAMES P. HUGHES, JR.
EDWIN J. HARRON
MICHAEL R. NESTOR
MAUREEN D. LUKE
ROLIN P. BISSELL
SCOTT A. HOLT
JOHN T. DORSEY
M. BLAKE CLEARY
CHRISTIAN DOUGLAS WRIGHT
DANIELLE GIBBS
JOHN J. PASCHETTO
NORMAN M. POWELL

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(800) 253-2234 (DE ONLY)
FAX: (302) 571-1253

WWW.YOUNGCONAWAY.COM

DIRECT DIAL: 302.571.6689
DIRECT FAX:  302.576.3334
jshaw@ycst.com

ATHANASIOS E. AGELAKOPOULOS
LISA A. ARMSTRONG
GREGORY J. BABCOCK
JOSEPH M. BARRY
SEAN M. BEACH
DONALD J. BOWMAN, JR.
TIMOTHY P. CAIRNS
KARA HAMMOND COYLE
MARGARET M. DIBIANCA
MARY F. DUGAN
ERIN EDWARDS
KENNETH J. ENOS
IAN S. FREDERICKS
JAMES J. GALLAGHER
SEAN T. GREECHER
STEPHANIE L. HANSEN
DAWN M. JONES
RICHARD S. JULIE
KAREN E. KELLER
JENNIFER M. KINKUS
EDWARD J. KOSMOWSKI
JOHN C. KUFFEL

KAREN E. LANTZ
TIMOTHY E. LENGKEEK
ANDREW A. LUNDGREN
MATTHEW B. LUNN
JOSEPH A. MALFITANO
ADRIA B. MARTINELLI
MICHAEL W. MCDERMOTT
MARIBETH L. MINELLA
EDMON L. MORTON
D. FON MUTTAMARA-WALKER
JENNIFER R. NOEL
JULIE C. PANARO
ADAM W. POFF
SETH J. REIDENBERG
MICHELE SHERRETTA
MONTÉ T. SQUIRE
MICHAEL P. STAFFORD
CHAD S.C. STOVER (SC ONLY)
JOHN E. TRACEY
MARGARET B. WHITEMAN
SHARON M. ZIEG

SPECIAL COUNSEL
JOHN D. MCLAUGHLIN, JR.
ELENA C. NORMAN
KAREN L. PASCALE
PATRICIA A. WIDDOSS

SENIOR COUNSEL
CURTIS J. CROWTHER

OF COUNSEL
STUART B. YOUNG
EDWARD B. MAXWELL, 2ND

April 11, 2006

**BY HAND DELIVERY**
The Honorable Kent A. Jordan
United States District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801

Re:   *In Re '318 Patent Infringement Litigation*, C.A. No. 05-356-KAJ

Dear Judge Jordan:

This Court should deny plaintiffs' motion to compel. Plaintiffs' assertion that defendants are "unwilling[] to present witnesses" is incorrect. (Pls' 3/31/06 Mot. at 1) To the contrary, all of the defendants are of course willing to present witnesses and have agreed to provide witnesses where the 30(b)(6) topics are directed to relevant subject matter. The only issues for which defendants have not readily agreed to provide testimony are topics that are inappropriate for 30(b)(6) testimony, are unrelated to any issue in the case, or are outside agreements among counsel. And any delay in providing witnesses of which plaintiffs' complain was the result of reasonable attempts by the defendants to discuss with plaintiffs why they sought deposition topics on these disputed subjects and how such disputes could be resolved so that appropriate witnesses could be designated.

As an initial matter, it bears emphasis that (1) the only deposition notices at issue here are those served pursuant to Rule 30(b)(6); and that (2) the only remaining issue in this case is the invalidity of the two asserted method-of-use claims of the '318 patent. Notwithstanding the limited scope of this action, with specific reference to the Teva defendants, plaintiffs served three deposition notices seeking testimony on 43 different topics — some relevant, some not, and some simply puzzling. (*See* Teva Inc.'s Objections to the Pls' 3 Rule 30(b)(6) notices, Ex. A, B, C respectively) For example, one entire 30(b)(6) notice is directed to "negotiations or communication with Synaptech or Dr. Bonnie Davis" when neither plaintiffs nor Teva are aware of any such negotiations or communications. (Ex. A) Another 30(b)(6) notice is directed to privileged legal analysis conducted in connection with preparation of the paragraph IV certification — an issue now out of the case. (Ex. B) In an effort to address these issues, the Teva defendants served objections (Exs. A, B, C) and engaged in a lengthy two-and-one-half hour meet and confer with plaintiffs and the other defendants about plaintiffs' Rule 30(b)(6) notices consistent with this Court's directive that "[y]ou should be talking to each other and coming to some sensible agreement about what is relevant and what isn't." (2/7/06 Tr. At 28 )

While defendants thought some sensible agreements had been reached during the meet and confer and that additional proposals had been agreed to be further considered and discussed, plaintiffs subsequently

# YOUNG CONAWAY STARGATT & TAYLOR, LLP

The Honorable Kent A. Jordan
Page 2

reconsidered and instead are now insisting that deposition testimony on *all* 43 topics is necessary.[1]  The Teva defendants have since provided dates for witnesses on many of the requested topics. In fact, the only topics at issue are those that plaintiffs make no effort to defend in their motion and for which deposition testimony is inappropriate. Those topics fall into three general categories.

**Contention Discovery.** Plaintiffs have served multiple topics directed to the basis for invalidity contention statements in the Paragraph IV notice and legal pleadings. (Ex. B & C) As these topics relate to the paragraph IV notice, such topics are directed to willful infringement, which has now been dismissed from the case. Plaintiffs' refusal to withdraw the requests are an improper attempt to invade the attorney client and/or work product privileges. As the topics relate to the basis for invalidity assertions in Teva's answer and counterclaim, such discovery is better suited to interrogatory discovery. *See JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002) ("30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means."). The witnesses who will testify on the ultimate issue of invalidity for both sides are expert witnesses, not the attorneys who prepared the legal pleadings, and the Teva defendants have agreed to present witnesses on factual issues relating to invalidity such as allegations of copying.

**Unrelated Products.** In its Rule 30(b)(6) notices to Teva, plaintiffs served 6 topics directed to certain highly confidential, proprietary products being developed by Teva Ltd. in Israel. (Ex. C)  Indeed, while plaintiffs have not sought testimony related to the research and development of the ANDA product at issue in this case, plaintiffs now seek extensive deposition testimony on these *non-galantamine products* that are *not accused of infringement* in this matter. There is no basis for this discovery.

*First,* the parties already agreed not to take discovery on such products. In fact, in response to multiple Teva inquires since November, plaintiffs have categorically refused to provide discovery on plaintiffs' other *galantamine* products and other Alzheimer's drugs. *See, e.g.*, E. Donovan 11/15/03 letter to U. Everett at 2 ("Are the Janssen Plaintiffs prepared to produce their own documents concerning evaluation, research, or development related to any product intended to treat Alzheimer's disease or Alzheimer-type dementia, including the Risperdal and Risperdal Contra research products . . . ."); K. Robinson 1/11/06 to P. Dube at 1 (same); E. Donovan 1/23/06 to U. Everett at 1 (collectively, Ex. E). After plaintiffs' counsel obstructed inquiry at depositions taken by defendants about products other than the specific branded product at issue in this action,[2] the defendants proposed the parties agree that such discovery was unnecessary.

---

[1]  Plaintiffs did concede that they did not need testimony on non-infringement contentions that have long been out of the case. So there is no misunderstanding, plaintiffs' letter that purports to recount the meet and confer conference (Ex. L to Pls' Mot) materially misstates the discussion, the positions of the parties, and promises made. (*See* K. Robinson 3/30/06 letter to K. Calia (Ex. D)).

[2]  *See, e.g., B. Davis Dep.* at 527 ("Q. Can you identify for me the pharmaceutical companies that you have had communications with [regarding galantamine analogues for use in the treatment of Alzheimer's disease]. A. You know, it just seems to me that that's such a private thing –. [Counsel for Synaptech]: We need to go to the judge on this. If you consider this to be relevant, I think we need to be to the judge from Synaptech's standpoint."); *see also B. Davis Dep.* at 529-30 ("[Counsel for Janssen]:You are putting a series of questions now to Dr. Davis that in no way relates to the '318 patent or its prosecution or the galanthamine product that is currently made by Janssen called Razadyne. It is a series of questions on a later patent she has on presumably an advanced compound and she's in negotiations with other pharmaceutical companies."); *see also J. Richards Dep.* at 276-77 ("[Counsel for Janssen]: Not only that, but I object to the relevance of [questions regarding another B. Davis patent regarding the use of novel compounds to treat Alzheimer's Disease]. This was after the '318 patent."). (Ex. F)

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Kent A. Jordan
Page 3

Plaintiffs were understood to agree to this proposal but now seek to distinguish that agreement as only limited to document discovery. This contrived distinction is wrong and nonsensical and contrary to plaintiffs' own position at depositions. To the extent such discovery was genuinely relevant in any material way, no party would reasonably agree to take (or expect to obtain) deposition discovery without the production of relevant documents. Furthermore, Plaintiffs' own actions confirm there is no need for such discovery. Plaintiffs noticed the third party deposition of Wyeth — a company like Teva Ltd. that invests in proprietary research products related to Alzheimer's disease — and did not ask a single question about Wyeth's own AD research products.

*Second,* plaintiffs cannot justify the relevance of this discovery and plaintiffs' letter brief identifies no basis for it. Plaintiffs argued at the meet and confer conference that the discovery on these two products relates to "failure of others" but neither of the proprietary products — which involve novel compounds— have "failed." Nor can plaintiffs claim that the topics are somehow directed to secondary considerations of obviousness when plaintiffs seek broad discovery of its competitor's marketing strategies, projected sales, and regulatory approval related to future products. (Ex. B at 6 & 12) Tellingly, when obstructing discovery on plaintiffs' own such proprietary products, plaintiffs insist this discovery is not relevant. See *supra* note 2.

*Third,* the defendants are unfairly prejudiced by plaintiffs sudden change of position after refusing to provide any reciprocal discovery on plaintiffs' other AD and galantamine products for 7 months. Indeed, the defendants did not receive the substantial majority of Janssen's NDA referenced in the Complaint — *over 130,000 pages* — until last week. *See, e.g.,* K. Calia 3/10/06 letter, Ex. G, at 2 ("[plaintiffs] hope to complete" their NDA-related production "by the end of March.") Similarly, defendants have yet to obtain written discovery that would allow them to take depositions on plaintiffs yet-to-be-disclosed commercial success argument; plaintiffs last promised in late March to supplement their interrogatory responses and produce "*20-30 boxes of documents pertaining to marketing and sales.*" (K. Calia 3/27/06, Ex. H, at 3.) It is far too late to permit plaintiffs to change their position now and initiate discovery that both sides had previously agreed to forgo — including discovery on plaintiffs' own proprietary research and development pipeline.

**Non-Existent License Negotiations.** There is no point in causing the Teva defendants to waste time and money putting up a witness on plaintiffs' 10 different topics directed to license negotiations about the '318 patent with Bonnie Davis and Synaptech *because neither party is aware of any such negotiations ever occurring.* The Teva defendants are not aware of any. Nor, apparently, are plaintiffs, as Teva has repeatedly asked for the basis on which plaintiffs believe such negotiations did occur (which, if they had, would have been in the 1980's) and plaintiffs can identify none. (Ex. A (inquiring for basis of belief)) Certainly Dr. Davis and Synaptech have not identified any. Evidence of non-existent license negotiations is of no relevance to any claim or defense in this action. To the extent plaintiffs need discovery on non-existent facts, there are less costly and disruptive means of obtaining it than a Rule 30(b)(6) deposition.

Respectfully Submitted,

John W. Shaw (No. 3362)

Attachments
cc:    Clerk of the Court (by E-Filing and Hand Delivery)
       All Local Counsel of Record (by E-Filing and Hand Delivery)