# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE: '318 PATENT LITIGATION

:
:
:
:        Civil Action No. 05-356 (KAJ)
:        (Consolidated)
:

### DEFENDANT TEVA PHARMACEUTICALS USA, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' MARCH 21, 2006 NOTICE OF 30(b)(6) DEPOSITION

Pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, Defendant Teva Pharmaceuticals USA, Inc. ("Teva USA") responds to Plaintiffs' March 21, 2006 Notice of 30(b)(6) Deposition.

### GENERAL OBJECTIONS

Teva USA objects to the location for which Plaintiffs have noticed this deposition. Teva USA will make any appropriate 30(b)(6) Representative(s) available for deposition pursuant to the October 21, 2005 Scheduling Order. Teva USA also objects to March 21, 2006 as the date for the deposition. Teva USA and its counsel are not available on this date and will provide Plaintiffs with alternative dates shortly.

### SPECIFIC OBJECTIONS TO THE TOPICS OF EXAMINATION

**TOPIC NO. 1.    Teva's Paragraph IV notice including, without limitation, the meaning of, basis for, and any evaluation or analysis concerning the statement set forth in the letter that "Claims 1, 4 and 5 of the '318 patent are invalid under 35 U.S.C. § 103 because they are obvious in view of the ... prior art."**

**RESPONSE**

Teva USA objects to this topic as directed to willful infringement, which has been dismissed from the case. Teva USA objects to the extent this topic calls for information subject to the attorney client privilege or work product privilege. Teva USA objects to the extent this topic is

directed to contentions—as such discovery should be taken through interrogatories—and to the extent this topic purports to seek expert discovery in advance of the date for commencement of such discovery set in the Court's Scheduling Order. *See JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002) ("30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means."); *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275, 286 (N.D. Cal. 1991), *rev'd* on other grounds, 765 F. Supp. 611 (N.D. Cal. 1991) (finding contention interrogatory, not Rule 30(b)(6) deposition, more appropriate in very complex and highly technical lawsuit). Teva USA objects to this topic as duplicative of other topics to the extent Plaintiffs contend the topics relate to facts underlying contentions.

**TOPIC NO. 2.**    **Teva's Paragraph IV notice including, without limitation, the meaning of, basis for, and any evaluation or analysis concerning the statement set forth in the letter that "the Bhasker Article renders claims 1, 4 and 5 of the '318 patent are invalid under 35 U.S.C. § 103 because they are would have been obvious to one of ordinary skill in the art at the time of the invention."**

**RESPONSE**

Teva USA objects to this topic as directed to willful infringement, which has been dismissed from the case. Teva USA objects to the extent this topic calls for information subject to the attorney client privilege or work product privilege. Teva USA objects to the extent this topic is directed to contentions—as such discovery should be taken through interrogatories—and to the extent this topic purports to seek expert discovery in advance of the date for commencement of such discovery set in the Court's Scheduling Order. *See JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002) ("30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means."); *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D.

275, 1286 (N.D. Cal. 1991), rev'd on other grounds, 765 F. Supp. 611 (N.D. Cal. 1991) (finding

contention interrogatory, not Rule 30(b)(6) deposition, more appropriate in very complex and

highly technical lawsuit). Teva USA objects to this topic as duplicative of other topics to the

extent Plaintiffs contend the topics relate to facts underlying contentions.

**TOPIC NO. 3.**    **Teva's Paragraph IV notice including, without limitation, the meaning of, basis for, and any evaluation or analysis concerning the statement set forth in the letter that "claim 1 … is invalid under 35 U.S.C. § 102(b) as anticipated by P.A. Bhasker, *Medical Management of Dementia*."**

<u>RESPONSE</u>

Teva USA objects to this topic as directed to willful infringement, which has been dismissed

from the case. Teva USA objects to the extent this topic calls for information subject to the

attorney client privilege or work product privilege. Teva USA objects to the extent this topic is

directed to contentions—as such discovery should be taken through interrogatories—and to the

extent this topic purports to seek expert discovery in advance of the date for commencement of

such discovery set in the Court's Scheduling Order. *See JPMorgan Chase Bank v. Liberty Mut.

Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002) ("30(b)(6) depositions, are designed to discover

facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must

be discovered by other means."); *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D.

275, 1286 (N.D. Cal. 1991), rev'd on other grounds, 765 F. Supp. 611 (N.D. Cal. 1991) (finding

contention interrogatory, not Rule 30(b)(6) deposition, more appropriate in very complex and

highly technical lawsuit). Teva USA objects to this topic as duplicative of other topics to the

extent Plaintiffs contend the topics relate to facts underlying contentions.

**TOPIC NO. 4.**    The circumstances under which Teva first became aware of the P.A. Bhasker article cited in Teva's Paragraph IV notice, *Medical Management of Dementia*, including how Teva learned of it, who was involved in this first awareness, and any evaluation conducted of it by or on behalf of Teva, then or subsequent to the time Teva became aware of it.

**RESPONSE**

Teva USA objects to this topic as directed to willful infringement, which has been dismissed

from the case. Teva USA objects to the extent this topic calls for information subject to the

attorney client privilege or work product privilege.

**TOPIC NO. 5.**    Any evaluation, consideration or discussion conducted by Teva to market or develop the Generic Product, including the names and responsibilities of all persons who were involved in the evaluation, consideration or discussion by Teva to market or develop the Generic Product.

**RESPONSE**

Teva USA objects to this topic as overly broad and to the extent it unreasonably expects a

witness to identify all names and responsibilities of persons described in this topic. Teva USA

objects to the extent the this topic calls for information subject to the attorney client privilege or

work product privilege.

**TOPIC NO. 6.**    The decision to file an application with the FDA seeking approval to manufacture and sell a drug product containing galantamine.

**RESPONSE**

Teva USA objects to this topic as directed to willful infringement, which has been dismissed

from the case. Teva USA further objects to the extent this topic calls for information subject to

the attorney client privilege or work product privilege.

**TOPIC NO. 7.**    The benefits, including revenues and profits, that Teva projects, anticipates, expects, or forecasts it will obtain should Teva's ANDA receive approval from the U.S. Food and Drug Administration.

**RESPONSE**

Teva USA objects to this topic to the extent it assumes the existence of information that does not

exist.

**TOPIC NO. 8.**    Marketing strategies, marketing plans, and projected sales for Teva's Generic Product.

**RESPONSE**

Teva USA objects to this topic to the extent it assumes the existence of information that does not

exist.

**TOPIC NO. 9.**    The names and responsibilities of all persons who were involved in any evaluation, consideration or discussion to license or market Rasagiline as a treatment for Alzheimer's Disease conducted by or on behalf of Teva.

**RESPONSE**

Teva USA objects to this topic as seeking highly proprietary information unrelated to any issue in

this case and for which Plaintiffs have refused to provide information. *See, e.g., B. Davis Dep.* at

211 ("Q. Can you identify for me the pharmaceutical companies that you have had

communications with [regarding galanthamine analogues for use in the treatment of Alzheimer's

disease]. A. You know, it just seems to me that that's such a private thing –. [Counsel for

Synaptech]: We need to go to the judge on this. If you consider this to be relevant, I think we

need to be to the judge from Synaptech's standpoint."); *see also B. Davis Dep.* at 217 ("[Counsel

for Janssen]:You are putting a series of questions here to Dr. Davis that in no way relates to the

'318 patent, its prosecution or the galanthamine product that is currently made by Janssen called

Razadyne. It is a series of questions on a later patent she has on presumably an advanced

compound and she's in negotiations with other pharmaceutical companies.")); *see also J.

Richards Dep.* at 276-77 ("[Counsel for Janssen]: Not only that, but I object to the relevance of

[questions regarding another B. Davis patent regarding the use of novel compounds to treat

Alzheimer's Disease]. This was after the '318 patent."); *see also Plaintiff Counsel's Objections

on behalf of Intelligen and Kenneth Davis* (refusing to produce documents regarding other drugs

used to treat Alzheimer's disease in response to Request No. 5 on the basis such information was

"neither relevant to the subject matter of this lawsuit nor reasonably caluculated to lead to the discvoery of admissible evidence.")

**TOPIC NO. 10.** **Marketing strategies, marketing plans, and projected sales for Rasagiline as a treatment for Alzheimer's Disease.**

**RESPONSE**

Teva USA objects to this topic as seeking highly proprietary information unrelated to any issue in this case and for which Plaintiffs have refused to provide information. *See, e.g., B. Davis Dep.* at 211 ("Q. Can you identify for me the pharmaceutical companies that you have had communications with [regarding galanthamine analogues for use in the treatment of Alzheimer's disease]. A. You know, it just seems to me that that's such a private thing –. [Counsel for Synaptech]: We need to go to the judge on this. If you consider this to be relevant, I think we need to be to the judge from Synaptech's standpoint."); *see also B. Davis Dep.* at 217 ("[Counsel for Janssen]: You are putting a series of questions here to Dr. Davis that in no way relates to the '318 patent, its prosecution or the galanthamine product that is currently made by Janssen called Razadyne. It is a series of questions on a later patent she has on presumably an advanced compound and she's in negotiations with other pharmaceutical companies.")); *see also J. Richards Dep.* at 276-77 ([Counsel for Janssen]: Not only that, but I object to the relevance of [questions regarding another B. Davis patent regarding the use of novel compounds to treat Alzheimer's Disease]. This was after the '318 patent."]; *see also Plaintiff Counsel's Objections on behalf of Intelligen and Kenneth Davis* (refusing to produce documents regarding other drugs used to treat Alzheimer's disease in response to Request No. 5 on the basis such information was "neither relevant to the subject matter of this lawsuit nor reasonably caluculated to lead to the discvoery of admissible evidence.").

**TOPIC NO. 11.**  Each and every contribution and/or input that Teva, or any employee or agent of Teva, has made to the preparation, decision to file, filing and/or prosecution of Teva's ANDA, including: (a) any information relating to regulatory procedures and strategies for obtaining regulatory approval of the Generic Product of Teva's ANDA; (b) any information comprising, relating to or contained in the 21 U.S.C. § 355(j)(2)(A)(vii)(IV) certifications submitted in connection with Teva's ANDA; and (c) any information comprising, relating to or contained in the statements of factual and legal basis for invalidity, unenforceability, and/or noninfringement included with the notice of these certifications.

**RESPONSE**

Teva USA objects to this topic as directed to willful infringement, which has been dismissed from the case.  Teva USA objects to the extent this topic calls for information subject to the attorney client privilege or work product privilege.  Teva USA objects to the extent this topic is directed to contentions—as such discovery should be taken through interrogatories—and to the extent this topic purports to seek expert discovery in advance of the date for commencement of such discovery set in the Court's Scheduling Order.  *See JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002) ("30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means."); *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275, 1286 (N.D. Cal. 1991), rev'd on other grounds, 765 F. Supp. 611 (N.D. Cal. 1991) (finding contention interrogatory, not Rule 30(b)(6) deposition, more appropriate in very complex and highly technical lawsuit).  Teva USA objects to this topic as duplicative of other topics to the extent Plaintiffs contend the topics relate to facts underlying contentions.

**TOPIC NO. 12.**  The factual basis for Teva's proposed assertion that Teva's ANDA is indicated for the treatment of mild to moderate Alzheimer's disease.

**RESPONSE**

Teva USA objects to this topic as self evident and not requiring a witness.

**TOPIC NO. 13.** The circumstances in which Teva first became aware of galantamine as a treatment for Alzheimer's disease, including but not limited to the date on which this occurred and the people involved.

**RESPONSE**

Teva USA objects to this topic as directed to willful infringement, which has been dismissed

from the case. Teva USA objects to the extent this topic calls for information subject to the

attorney client privilege or work product privilege.

**TOPIC NO. 14.** The circumstances in which Teva first became aware of the '318 patent including but not limited to the date on which this occurred and the people involved.

**RESPONSE**

Teva USA objects to this topic as directed to willful infringement, which has been dismissed

from the case. Teva USA objects to the extent this topic calls for information subject to the

attorney client privilege or work product privilege.

**TOPIC NO. 15.** Any consideration or evaluation taken by Teva to develop a drug product containing galantamine for the treatment of Alzheimer's Disease.

**RESPONSE**

Teva USA objects to this topic as directed to willful infringement, which has been dismissed

from the case. Teva USA objects to this topic as duplicative of other topics directed to the

ANDA product. Teva USA incorporates herein its objections to other topics related to the

ANDA product.

**TOPIC NO. 16.** Identification of all individuals, whether employees of Teva, or third parties, having a role in the consideration or evaluation by Teva of developing a drug product containing galantamine for the treatment of Alzheimer's disease that is the subject of Topic 15.

**RESPONSE**

Teva USA objects to this topic as overly broad in seeking identification of "all individuals"

meeting the description in this topic. Teva USA objects to this topic as directed to willful

infringement, which has been dismissed from the case. Teva USA objects to this topic as

8

duplicative of other topics directed to the ANDA product. Teva USA incorporates its objections

to other topics related to the ANDA product.

**TOPIC NO. 17.   Any consideration or evaluation by Teva of licensing the '318 patent.**

**RESPONSE**

Teva USA objects to this topic as assuming the existence of information that does not exist. To

the extent Plaintiffs have a good faith basis for the belief that such information does exist, please

provide it.

**TOPIC NO. 18.   Identification of all individuals, whether employees of Teva or third
parties, having a role in the consideration or evaluation by Teva of licensing the '318 patent
that is the subject of Topic 17.**

**RESPONSE**

Teva USA objects to this topic as assuming the existence of information that does not exist. To

the extent Plaintiffs have a good faith basis for the belief that such information does exist, please

provide it.

**TOPIC NO. 19.   Any effort by Teva to develop any drug product other than  the Generic
Product set forth, in Teva's ANDA.**

**RESPONSE**

Teva USA objects to this topic as overly broad, unduly burdensome, and directed to information

not relevant to any issue in this case.

**TOPIC NO. 20.   Identification of all individuals, whether employees of Teva or third
parties, having a role in the research, development or testing of such a treatment responsive
to Topic 18 and a description of those roles.**

**RESPONSE**

Teva USA objects to this topic as assuming the existence of information that does not exist. To

the extent Plaintiffs have a good faith basis for the belief that such information does exist, please

provide it.

**TOPIC NO. 21.**  The circumstances surrounding Teva's first decision that Rasagiline could be used to treat Alzheimer's Disease and any analysis or evaluation for treating Alzheimer's Disease.

**RESPONSE**

Teva USA objects to this topic as seeking highly proprietary information unrelated to any issue in this case and for which Plaintiffs have refused to provide information. *See, e.g., B. Davis Dep.* at 211 ("Q. Can you identify for me the pharmaceutical companies that you have had communications with [regarding galanthamine analogues for use in the treatment of Alzheimer's disease]. A. You know, it just seems to me that that's such a private thing –. [Counsel for Synaptech]: We need to go to the judge on this. If you consider this to be relevant, I think we need to be to the judge from Synaptech's standpoint."); *see also B. Davis Dep.* at 217 ("[Counsel for Janssen]: You are putting a series of questions here to Dr. Davis that in no way relates to the '318 patent, its prosecution or the galanthamine product that is currently made by Janssen called Razadyne. It is a series of questions on a later patent she has on presumably an advanced compound and she's in negotiations with other pharmaceutical companies.")); *see also J. Richards Dep.* at 276-77 ([Counsel for Janssen]: Not only that, but I object to the relevance of [questions regarding another B. Davis patent regarding the use of novel compounds to treat Alzheimer's Disease]. This was after the '318 patent."]; *see also Plaintiff Counsel's Objections on behalf of Intelligen and Kenneth Davis* (refusing to produce documents regarding other drugs used to treat Alzheimer's disease in response to Request No. 5 on the basis such information was "neither relevant to the subject matter of this lawsuit nor reasonably caluculated to lead to the discvoery of admissible evidence.").

**TOPIC NO. 22.**   Any evaluation, investigation, or analysis suggesting that Rasagiline is not useful as a treatment for Alzheimer's Disease.

**RESPONSE**

Teva USA objects to this topic as seeking highly proprietary information unrelated to any issue in this case and for which Plaintiffs have refused to provide information. *See, e.g., B. Davis Dep.* at 211 ("Q. Can you identify for me the pharmaceutical companies that you have had communications with [regarding galanthamine analogues for use in the treatment of Alzheimer's disease]. A. You know, it just seems to me that that's such a private thing –. [Counsel for Synaptech]: We need to go to the judge on this. If you consider this to be relevant, I think we need to be to the judge from Synaptech's standpoint."); *see also B. Davis Dep.* at 217 ("[Counsel for Janssen]: You are putting a series of questions here to Dr. Davis that in no way relates to the '318 patent, its prosecution or the galanthamine product that is currently made by Janssen called Razadyne. It is a series of questions on a later patent she has on presumably an advanced compound and she's in negotiations with other pharmaceutical companies.")); *see also J. Richards Dep.* at 276-77 ([Counsel for Janssen]: Not only that, but I object to the relevance of [questions regarding another B. Davis patent regarding the use of novel compounds to treat Alzheimer's Disease]. This was after the '318 patent."]; *see also Plaintiff Counsel's Objections on behalf of Intelligen and Kenneth Davis* (refusing to produce documents regarding other drugs used to treat Alzheimer's disease in response to Request No. 5 on the basis such information was "neither relevant to the subject matter of this lawsuit nor reasonably caluculated to lead to the discvoery of admissible evidence.").

**TOPIC NO. 23.**   Teva's decision to evaluate, analyze, or investigate cholinesterase inhibitor derivatives, including but not limited to TV3326 and TV3279.

**RESPONSE**

Teva USA objects to this topic as seeking highly proprietary information unrelated to any issue in

this case and for which Plaintiffs have refused to provide information. *See, e.g., B. Davis Dep.* at 211 ("Q. Can you identify for me the pharmaceutical companies that you have had communications with [regarding galanthamine analogues for use in the treatment of Alzheimer's disease]. A. You know, it just seems to me that that's such a private thing –. [Counsel for Synaptech]: We need to go to the judge on this. If you consider this to be relevant, I think we need to be to the judge from Synaptech's standpoint."); *see also B. Davis Dep.* at 217 ("[Counsel for Janssen]: You are putting a series of questions here to Dr. Davis that in no way relates to the '318 patent, its prosecution or the galanthamine product that is currently made by Janssen called Razadyne. It is a series of questions on a later patent she has on presumably an advanced compound and she's in negotiations with other pharmaceutical companies.")); *see also J. Richards Dep.* at 276-77 ([Counsel for Janssen]: Not only that, but I object to the relevance of [questions regarding another B. Davis patent regarding the use of novel compounds to treat Alzheimer's Disease]. This was after the '318 patent."]; *see also Plaintiff Counsel's Objections on behalf of Intelligen and Kenneth Davis* (refusing to produce documents regarding other drugs used to treat Alzheimer's disease in response to Request No. 5 on the basis such information was "neither relevant to the subject matter of this lawsuit nor reasonably caluculated to lead to the discvoery of admissible evidence.").

**TOPIC NO. 24.**   **Teva's efforts to obtain any regulatory approval from any authority to use Rasagiline or any derivative of it as a treatment of Alzheimer's Disease, including without limitation whether Teva has obtained or failed to obtain such approval.**

**RESPONSE**

Teva USA objects to this topic as seeking highly proprietary information unrelated to any issue in this case and for which Plaintiffs have refused to provide information. *See, e.g., B. Davis Dep.* at 211 ("Q. Can you identify for me the pharmaceutical companies that you have had

communications with [regarding galanthamine analogues for use in the treatment of Alzheimer's disease]. A. You know, it just seems to me that that's such a private thing –. [Counsel for Synaptech]: We need to go to the judge on this. If you consider this to be relevant, I think we need to be to the judge from Synaptech's standpoint."); *see also B. Davis Dep.* at 217 ("[Counsel for Janssen]: You are putting a series of questions here to Dr. Davis that in no way relates to the '318 patent, its prosecution or the galanthamine product that is currently made by Janssen called Razadyne. It is a series of questions on a later patent she has on presumably an advanced compound and she's in negotiations with other pharmaceutical companies.")); *see also J. Richards Dep.* at 276-77 ([Counsel for Janssen]: Not only that, but I object to the relevance of [questions regarding another B. Davis patent regarding the use of novel compounds to treat Alzheimer's Disease]. This was after the '318 patent."]; *see also Plaintiff Counsel's Objections on behalf of Intelligen and Kenneth Davis* (refusing to produce documents regarding other drugs used to treat Alzheimer's disease in response to Request No. 5 on the basis such information was "neither relevant to the subject matter of this lawsuit nor reasonably caluculated to lead to the discvoery of admissible evidence.").

**TOPIC NO. 25.** **The factual and legal bases for Teva's statement that each claim of the '318 patent is invalid for failure to satisfy one or more of sections 101, 102, 103,112, and 116 of Title 35 of the United States Code (Second Defense).**

**RESPONSE**

Teva USA objects to the extent this topic is directed to contentions—as such discovery should be taken through interrogatories—and to the extent this topic purports to seek expert discovery in advance of the date for commencement of such discovery set in the Court's Scheduling Order. *See JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002) ("30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to

the extent discoverable at all prior to trial, must be discovered by other means."); *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275, I286 (N.D. Cal. 1991), rev'd on other grounds, 765 F. Supp. 611 (N.D. Cal. 1991) (finding contention interrogatory, not Rule 30(b)(6) deposition, more appropriate in very complex and highly technical lawsuit). Teva USA objects to this topic as duplicative of other topics to the extent Plaintiffs contend the topics relate to facts underlying contentions.

**TOPIC NO. 26.** **The factual and legal bases for Teva's Second Claim for Relief (declaratory judgment of invalidity) according to its proof elements, including an element-by-element comparison of each asserted claim of the '318 patent to the prior art Teva relies upon and the motivation of one of skill in the art to combine any references under 35 U.S.C. § 103, as well as a description of any non-prior ad defenses such as lack of enablement, insufficient written description, failure to disclose best mode, or claim indefiniteness under 35 U.S.C. § 112.**

**RESPONSE**

Teva USA objects to the extent this topic is directed to contentions—as such discovery should be taken through interrogatories—and to the extent this topic purports to seek expert discovery in advance of the date for commencement of such discovery set in the Court's Scheduling Order. *See JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002) ("30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means."); *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275, I286 (N.D. Cal. 1991), rev'd on other grounds, 765 F. Supp. 611 (N.D. Cal. 1991) (finding contention interrogatory, not Rule 30(b)(6) deposition, more appropriate in very complex and highly technical lawsuit). Teva USA objects to this topic as duplicative of other topics to the extent Plaintiffs contend the topics relate to facts underlying contentions.

**TOPIC NO. 27.**  **The identity and location of documents and things concerning the foregoing topics.**

**RESPONSE**

Teva USA objects to this topic as overly broad.  Teva USA incorporates its objections to the other topics included within the scope of this topic.

**TOPIC NO. 28.**   **Teva's document retention policies from 1986 to the present.**

**RESPONSE**

Teva USA objects to this topic to the extent it seeks information unrelated to the claims and defenses in this action.

**TOPIC NO. 29.**   **Persons knowledgeable about the subject matter of the foregoing topics.**

**RESPONSE**

Teva USA objects to this topic as overly broad.  Teva USA incorporates its objections to the other topics included within the scope of this topic.

Respectfully submitted,

Daniel F. Attridge, P.C.
Edward C. Donovan
Karen M. Robinson
Corey J. Manley
**KIRKLAND & ELLIS LLP**
655 15th Street, N.W.
Washington, DC 20005-5793
(202) 879-5000

Josy W. Ingersoll (Bar No. 1088)
John W. Shaw (Bar No. 3362)
Karen E. Keller (Bar No. 4489)
**YOUNG CONAWAY STARGATT
    & TAYLOR, LLP**
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600

*Attorneys for Teva Pharmaceuticals USA, Inc.
and Teva Pharmaceutical Industries Ltd.*

Dated: 3/15/06

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **IN RE: '318 PATENT LITIGATION** | : | |
| | : | |
| | : | **Civil Action No. 05-356 (KAJ)** |
| | : | **(Consolidated)** |
| | : | |

### DEFENDANT TEVA PHARMACEUTICALS USA, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' MARCH 22, 2006 NOTICE OF 30(b)(6) DEPOSITION

Pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, Defendant Teva Pharmaceuticals USA, Inc. ("Teva USA") responds to Plaintiffs' March 22, 2006 Notice of 30(b)(6) Deposition.

### GENERAL OBJECTIONS

Teva USA objects to the location for which Plaintiffs have noticed this deposition. Teva USA will make any appropriate 30(b)(6) Representative(s) available for deposition pursuant to the October 21, 2005 Scheduling Order. Teva USA also objects to March 22, 2006 as the date for the deposition. Teva USA and its counsel are not available on this date and will provide Plaintiffs with alternative dates shortly.

### SPECIFIC OBJECTIONS TO THE TOPICS OF EXAMINATION

**TOPIC NO. 1.** **Teva's Paragraph IV notice including, without limitation, the meaning of, basis for, and any evaluation or analysis concerning the statement set forth in the letter that "Teva's galantamine tablets will not infringe any valid or enforceable claim of U.S. Patent N[o]. 4,553,318."**

**RESPONSE**

Teva USA objects to this topic as duplicative of numerous topics in Plaintiffs' March 21, 2006 Rule 30(b)(6) Notice of Deposition. *See, e.g.*, Topic 1. Teva USA objects to this topic as directed to willful infringement, which has been dismissed from the case. Teva USA objects to

the extent this topic calls for information subject to the attorney client privilege or work product privilege.  Teva USA objects to the extent this topic is directed to contentions—as such discovery should be taken through interrogatories—and to the extent this topic purports to seek expert discovery in advance of the date for commencement of such discovery set in the Court's Scheduling Order.  *See JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002) ("30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means."); *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275, 1286 (N.D. Cal. 1991), rev'd on other grounds, 765 F. Supp. 611 (N.D. Cal. 1991) (contention interrogatory, not Rule 30(b)(6) deposition, more appropriate in very complex and highly technical lawsuit).  Teva USA objects to this topic as duplicative of other topics to the extent Plaintiffs contend the topics relate to facts underlying contentions.

**TOPIC NO. 2.**    **Any analysis, discussion, or evaluation of the '318 patent conducted by or on behalf of Teva, including but not limited to, identification of all individuals involved.**

**RESPONSE**

Teva USA objects to this topic as duplicative of numerous topics in Plaintiffs' March 21, 2006 Rule 30(b)(6) Notice of Deposition.  Teva USA objects to this topic as directed to willful infringement, which has been dismissed from the case.  Teva USA objects to the extent this topic calls for information subject to the attorney client privilege or work product privilege.

**TOPIC NO. 3.**    **Documents, laboratory notes, or minutes, of any analysis, discussion, or evaluation of the '318 patent conducted by or on behalf of Teva.**

**RESPONSE**

Teva USA objects to this topic as duplicative of numerous topics in Plaintiffs' March 21, 2006 Rule 30(b)(6) Notice of Deposition.  Teva USA objects to this topic as directed to willful

2

infringement, which has been dismissed from the case. Teva USA objects to the extent this topic

calls for information subject to the attorney client privilege or work product privilege.

**TOPIC NO. 4.    The factual and legal bases for Teva's First Defense that the manufacture, use, offering for sale, sale or importation of the galantamine hydrobromide tablets that are the subject of Teva's ANDA will not infringe directly or indirectly any valid claim of the '318 patent.**

**RESPONSE**

Teva USA objects to this topic as duplicative of numerous topics in Plaintiffs' March 21, 2006

Rule 30(b)(6) Notice of Deposition. *See, e.g.,* Topic 1. Teva USA objects to this topic to the

extent it is directed to infringement, which has been dismissed from the case. Teva USA objects

to the extent this topic calls for information subject to the attorney client privilege or work

product privilege. Teva USA objects to the extent this topic is directed to contentions—as such

discovery should be taken through interrogatories—and to the extent this topic purports to seek

expert discovery in advance of the date for commencement of such discovery set in the Court's

Scheduling Order. *See JPMorgan Chase Bank v. Liberty Mut. Ins. Co.,* 209 F.R.D. 361, 362

(S.D.N.Y. 2002) ("30(b)(6) depositions, are designed to discover facts, not contentions or legal

theories, which, to the extent discoverable at all prior to trial, must be discovered by other

means."); *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.,* 134 F.R.D. 275, 1286 (N.D. Cal.

1991), rev'd on other grounds, 765 F. Supp. 611 (N.D. Cal. 1991) (contention interrogatory, not

Rule 30(b)(6) deposition, more appropriate in very complex and highly technical lawsuit). Teva

USA objects to this topic as duplicative of other topics to the extent Plaintiffs contend the topics

relate to facts underlying contentions.

**TOPIC NO. 5.**    The factual and legal bases for Teva's First Counterclaim that manufacture, use, sale and/or importation of the galantamine hydrobromide tablets that are the subject of Teva's ANDA will not infringe directly or indirectly any valid claim of the '318 patent according to its proof elements, including an element-by-element comparison of each asserted claim of the '318 patent to the use of the Generic Product.

## RESPONSE

Teva USA objects to this topic as duplicative of numerous topics in Plaintiffs' March 21, 2006 Rule 30(b)(6) Notice of Deposition. *See, e.g.*, Topic 1. Teva USA objects to this topic to the extent it is directed to infringement, which has been dismissed from the case. Teva USA objects to the extent this topic calls for information subject to the attorney client privilege or work product privilege. Teva USA objects to the extent this topic is directed to contentions—as such discovery should be taken through interrogatories—and to the extent this topic purports to seek expert discovery in advance of the date for commencement of such discovery set in the Court's Scheduling Order. *See JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002) ("30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means."); *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275, 1286 (N.D. Cal. 1991), rev'd on other grounds, 765 F. Supp. 611 (N.D. Cal. 1991) (contention interrogatory, not Rule 30(b)(6) deposition, more appropriate in very complex and highly technical lawsuit). Teva USA objects to this topic as duplicative of other topics to the extent Plaintiffs contend the topics relate to facts underlying contentions.

**TOPIC NO. 6.**    The identity and location of documents and things concerning the foregoing topics.

## RESPONSE

Teva USA objects to this topic as overly broad. Teva USA incorporates its objections to the other topics included within the scope of this topic.

**TOPIC NO. 7.**     **Persons knowledgeable about the subject matter of the foregoing topics.**

**RESPONSE**

Teva USA objects to this topic as overly broad.  Teva USA incorporates its objections to the

other topics included within the scope of this topic.

Daniel F. Attridge, P.C.
Edward C. Donovan
Karen M. Robinson
Corey J. Manley
**KIRKLAND & ELLIS LLP**
655 15th Street, N.W.
Washington, DC 20005-5793
(202) 879-5000

Josy W. Ingersoll (Bar No. 1088)
John W. Shaw (Bar No. 3362)
Karen E. Keller (Bar No. 4489)
**YOUNG CONAWAY STARGATT
  & TAYLOR, LLP**
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware  19899-0391
(302) 571-6600
*Attorneys for Teva Pharmaceuticals USA, Inc.
and Teva Pharmaceutical Industries Ltd.*

Dated:  3/15/06

5

# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: '318 PATENT LITIGATION | : <br> : <br> : <br> :    **Civil Action No. 05-356 (KAJ)** <br> :    **(Consolidated)** <br> : <br> : |

### DEFENDANT TEVA PHARMACEUTICALS USA, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' MARCH 23, 2006 NOTICE OF 30(b)(6) DEPOSITION

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Teva

Pharmaceuticals USA, Inc. ("Teva USA") responds to Plaintiffs' March 23, 2006 Notice of

30(b)(6) Deposition.

### GENERAL OBJECTIONS

Teva USA objects to the location for which Plaintiffs have noticed this deposition. Teva

USA will make any appropriate 30(b)(6) Representative(s) available for deposition pursuant to

the October 21, 2005 Scheduling Order. Teva USA also objects to March 23, 2006 as the date

for the deposition. Teva USA and its counsel are not available on this date and will provide

Plaintiffs with alternative dates shortly.

### SPECIFIC OBJECTIONS TO THE TOPICS OF EXAMINATION

**TOPIC NO. 1.**    **Any consideration or evaluation to license the '318 patent conducted by or on behalf of Teva, including but not limited to the names and responsibilities of all persons who were involved in any evaluation, consideration or discussion by or on behalf of Teva to license, market or develop the '318 patent or a product covered by the '318 patent.**

### RESPONSE

Teva USA objects to this topic as duplicative of other topics in Plaintiffs' March 21, 2006 Rule

30(b)(6) Notice of Deposition. *See, e.g.*, Topics 17 and 18. Teva USA objects to this topic as

assuming the existence of information that does not exist. To the extent Plaintiffs have a good

faith basis for the belief that such information does exist, please provide it.

**TOPIC NO. 2.    All negotiations or communication with Synaptech or Dr. Bonnie Davis regarding the '318 patent.**

**RESPONSE**

Teva USA objects to this topic as duplicative of other topics in Plaintiffs' March 21, 2006 Rule

30(b)(6) Notice of Deposition. *See, e.g.*, Topics 17 and 18. Teva USA objects to this topic as

assuming the existence of information that does not exist. To the extent Plaintiffs have a good

faith basis for the belief that such information does exist, please provide it.

**TOPIC NO. 3.    All negotiations or communication with Synaptech or Dr. Bonnie Davis regarding galantamine as a treatment for Alzheimer's Disease.**

**RESPONSE**

Teva USA objects to this topic as duplicative of other topics in Plaintiffs' March 21, 2006 Rule

30(b)(6) Notice of Deposition. *See, e.g.*, Topics 17 and 18. Teva USA objects to this topic as

assuming the existence of information that does not exist. To the extent Plaintiffs have a good

faith basis for the belief that such information does exist, please provide it.

**TOPIC NO. 4.    Any meetings, discussions, or communications concerning the subject matter identified in Topics 1 through 3.**

**RESPONSE**

Teva USA objects to this topic as duplicative of other topics in Plaintiffs' March 21, 2006 Rule

30(b)(6) Notice of Deposition. *See, e.g.*, Topics 17 and 18. Teva USA objects to this topic as

assuming the existence of information that does not exist. To the extent Plaintiffs have a good

faith basis for the belief that such information does exist, please provide it. Teva USA further

objects to this topic as overly broad.

**TOPIC NO. 5.**    Any documents related to Topics 1 through 3 that were either not produced or destroyed in this case and the circumstances under which the documents were withheld for production or destroyed, the identification of all persons with knowledge of the documents and/or their contents, and, in the case of documents destroyed, the dates of the destruction.

**RESPONSE**

Teva USA objects to this topic as duplicative of other topics in Plaintiffs' March 21, 2006 Rule

30(b)(6) Notice of Deposition.  *See, e.g.*, Topics 17 and 18.  Teva USA objects to this topic as

assuming the existence of information that does not exist.  To the extent Plaintiffs have a good

faith basis for the belief that such information does exist, please provide it.  Teva USA further

objects to this request as overly broad.

**TOPIC NO. 6.**    The identity and location of documents and things concerning the foregoing topics.

**RESPONSE**

Teva USA objects to this topic as duplicative of other topics in Plaintiffs' March 21, 2006 Rule

30(b)(6) Notice of Deposition.  *See, e.g.*, Topics 17 and 18.  Teva USA objects to this topic as

assuming the existence of information that does not exist.  To the extent Plaintiffs have a good

faith basis for the belief that such information does exist, please provide it.  Teva USA objects to

this request as overly broad.

**TOPIC NO. 7.**    Persons knowledgeable about the subject matter of the foregoing topics.

**RESPONSE**

Teva USA objects to the topic as duplicative of other topics in Plaintiffs' March 21, 2006 Rule

30(b)(6) Notice of Deposition.  *See, e.g.*, Topics 17 and 18.  Teva USA objects to this topic as

assuming the existence of information that does not exist.  To the extent Plaintiffs have a good

faith basis for the belief that such information does exist, please provide it.  Teva USA objects to

this request as overly broad.

Daniel F. Attridge, P.C.
Edward C. Donovan
Karen M. Robinson
Corey J. Manley
**KIRKLAND & ELLIS LLP**
655 15th Street, N.W.
Washington, DC 20005-5793
(202) 879-5000

Josy W. Ingersoll (Bar No. 1088)
John W. Shaw (Bar No. 3362)
Karen E. Keller (Bar No. 4489)
**YOUNG CONAWAY STARGATT**
  **& TAYLOR, LLP**
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware  19899-0391
(302) 571-6600

*Attorneys for Teva Pharmaceuticals USA.,*
*Inc. and Teva Pharmaceutical Industries Ltd.*

Dated:  3/15/06

4

# EXHIBIT D

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Karen M. Robinson
To Call Writer Directly:
(202) 879-5197
krobinson@kirkland.com

202 879-5000

www.kirkland.com

Facsimile:
202 879-5200

March 30, 2006

**VIA FACSIMILE**

Kurt Calia, Esq.
Covington & Burling
1201 Pennsylvania Avenue, N.W.
Washington, DC 20004-2401

Re:    *In re: '318 Patent Litigation*

Dear Kurt:

I write in response to your letter sent yesterday to Mylan's counsel regarding certain of the issues raised during the March 24, 2006 meet and confer with all counsel.

As an initial matter, we were surprised to see plaintiffs have now retreated from agreements we understood you to have made during the call. We understood the call to be in furtherance of the Court's guidance that "[y]ou should be talking to each other and coming to some sensible agreement about what is relevant and what isn't." 2/7/06 Tr. At 28. In light of your letter, there seemed little point to the two and one half hour meet and confer. Indeed, plaintiffs insistence on going forward with depositions that are frivolous—*e.g*, the "factual basis" why the ANDA's are indicated "for the treatment of mild to moderate Alzheimer's disease"—or without any apparent good faith factual basis—*e.g.*, nonexistent negotiations with Synaptech or Bonnie Davis—are difficult to reconcile with the Court's guidance.

While Teva disagrees with many of the statements made in your letter, we take particular issue with your misstatement that Teva was to contact you about a follow-up meet and confer the following Monday. To the contrary, during the March 24 conference call, I specifically raised topics that, in your words, were "unique to Teva." You requested that, rather than take time on the joint call to address these Teva specific issues, we table the discussion of these topics until Monday. You stated that you had "availability in the afternoon" and would be in touch to further discuss these issues. While we assume your error was inadvertent, we do not appreciate being cast as dilatory, particularly where plaintiffs have not provided their promised supplementation of interrogatories and have indicated that they "hope" to complete their document production by the end of the month.

Chicago          London          Los Angeles          Munich          New York          San Francisco

**KIRKLAND & ELLIS LLP**

Kurt Calia, Esq.
March 30, 2006
Page 2


As you noted during the March 24 call, there are differences between many of the topics directed to Mylan and those directed to other defendants, including Teva, and we are prepared to discuss those differences during a meet and confer. We also note that we have not met at all regarding deposition Topic Nos. 9, 10, and 21-24 of the March 21 Notice of Deposition.

Finally, during the meet and confer you indicated that Janssen believes that the agreement reached between the parties regarding other drugs is limited to documents and, although you are not entitled to documents regarding other drugs, you believe that you are nevertheless entitled to deposition testimony on this topic. As I explained during the March 24 call, this limitation is not consistent with the Defendants' understanding of the agreement. I asked that you be prepared to discuss whether Janssen will be producing information on Janssen's Risperdal® and Risperdal® Consta® research products, as well as any related medical research sponsored by Janssen. Notwithstanding your oblique reference to "questions raised in Ed Donovan's correspondence," Janssen has not addressed these issues. We look forward to discussing these issues as well as those raised in our March 13, 2006 letter.

Please contact me to confirm your availability to discuss outstanding issues.

Sincerely,

Karen M. Robinson

2

# EXHIBIT E

# KIRKLAND & ELLIS LLP

#### AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

202 879-5000

www.kirkland.com

Facsimile:
202 879-5200

Edward C. Donovan
To Call Writer Directly:
202 879-5289
edonovan@kirkland.com

November 15, 2005

**Via Facsimile**

Uma N. Everett
Covington & Burling
1201 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2401

Re:    *In re '318 Patent Litigation*, Civil Action No. 05-356 (KAJ)

Dear Uma:

Further to our discussions last week and in response to your letter, I write to address Plaintiffs' alleged "deficiencies" in the discovery responses of Teva USA and Teva Ltd (collectively, "Teva"). We disagree with your arguments.

**1.    Responses to Plaintiffs' Interrogatories and Request for Admission.** Your letter suggests that the Teva Defendants are "delaying a response on the question of infringement." To the contrary, Teva has answered the interrogatories notwithstanding the fact that it is Plaintiffs' burden, not the Defendants', to prove infringement. The only delay has been that of Plaintiffs. During the Scheduling Conference, Plaintiffs represented to the Court without qualification that they would specify the claims alleged to be infringed "once we get their ANDAs." (10/12/05 Tr. at 31) (*"we will be prepared to specify once they get their ANDAs."*) As you know, contrary to your statements to the Court—"[w]e have been asking for their ANDAs and we don't have them yet" (*id.*)—Plaintiffs have had Teva USA's complete ANDA since May 19, 2005, *before this lawsuit was filed.* Please confirm that the only asserted claims in this lawsuit are claims 1 and 4.

Your alleged "deficiencies" regarding Teva's response to Plaintiffs' single request for admission are likewise incorrect. Defendants certainly have no knowledge of Plaintiffs' alleged claim construction—the first step in an infringement analysis—if Plaintiffs are still struggling with whether the tablets described in the ANDA could be infringed by claims directed to parenteral administration. Moreover, your assertion that the request for admission "asks whether the Teva Defendants intend to assert non-infringement [of claim 1]" misstates the request and misstates the requirements of Federal Rule of Civil Procedure 36. Your request likewise assumes Teva Ltd. filed the ANDA, which it did not, and correspondingly, it cannot even be a proper party to this lawsuit.

# KIRKLAND & ELLIS LLP

Uma N. Everett
November 15, 2005
Page 2

**2.     Documents Concerning the '318 Patent.**  Your letter requests that Teva withdraw its objection to discovery related to willful infringement.  Teva does not withdraw its objection but will produce or log documents relating to the '318 patent in light of the Court's Scheduling Order.  As the issue of attorney fees (*e.g.*, willful infringement in an ANDA case) is presently in the case, Teva will pursue discovery on those issues, though it believes the better course is to defer them.

With respect to your other arguments for the relevance of the '318 patent, we note they apply more forcefully in connection with Plaintiffs' own document production, and seek confirmation that Plaintiffs will withhold no documents relating to the '318 patent.

**3.     Documents Relating to Evaluation, Research, and Development.**  While it is difficult to imagine the relevance of any ANDA documents beyond the proposed labeling in this case in connection with the alleged infringement of Plaintiffs' method of use claim, we will discuss with you your alleged need for research and development documents relating to the subject ANDA. With respect to your arguments for the relevance of research and development of other Alzheimer's drugs—long felt need and failure of others—it is easily disposed of since those secondary considerations of non-obviousness are measured at the time of filing of the patent-in-suit.  Indeed, we note that Synaptech's own licensee—Janssen—continues to market other drugs for Alzheimer's disease.  Are the Janssen Plaintiffs prepared to produce all of their documents concerning evaluation, research, or development related to any product intended to treat Alzheimer's disease or Alzheimer-type dementias, including the Risperdal® and Risperdal®Consta® research products, as well as any related medical research sponsored by them?

**4.     Teva's ANDA and ANDA-Related Documents.**  With respect to this category of documents, your letter misstates what Teva has already produced and the grounds on which Teva objected.  Please let us know what part of the ANDA was allegedly not produced (U. Everett 11/3/05 letter at 4) under the offer of confidential access—and please confirm you still have it. Please also let us know how "internal and FDA correspondence" regarding the ANDA other than that relating to the indication of use is relevant to whether "the ANDA is the direct infringing act."  (*Id.*) And please let us know when we can expect Plaintiffs to provide their NDA and related documents as there should be no genuine dispute as to their relevancy in light of your letter.

Sincerely,

Edward C. Donovan

cc:     All defense counsel

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

Karen M. Robinson
To Call Writer Directly:
(202) 879-5197
krobinson@kirkland.com

655 Fifteenth Street, N.W.
Washington, D.C. 20005

202 879-5000

www.kirkland.com

Facsimile:
202 879-5200

January 11, 2006

**VIA FACSIMILE**

Phillip E. Dube, Esq.
Covington & Burling
1201 Pennsylvania Avenue, N.W.
Washington, DC 20004-2401

      Re: *In re '318 Patent Litigation*, Civil Action No. 05-356 (KAJ)

Dear Phillip:

      I write in response to your December 21, 2005 letter.

      With respect to your request that the Teva defendants re-produce in TIFF format documents already produced in hard copy (including the ANDA produced under the OCA prior to the action being filed), we have already done so.

      With respect to your request that the Teva defendants produce "all documents relating to the '318 patent," we have already responded to your request. *See* E. Donovan 11/15/05 letter to U. Everett. Please confirm plaintiffs will produce all documents "relating to the '318 patent."

      With respect to your request that the Teva defendants produce "all documents concerning Teva's evaluation, research, or development of any galantamine product or any product intended to treat Alzheimer's disease," please see our January 11, 2006 letter to U. Everett summarizing our earlier discussions and responding to plaintiffs' positions. We also note that plaintiffs have steadfastly refused to produce documents of the type you now seek. *See* E. Donovan 11/15/05 letter to U. Everett (identifying other Janssen Alzheimer's research and products). To the extent your letter intends to suggest that Judge Jordan ordered or otherwise discussed the necessity of producing documents on on-going Alzheimer's research unrelated to Reminyl or the subject ANDA, we do not agree. If you contend Judge Jordan addressed this issue, please point us to the portion of the transcript on which you rely.

      Please do not hesitate to contact me if you have any questions.

Sincerely,

Karen Robinson

Chicago        London        Los Angeles        Munich        New York        San Francisco

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Edward C. Donovan
To Call Writer Directly:
(202) 879-5289
edonovan@kirkland.com

202 879-5000

www.kirkland.com

Facsimile:
202 879-5200

January 23, 2006

**VIA FACSIMILE**

Uma N. Everett, Esq.
Covington & Burling
1201 Pennsylvania Avenue, N.W.
Washington, DC 20004-2401

Re:     *In re '318 Patent Litigation*, Civil Action No. 05-356 (KAJ)

Dear Uma:

This is in response to your letter of January 20, 2006 and following up on our earlier correspondence.

In your letter you state that we "appear to be at an impasse" on the issue of whether Teva is required to produce "documents relating to research performed by Teva on other drug products for possible treatment of Alzheimer's." U. Everett 1/20/06 letter to E. Donovan. Perhaps we are at an impasse and perhaps not. What is certain is that we are not clear on plaintiffs' position and, to the extent we do understand it, there may be no issue at all.

For example, we have inquired multiple times in both correspondence and teleconferences whether plaintiffs agree to produce documents of equal scope—*see, e.g.*, E. Donovan 11/15/05 letter to U. Everett at 2 ("Are the Janssen Plaintiffs prepared to produce all of their documents concerning evaluation, research, or development related to any product intended to treat Alzheimer's disease or Alzheimer-type dementias, including the Risperdal® and Risperdal® Consta® research products, as well as any related medical research sponsored by them?")—but have received no response and no documents. If, as you contend, research related to other Alzheimer's treatments is relevant to secondary considerations of non-obviousness—and Teva disagrees—we are unaware of any basis for plaintiffs withholding their own responsive documents. *See, e.g.,* Teva Document Request No. 43 ("All Documents Concerning any secondary considerations of non-obviousness . . . ."). As a result, we can only conclude that work performed in conjunction with obtaining FDA approval is not within the scope of your request.

In fact, far from agreeing to provide such documents, your letter refuses to produce portions of the Reminyl® NDA that is the subject of your Complaint because they are "proprietary and confidential and are unrelated to any issue in the case." U. Everett 1/20/06

# KIRKLAND & ELLIS LLP

Uma N. Everett, Esq.
January 23, 2006
Page 2

letter to E. Donovan (also refusing to produce research identifying the '318 patent). Is it your view that "proprietary and confidential" research need not be produced? Any research Teva has performed on Alzheimer's unrelated to the ANDA would likely fall within that category and the importance of safeguarding this information from disclosure far outweighs your alleged probative value to secondary considerations. Moreover, if, as you insist, research on "synthesis, formulation or manufacturing" (*id.*) the drug product at issue is "unrelated to any issue in the case," we certainly agree and understand your position that such research need not be produced in connection with other products.

In sum, there may be no "issue" or at least the issue may be more limited than we understood initially from your document requests. To facilitate our resolution or focus of the issue, please explain your position with respect to this issue, including a response to our long-outstanding inquiries on the same subject. *See also* K. Robinson 1/11/06 letter to P. Dube (requesting basis for plaintiffs' apparent assertion that the Court addressed the issue of other "Alzheimer's research unrelated to Reminyl or the subject ANDA"). To the extent the "research" documents you seek relate to the clinical studies that one of plaintiffs' counsel mentioned on the telephone conference as being related to Teva, please identify the studies to which you refer. We are aware, of course, of clinical studies on Alzheimer's that plaintiffs are presently conducting but we understand you to take the position that it will not be produced because it is unrelated to any issue in the case. Any such clinical work by Teva unrelated to the ANDA would likely fall in the same category.

With respect to our inquiries whether plaintiffs will produce the NDA described in the Complaint and covering the subject Reminyl® tablets, you have taken the position that you "will not produce those parts of the NDA describing synthesis, formulation or manufacturing" because those documents are "proprietary and confidential and are unrelated to any issue in the case." U. Everett 1/20/06 letter to E. Donovan. We assume you do not seek documents on these subjects from defendants beyond the ANDA document that the defendants have already produced.

With respect to documents related to the research you tout in your Complaint, *see* E. Donovan 1/11/06 letter to U. Everett at 1-2, we appear to be at an impasse. As I am sure you have considered, we cannot wait for plaintiffs to make up their mind whether they intend to present evidence on these allegations at trial. Though the allegations were not necessary to the Complaint, they were nonetheless alleged, and we are entitled to discovery on them now.

We also appear to be at an impasse with respect to documents relating to the '318 patent. *See, e.g.,* E. Donovan 11/14/05 letter to U. Everett; E. Donovan 1/11/06 letter to U. Everett. For example, we do not agree with your proposed limitation of producing only documents identifying the '318 patent that plaintiffs' subjectively believe "relate to the issues in this present litigation." U. Everett 1/20/06 letter to E. Donovan. The two sides obviously have very different views on what is "relate[d] to the issues" in the case. We do agree, however, that

**KIRKLAND & ELLIS LLP**

Uma N. Everett, Esq.
January 23, 2006
Page 3

publicly available patents that reference the '318 patent need not be produced. We already have an agreement with respect to labels identifying the '318 patent.

     Please call me to discuss these issues.

                          Sincerely,

                          Edward C. Donovan /kmr

                          Edward C. Donovan

# EXHIBIT F

312

1      **HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER**

2

3   UNITED STATES DISTRICT COURT

4   FOR THE DISTRICT OF DELAWARE

5

6   ----------------------------------x

7   IN RE:                          Case No.

8   '318 PATENT INFRINGEMENT LITIGATION    05-356 (KAJ)

9   ----------------------------------x   (Consolidated)

10                  HIGHLY CONFIDENTIAL

11

12                  February 9, 2006

13                  9:06 a.m.

14

15           Continued videotaped deposition

16      of DR. BONNIE DAVIS, held at the offices

17      of Winston & Strawn, LLP, 200 Park Avenue,

18      New York, New York, pursuant to subpoena,

19      before Cary N. Bigelow, RPR, a Notary

20      Public of the State of New York.

21

22

23

24

25

525

B. Davis - Highly Confidential
1    MR. PAPPAS: Go ahead, Ms. Robinson,
2  put your questions to Dr. Davis and she will
3  answer the best she can as to publicly
4  available information.
5    MS. ROBINSON: Just to be clear, I am
6  not limiting my request to publicly
7  available information. I am asking about
8  any information that Dr. Davis has with
9  respect to the development of other
10 compounds used for the treatment of
11 Alzheimer's disease.
12    Are you limiting your response to only
13 publicly available information?
14    MR. PAPPAS: Well, at least for now,
15 yes, but let's see where your questions go.
16 We will take it on a question-by-question
17 basis. We may need guidance from the Court.
18    MS. ROBINSON: I am not going to do a
19 string of questions and not know at what
20 point you are going to decide that you can
21 give me more, that's not really the way this
22 works. So if you guys are going to instruct
23 her not to answer, I am not limiting my
24 questions, you can instruct her not to
25

526

B. Davis - Highly Confidential
1    answer and we can move forward, everyone
2  will have made the record.
3    Q.   Not based on publicly available
4  information, but based on any information that
5  you have, can you identify for me any compounds
6  for which you have a patent that are in the
7  process of --
8    MS. ROBINSON: Actually, you know
9  what, can you go back to the question that
10 we had right before the line, because I want
11 to make sure I am asking the same question.
12    (Record read.)
13    Q.   Can you answer that question, Dr. Davis?
14    A.   I would say yes.
15    Q.   Can you identify for me to the best of
16 your knowledge which compounds are in the
17 process of going through this process?
18    MR. PAPPAS: Objection to form.
19    A.   The n-butyl carbamate.
20    Q.   Any others?
21    A.   No.
22    Q.   Can you tell me, with respect to the
23 n-butyl carbamate that you just mentioned, what
24 efforts have been made to commercialize this
25

527

B. Davis - Highly Confidential
1    product?
2    MR. PAPPAS: Objection to form.
3    A.   There have been some communications
4  with some pharmaceutical companies.
5    Q.   Can you identify for me the
6  pharmaceutical companies that you have had
7  communications with?
8    A.   You know, it just seems to me that
9  that's such a private thing --
10    MR. FILARDI: We need to go to the
11 judge on this. If you consider this to be
12 relevant, I think we need to go to the judge
13 from Synaptech's standpoint.
14    Q.   Let me ask just a couple more
15 clarifying questions.
16    What would the n-butyl carbamate
17 compound that you are in communications with
18 this as of now unnamed pharmaceutical company,
19 what would it be used for?
20    MR. PAPPAS: I will just caution you
21 again, Dr. Davis, if you consider that or
22 Synaptech considers that confidential and
23 proprietary information to the company and
24 pharmaceutical company or companies with
25

528

B. Davis - Highly Confidential
1    whom you are negotiating or discussing
2  consider that confidential and you have some
3  sort of agreement with them to keep it
4  confidential, I don't want you inadvertently
5  to disclose it here.
6    A.   I think you are not asking about '318
7  anymore.
8    Q.   That's correct.
9    A.   You might use compounds like this to
10 influence the progression of Alzheimer's
11 disease.
12    Q.   And, in fact, is the use that is being
13 proposed with respect to n-butyl carbamate to
14 affect the progression of Alzheimer's disease?
15    MR. PAPPAS: Objection.
16    I don't think you are under any
17 obligation to disclose proprietary
18 information of the company until we get
19 further guidance from the Court.
20    MS. ROBINSON: I just want to make the
21 record. I have a series of questions that
22 relate to the use of Dr. Davis' compounds
23 for the treatment of Alzheimer's disease
24 other than the '318.
25

55 (Pages 525 to 528)

529

1    B. Davis - Highly Confidential
2    So if the position that you are
3  putting forth for Synaptech and for Janssen,
4  for that matter, is that you do not have to
5  provide in response to our discovery
6  requests or my request to Dr. Davis today
7  specifically information that is
8  confidential, proprietary or trade secret as
9  it relates to the development of other drugs
10  other than galanthamine hydrobromide as
11  identified in the '318, then the issue is
12  joined and we can take that issue to the
13  Court.
14    MR. PAPPAS:  We may have to take the
15  issue to the Court, but not as you stressed
16  it.
17    MS. ROBINSON:  Then why don't you
18  explain to me what your objection is so we
19  have a clear record?
20    MR. PAPPAS:  I have told you my
21  objections, but here's what it is.
22    You are putting a series of questions
23  now to Dr. Davis that in no way relates to
24  the '318 patent or its prosecution or the
25  galanthamine product that is currently made

530

1    B. Davis - Highly Confidential
2  by Janssen called Razadyne.  It is now a
3  series of questions about a later patent she
4  has on presumably an advanced compound and
5  she's in negotiations with other
6  pharmaceutical companies.
7    I have been advised by her, as has
8  been Mr. Filardi, who is also counsel for
9  Synaptech, and Mr. Dewey, that she considers
10  this information proprietary and a trade
11  secret to the company.
12    Now, there may be, if you can make a
13  demonstration of relevance and a proffer of
14  its relevance to this case, there may be a
15  way we can treat this information in a
16  confidential way, but not under the current
17  confidentiality agreement, and as you may
18  know if you were party to the discovery
19  conference or discovery hearing that we had
20  this past Tuesday with Judge Jordan, he told
21  us that we can approach him and he may
22  impose additional restrictions and
23  requirements if this information is, you
24  believe, important to your case or to your
25  defense.

531

1    B. Davis - Highly Confidential
2    So if it is, I will be willing, of
3  course, to approach Judge Jordan and, as he
4  said, we may have a third or fourth or even
5  fifth level of confidentiality as to who may
6  be privy to this information, so that's our
7  concern.
8    MS. ROBINSON:  Let me get this
9  straight again for the record.
10    Is it that it is confidential and
11  there is not enough protection or is it that
12  you are not required to produce it because
13  it is not relevant?
14    MR. PAPPAS:  At this juncture we can't
15  even make a relevancy determination, but we
16  do know that it is confidential and the
17  company Synaptech considers it a trade
18  secret, so —
19    MS. ROBINSON:  So your position is
20  Dr. Davis' compounds --
21    MR. PAPPAS:  Excuse me, I have not
22  finished yet.  I have given you the courtesy
23  of letting you finish, I ask the same from
24  you.
25    So what I propose is that if you

532

1    B. Davis - Highly Confidential
2  believe this is an area of inquiry you need
3  to proceed with, we can determine from the
4  judge what appropriate level of
5  confidentiality it is and then at that time
6  I am putting you on notice, I will ask you
7  for a proffer of why it is relevant and then
8  we can get it worked out.
9    MS. ROBINSON:  I would point to, as
10  evidence of the relevance, the document
11  requests that were the subject matter of the
12  discovery conference we had with the judge
13  wherein you were specifically asking for
14  other galanthamine drugs and other drugs
15  used for the treatment of Alzheimer's
16  disease and I am currently seeking
17  information from Dr. Davis as to other
18  galanthamine drugs and other drugs for the
19  treatment of Alzheimer's disease.
20    That's my proffer for relevance.  If
21  you don't think that's enough then we can
22  move on and I am leaving the deposition open
23  with respect to this issue.
24    MR. FILARDI:  Yes, but you are
25  inquiring into the relationship between

56 (Pages 529 to 532)

1

1     **HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER**

2     UNITED STATES DISTRICT COURT

3     FOR THE DISTRICT OF DELAWARE

4

5     -------------------------------x

6     IN RE:                          Case No.

7     '318 PATENT INFRINGEMENT LITIGATION    05-356 (KAJ)

8     -------------------------------x    (Consolidated)

9

                        HIGHLY CONFIDENTIAL
10

11

12                      February 6, 2006

13                      9:27 a.m.

14

15          Videotaped deposition of

16      JOHN RICHARDS, held at the offices of

17      Winston & Strawn, LLP, 200 Park Avenue,

18      New York, New York, pursuant to subpoena,

19      before Cary N. Bigelow, RPR, a Notary

20      Public of the State of New York.

21

22

23

24

25

274

1          Richards - Highly Confidential
2          THE WITNESS: Okay.
3     Q.    Mr. Richards, if I could turn your
4  attention to column 1 on the patent, of the '358
5  patent, Defendants' Exhibit 16, if you look at
6  line 20 or right around line 20, the paragraph
7  reads "The present invention is directed to
8  galanthamine analogues having cholinersterase
9  inhibiting properties and their preparation in
10 the use for the treatment of Alzheimer's disease
11 and related dementias.  Some of the analogues
12 are novel."
13         Do you see that section?
14    A.    Yes.
15    Q.    So part of the invention of the '358
16 is related to drugs for the treatment of
17 Alzheimer's disease?
18         MR. PAPPAS: Objection.
19    Q.    You can answer.
20         MR. WALLACH: If you understand the
21 question.
22    A.    Maybe you could make it a little
23 clearer exactly what is your question.
24    Q.    Sure.
25         Is part of the invention claimed in

275

1          Richards - Highly Confidential
2  the '358 patent directed to compounds used for
3  the treatment of Alzheimer's disease?
4     A.    Novel compounds, yes.
5     Q.    And it is your understanding that --
6     A.    This was a division of --
7     Q.    Is it your understanding, sir, that
8  documents relating to compounds directed to the
9  treatment of Alzheimer's disease are not related
10 to the issues in this litigation?
11         MR. PAPPAS: Objection.
12    A.    Sorry, I was -- the claims in this
13 patent are all method claims.
14         MS. ROBINSON: Could you read my
15 question?
16    Q.    Sorry, I understand you were
17 distracted.
18         (Record read.)
19    A.    I understood this litigation was on
20 galanthamine hydrobromide and the patent
21 relating to it.
22    Q.    So to the extent the documents didn't
23 relate to galanthamine hydrobromide, it is Ladas
24 & Parry's position that they are not relevant to
25 the issues in this litigation?

276

1          Richards - Highly Confidential
2          MR. PAPPAS: Just note my objection.
3          Mr. Richards, if you can respond to
4  the question, don't --
5     A.    I don't think I can answer that
6  without beaching the instruction.
7          MR. PAPPAS: -- disclose
8  communications with counsel.
9     Q.    Let me try it this way:  Ladas & Parry
10 did not produce documents that were not related
11 to galanthamine hydrobromide in response to the
12 subpoena that was served on Ladas & Parry.
13         Is that a correct statement?
14    A.    I believe that is correct.
15    Q.    If we can go down to line 25 -- I am
16 sorry, let's go to line 23, same column, column 1.
17    A.    Yes.
18    Q.    Do you see the term "related dementias"?
19    A.    Yes, I do.
20    Q.    In the course of the prosecution of
21 this patent, did you have to define the term
22 "related dementias" to the Patent and Trademark
23 Office?
24         MR. WALLACH: Objection, lacks
25 foundation.

277

1          Richards - Highly Confidential
2          MR. PAPPAS: Not only that, but I
3  object to the relevance of this.  This was
4  after the '318 patent.
5          Mr. Richards, you can answer, but I
6  caution you to take whatever time you need,
7  including reviewing the entire patent before
8  you answer her question.
9          MS. ROBINSON: Just so we are clear on
10 the objection, is it your objection that
11 this isn't relevant because it is after the
12 issuing state of the '318 patent?
13         MR. PAPPAS: No, I am saying it is not
14 relevant to --
15         MR. RAKOCZY: I could have sworn
16 that's what he said.
17         MR. PAPPAS: I am cautioning the
18 witness, if he can respond to your question,
19 take whatever time he needs and review the
20 document.
21         MR. WALLACH: If he can base his
22 answer on knowledge rather than on
23 speculation.
24    Q.    My question was, during the
25 prosecution of the '358 patent, Defendants'

70 (Pages 274 to 277)

VERITEXT/SPHERION DEPOSITION SERVICES
(212) 490-3430

# EXHIBIT G

# COVINGTON & BURLING

1201 PENNSYLVANIA AVENUE NW
WASHINGTON, DC 20004-2401
TEL 202.662.6000
FAX 202.662.6291
WWW.COV.COM

WASHINGTON
NEW YORK
SAN FRANCISCO
LONDON
BRUSSELS

KURT G. CALIA

TEL 202.662.5602
FAX 202.778.5602
KCALIA@COV.COM

March 10, 2006

**VIA E-MAIL and FIRST CLASS MAIL**

Defense Counsel
Attached Service List

> Re:    In re: '318 Patent Infringement Litigation; Civil Action No.
>        05-356-KAJ (consolidated)

Dear Counsel:

The purpose of this letter is to follow-up on the parties' February 13, 2006 telephonic conference about discovery in this matter. To date, we have not received any additional information from the defendants, with the exception of a letter from Mylan's counsel which we received earlier this week (and to which we will respond under separate cover). We would appreciate responses from the remaining defendants as to the various issues we raised about defendants' document production efforts, detailed in my earlier correspondence from January and February.

While each defendant has different document requests served on Plaintiffs, there is a great deal of overlap, and so we will address production issues with respect to categories of documents rather than attempt a request-by-request recitation of Plaintiffs' positions with respect to each of the defendants' individual requests. To the extent that any defendant has a concern with respect to a particular request not covered by the points set forth below (which we endeavored to make as comprehensive as possible), please let us know.

**Limitation to NDA/ANDA Products.** As you will recall, during the February 13 call, it was suggested by defendants that the parties limit their respective production of documents to only documents that relate to the specific products that are the subject of Janssen's New Drug Application ("NDA") 21-169 and the defendants' Abbreviated New Drug Applications ("ANDAs"). You will recall that defendants raised this in the context of our correspondence in which Plaintiffs requested the production of documents related to other Alzheimer's treatment products (actual or proposed) and other products containing galantamine – requests to which each of the defendants objected as overly broad, among other objections. Plaintiffs are willing to agree to the limitation proposed by defendants. However, as we have made clear, we reserve our

COVINGTON & BURLING

Defense Counsel
March 10, 2006
Page 2

right to introduce evidence of other products that relates to objective considerations of
nonobviousness. Accordingly, Plaintiffs will produce documents related to the
Reminyl®/Razadyne® product that is the subject of NDA 21-169 (subject to the other
limitations set forth in this letter) and not to other products. To date, we have produced
over 35,000 pages of responsive documents that relate to the Reminyl®/Razadyne®
product and to the '318 patent, and we anticipate producing additional documents. We
hope to complete our paper production by the end of March.

 **Exclusion of Galantamine Synthesis/Product Formulation.** During the
February 13 telephone conference, we also discussed the possibility of excluding from
discovery information related to galantamine synthesis and product formulation as not
relevant to the present dispute. Lynn Ulrich suggested that the parties exchange the
Table of Contents for the NDA and ANDAs, respectively, and identify the portions of
those respective filings that will not be produced consistent with this limitation. To that
end, we have enclosed with this letter the Index for NDA 21-169, and we state that
Plaintiffs will exclude from their production of this NDA Sections 3.4 and the entirety of
Section 4, with the exception of Section 4.6.3 entitled "Draft Labeling." We request that
defendants send us the indexes for their respective ANDAs and identify the sections
that will not be produced in a manner consistent with this agreed-upon limitation.

 **Regulatory Documents.** During our call, counsel for certain defendants
raised questions concerning the scope of Plaintiffs' production of regulatory documents.
Consistent with the position set forth above, we will produce NDA 21-169, as well as
Janssen's Investigational New Drug application ("IND") 51,538, except as to any
portions that relate to synthesis or formulation information, to the extent they exist.
Plaintiffs will also produce any other documents provided to or received from FDA
related to the NDA or IND, to the extent such documents exist and can be located by
means of a reasonably diligent search. Plaintiffs will not, however, produce any
documents related to efforts to obtain regulatory approval outside of the United States.
Such information is not reasonably calculated to lead to the discovery of admissible
evidence, and the production of it would be quite burdensome to Plaintiffs.

 **Foreign Patents/Licenses/Disputes.** We have also been asked to
produce documents related to Plaintiffs' foreign patents and patent applications,
licenses regarding such patents and applications, and disputes related to them.
Plaintiffs have produced and will produce non-privileged documents related to foreign
counterparts to the '318 patent, as well as other documents related to the licensing of
the '318 patent and any disputes related to that patent. Plaintiffs also agree to produce,
to the extent not already produced, the pleadings in the Waldheim matter in Austria.
But Plaintiffs believe that a production of documents beyond these document categories
would be overly burdensome and not reasonably calculated to lead to the discovery of

COVINGTON & BURLING

Defense Counsel
March 10, 2006
Page 3

admissible evidence in this case. We will look again to make sure that all such documents have been either produced or identified on a privilege log, as appropriate.

**Marketing Information.** Plaintiffs agree to produce the master marketing file for the Reminyl®/Razadyne® product – i.e., the official file that contains the marketing material for this product maintained by Janssen to address any inquiries from FDA, in the event that they were to arise. This amounts to a substantial amount of material – on the order of approximately 20-30 boxes' worth – and should contain all information that is reasonably calculated to lead to the discovery of admissible evidence in this case. Janssen also has voluminous files that contain information that could be fairly characterized as related to marketing (e.g., adverse event reports, case report forms, and voluminous raw clinical data). While we do not believe that these documents are relevant to this case, we are willing to make them available for inspection should defendants wish to look at them. Because the volume is extraordinary – on the order of 1200 boxes or more – we will make these materials available for inspection should the defendants be interested in reviewing this material.

**Documents Relating to Physician Prescribing Factors.** During our February 13 call, we identified this category of documents as related to the objective considerations of nonobviousness and reiterated our request that defendants produce responsive documents. Plaintiffs will produce documents located by means of a reasonably diligent search and expect defendants to do the same.

**Bioequivalence Information.** I raised the production of bioequivalence-related information by defendants during the February 13 call, as has been requested in Plaintiffs' document requests. Plaintiffs are willing to withdraw its demand for the production of such documents by defendants upon confirmation that you will not rely on any bioequivalence-related information at trial.

**Miscellaneous Requests from Defendants.** During our call, defendants raised a number of additional requests, to which we respond as follows:

- We will supplement our interrogatory answers identifying the applicable objective considerations of nonobviousness. In so doing, we are hampered by the lack of production of related information by defendants, but we will nevertheless provide a supplemental response at this time while reserving the right to supplement further once defendants have complied with their discovery obligations in this matter.

- We will also supplement our interrogatory answers concerning Plaintiffs' claim construction position.

COVINGTON & BURLING

Defense Counsel
March 10, 2006
Page 4

- While we believe we already provided you with the Bates ranges for the documents produced from the Ladas & Perry files, we identify them again as: SYN RAZ 0000806-0004318; SYN RAZ 0015198-0018866; and, SYN RAZ 0024999-0025308.

- We believe that we have produced all non-privileged communications between Janssen and Dr. Bonnie Davis related to the document categories for which we have indicated we will produce responsive documents. If Plaintiffs identify additional such documents, we will produce them promptly.

- We are not entirely clear as to the nature of the request that we produce an "internal copy" of the file history. Nevertheless, we confirm that we have produced a copy of the file history as it currently exists in the files of Ladas & Perry.

- We have produced or will produce any non-privileged documents (or log on a privilege log any privileged documents) related to Janssen's listing of the '318 patent in the Orange Book that we can locate by means of a reasonably diligent search.

- You have asked that we produce Synaptech's SEC filings from 1986 to the present. Because Synaptech is not a publicly traded company, we do not have any documents to produce.

- Except as to documents created in relation to this litigation, we will produce or log on a privilege log documents related to any analyses of the '318 patent and to any analyses of whether the Reminyl®/Razadyne® product is covered by it to the extent they exist and can be located by means of a reasonably diligent search.

- To the extent they exist and can be located by means of a reasonably diligent search, we will produce any employment agreements that Dr. Bonnie Davis had at the time of the conception or reduction to practice of the invention.

    If you have any questions or concerns, please do not hesitate to contact me.

**COVINGTON & BURLING**

Defense Counsel
March 10, 2006
Page 5

Sincerely,

Kurt G. Calia

Enclosure (via e-mail only)

cc:    Steven Balick, Esq. (via email only)

## SERVICE LIST

| By Electronic Mail: | By Electronic Mail: |
|---|---|
| William A. Rakoczy (*wrakoczy@rmmslegal.com*)<br>Christine J. Siwik (*csiwik@mmslegal.com*)<br>Amy D. Brody (*abrody@rmmslegal.com*)<br>Lara Monroe-Sampson (*lmonroe-sampson@rmmslegal.com*)<br>**Rakoczy, Molino, Mazzochi, Siwik LLP**<br>6 West Hubbard Street, Suite 500<br>Chicago, IL 60610<br>312.527.2157/phone; 312.527.4205/fax | Mary B. Matterer (*mmatterer@morrisjames.com*)<br>**Morris James Hitchens & Williams LLP**<br>222 Delaware Avenue<br>10th Floor<br>P.O. Box 2306<br>Wilmington, DE 19899-2306<br>302.888.6800/phone; 302.571.1750/fax |

*Counsel for Defendants Mylan Pharmaceuticals Inc. & Mylan Laboratories Inc.*

| By Electronic Mail and First Class Mail: | By Electronic Mail: |
|---|---|
| Edward C. Donovan (*edonovan@kirkland.com*)<br>Karen M. Robinson (*krobinson @kirkland.com*)<br>Corey J. Manley (*cmanley@kirkland.com*)<br>**Kirkland & Ellis LLP**<br>655 Fifteenth Street, NW<br>Suite 1200<br>Washington, DC 20005-5793<br>202.879.5000/phone; 202.879.5200/fax | Josy W. Ingersoll (*jingersoll@ycst.com*)<br>John W. Shaw (*jshaw@ycst.com*)<br>**Young Conaway Stargatt & Taylor LLP**<br>The Brandywine Building<br>1000 West Street<br>17th Floor<br>Wilmington, DE 19899-0391<br>302.571.6600/phone; 302.571.1253/fax |

*Counsel for Defendants Teva Pharmaceuticals USA, Inc. & Teva Pharmaceuticals Industries Ltd.*

| | |
|---|---|
| Taras A. Gracey (*tgracey@winston.com*)<br>Lynn M. Ulrich (*lulrich @winston.com*)<br>Brian L. Franklin (*bfranklin@winston.com*)<br>**Winston & Strawn LLP**<br>35 West Wacker Drive<br>Chicago, IL 60601<br>312.558.5600/phone; 312.558.5700/fax | |

*Counsel for Defendants Barr Laboratories, Inc. and Barr Pharmaceuticals, Inc.*

| | |
|---|---|
| Barbara S. Wahl (*wahl.barbara@arentfox.com*)<br>Richard J. Berman (*berman.richard@arentfox.com*)<br>D. Jacques Smith (*smith.jacques@arentfox.com*)<br>Janine A. Carlan (*carlan.janine@arentfox.com*)<br>John K. Hsu (*hsu.john@arentfox.com*)<br>**Arent Fox PLLC**<br>1050 Connecticut Avenue, NW<br>Washington, DC 20036-5339<br>202.857.6000/phone; 202.857.6395/fax | Philip A. Rovner (*provner@potteranderson.com*)<br>**Potter Anderson & Corroon LLP**<br>1313 N. Market Street<br>Hercules Plaza, 6th Floor<br>P.O. Box 951<br>Wilmington, DE 19899-0951<br>302.984.6000/phone; 302.658.1192/fax |

*Counsel for Defendants Par Pharmaceutical, Inc. and Par Pharmaceutical Companies, Inc.*

| | |
|---|---|
| Robert J. Gunther, Jr. (*robert.gunther@lw.com*)<br>James P. Barabas (*james.barabas@lw.com*)<br>**Latham & Watkins LLP**<br>885 Third Avenue, Suite 1000<br>New York, NY 10022-4834<br>212.906.1200/phone; 212.751.4864/fax | Richard D. Kirk (*rkirk@bayardfirm.com*)<br>**The Bayard Firm**<br>222 Delaware Avenue, Suite 900<br>P.O. Box 25130<br>Wilmington, DE 19899<br>302.655.5000/phone; 302.658.6395/fax |

*Counsel for Defendants Purepac Pharmaceutical Co. & Alpharma, Inc.*

| | |
|---|---|
| Stuart Sender *(ssender@budd-larner.com)* <br> **Budd Larner, P.C.** <br> 150 John F. Kennedy Parkway <br> Short Hills, NJ  07078-0999 <br> 973.315.4462/phone; 973.379.7734/fax | Richard L. Horwitz <br> David E. Moore <br> **Potter Anderson & Corroon LLP** <br> 1313 N. Market Street <br> Hercules Plaza, 6th Floor <br> P. O. Box 951 <br> Wilmington, DE  19899 <br> 302.984.6000/phone; 302.658.1192/fax |

*Counsel for Defendants Dr. Reddy's Laboratories, Inc. and Dr. Reddy's Laboratories, Ltd.*

| | |
|---|---|
| Alan Bernstein    *(abernstein@crbcp.com)* <br> Mona Gupta    *(mgupta@crbcp.com)* <br> **Caesar, Rivise, Bernstein, Cohen & Pokotilow, Ltd.** <br> 1635 Market Street, 11th floor <br> Philadelphia, PA  19103-2212 <br> 215.567.2010/phone; 215.751.1142/fax | Frederick L. Cottrell, III    *(cottrell@rlf.com)* <br> Anne Shea Gaza *(gaza@rlf.com)* <br> **Richards, Layton & Finger, P.A.** <br> One Rodney Square <br> P.O. Box 551 <br> Wilmington, DE  19899 <br> 302.651.7700/phone; 302.651.7701/fax |

*Counsel for Defendant Alphapharm Pty Ltd.*

| | |
|---|---|
| Steven J. Balick    *(sbalick@ashby-geddes.com)* <br> John G. Day    *(jday@ashby-geddes.com)* <br> **Ashby & Geddes** <br> 222 Delaware Ave., 17th Floor <br> P.O. Box 1150 <br> Wilmington, DE  19899 <br> 302.654.1888/phone; 302.654.2067/fax | |

*Counsel for Plaintiffs Janssen Pharmaceutica N.V., Janssen, L.P., and Synaptech, Inc.*

# EXHIBIT H

# COVINGTON & BURLING

| | | |
|---|---|---|
| 1201 PENNSYLVANIA AVENUE NW<br>WASHINGTON, DC 20004-2401<br>TEL 202.662.6000<br>FAX 202.662.6291<br>WWW.COV.COM | WASHINGTON<br>NEW YORK<br>SAN FRANCISCO<br>LONDON<br>BRUSSELS | KURT G. CALIA<br>TEL 202.662.5602<br>FAX 202.778.5602<br>KCALIA@COV.COM |

March 27, 2006

**VIA E-MAIL and FIRST CLASS MAIL**

Amy D. Brody, Esq.
Rakoczy Molino Mazzochi Siwik LLP
6 West Hubbard Street, Suite 500
Chicago, IL 60610

> Re:   In re: '318 Patent Infringement Litigation; Civil Action No.
>         05-356-KAJ (consolidated)

Dear Amy:

This letter is in response to your letter dated March 7, 2006 in which Mylan makes unfounded assertions that Plaintiffs have not been forthcoming in discovery. The record reflects otherwise. My apologies for not getting this response out on Friday as planned. Our conference call concerning Plaintiffs' Rule 30(b)(6) depositions went considerably longer than I expected.

Mylan asserts that Plaintiffs have failed to respond to correspondence concerning discovery issues. We disagree, and your letter identifies no correspondence to which a response has not been provided. By any objective measure, Plaintiffs' discovery efforts (including making witnesses available for depositions, producing documents, and serving privilege logs) exceeds those of the defendants, and so the tone of your letter not only unproductive, it is unjustified.

In addition, we believe many of the issues set forth in your March 7 letter have been addressed by my March 10 letter. Regardless, we here provide a comprehensive response to the points you have raised, and stand ready to discuss them with you should any questions or concerns remain.

Requests for Production of Documents

*Plaintiffs' Objections*

As a preliminary matter, Plaintiffs do not withdraw any of their objections to Mylan's discovery requests. The objections were properly made. With respect to the

COVINGTON & BURLING

Amy D. Brody, Esq.
Page 2
March 27, 2006

general objections that Mylan has highlighted in its March 7 letter, we respond as follows.

General Objection H:   We believe the objection is appropriate, but we nevertheless confirm that Plaintiffs are not currently withholding any documents on the basis of this objection.  Should Plaintiffs discover documents in the future and decide to withhold them on the basis of this objection, we will so inform the defendants.

General Objection M:   This objection reflects that certain types of documents requested by the defendants – e.g., information obtained from third parties as part of subscription services – are not routinely collected or retained by any particular person in Plaintiffs' organizations.  Because such information is accessed only sporadically, by any number of individuals, collecting all such documents in the possession of the Plaintiffs would require reaching out to a substantial portion of all Plaintiffs' employees.  The burden associated with such a search, collection, and production is substantially greater for Plaintiffs than it would be for defendants to access this same (or more targeted) information from the third party subscription service providers directly.  As such, the request is overly burdensome and unreasonable.

To clarify the record, we now turn to the discovery requests you have specifically discussed in your letter of March 7, 2006.

*Specific Requests*

Documents Plaintiffs Intend to Rely Upon At Trial (Request No. 1).  In Plaintiffs' Initial Responses,[1] Plaintiffs objected to this request as premature, and in light of the scheduling order which specifies a time for identification and production of trial

---

[1]    Plaintiffs served separate objections and responses to Mylan's first set of document requests:  Plaintiff Janssen Pharmaceutica N.V.'s Objections and Responses to Defendants Mylan Pharmaceutical Inc.'s and Mylan Laboratories Inc.'s First Request for Production of Documents (Nos. 1-22), served on October 12, 2005; Plaintiff Janssen L.P.'s Objections and Responses to Defendants Mylan Pharmaceutical Inc.'s and Mylan Laboratories Inc.'s First Request for Production of Documents (Nos. 1-22), served on October 12, 2005; and Plaintiff Synaptech, Inc.'s Objections and Responses to Defendants Mylan Pharmaceutical Inc.'s and Mylan Laboratories Inc.'s First Request for Production of Documents (Nos. 1-22), served on October 12, 2005.  In accordance with the manner in which Mylan treated these separated responses in the letter of March 7, 2006, Plaintiffs will refer to their objections and responses collectively as "Plaintiffs' Initial Responses."

COVINGTON & BURLING

Amy D. Brody, Esq.
Page 3
March 27, 2006

exhibits, it unquestionably is. Nevertheless, Plaintiffs have produced and will produce all documents that it intends to rely upon at trial, and we expect defendants to do the same.

As you know, Plaintiffs have produced about 42,000 pages of documents so far and anticipate producing still more documents in the upcoming weeks, including the roughly 20-30 boxes of documents pertaining to marketing and sales that I mentioned in my March 10 letter, among other documents. Moreover, and as set forth in my March 10 letter, Plaintiffs have agreed to make available for inspection a much larger collection of documents – documents whose relevance may be marginal at best, but that we nevertheless will make available so that there can be no doubt that Plaintiffs wish to be entirely forthcoming in discovery.

In contrast, while Plaintiffs have made available multiple deposition witnesses, only one deposition witness (on only two of the many R. 30(b)(6) topics) has been offered by only one of the defendants. And we continue to have significant concerns about defendants' document productions (including Mylan's production of a mere 7100 pages to date), and while we will address this in separate correspondence, it is worth noting the disparity in the discovery efforts exerted by the parties.

Documents Plaintiffs relied upon in responding to interrogatories or in asserting allegations in the Complaint (Request Nos. 2, 3). We confirm that Plaintiffs are not withholding any documents (other than on the basis of privilege) that are responsive to these requests on the grounds that they were not cited in Plaintiffs' Responses to Mylan's interrogatories, nor on the grounds that there were not explicitly referred to in the complaints filed in the current litigation. Responsive, non-privileged documents can be found in the 42,000 pages of documents that have so far been produced by the Plaintiffs. Privileged documents have been logged, and privilege logs have been provided to Mylan. To the extent that any more non-privileged, responsive documents are located by means of a reasonably diligent search, we will produce them.

License agreements (Request No. 5). Responsive, non-privileged documents can be found in the 42,000 pages of documents that have so far been produced by the Plaintiffs. Privileged documents have been logged, and privilege logs have been provided to Mylan. Further, as mentioned in my March 10 letter, responsive documents concerning the '318 patent and its foreign counterparts will be produced.

Secondary (objective) considerations of non-obviousness (Request No. 6). In Plaintiffs' Initial Responses, we committed to performing a reasonably diligent search for documents relevant to the validity of the '318 patent, including documents relating to the objective considerations of non-obviousness of the '318 patent that Plaintiffs intend

COVINGTON & BURLING

Amy D. Brody, Esq.
Page 4
March 27, 2006

to introduce in the current litigation. Responsive, non-privileged documents can be found in the 42,000 pages of documents that have been produced by the Plaintiffs to date. Privileged documents have been logged and privilege logs have been provided to Mylan. Further, as mentioned in my March 10 letter, additional responsive documents will be produced soon or will otherwise be made available for inspection.

Commercial success (Request No. 7). We note that this request is not limited to the product that is the subject of Janssen's NDA No. 21-169, as agreed by the parties and memorialized in my March 10 letter, and as such this request is overly broad and unduly burdensome. Plaintiffs have committed to performing a reasonably diligent search for the documents concerning the commercial success of the Reminyl®/Razadyne product® that is the subject of that NDA, and Plaintiffs' production of such documents is ongoing.

"Competition for any sale" (Request No. 8). We note that this request is not limited to the product that is the subject of Janssen's NDA No. 21-169, as agreed by the parties and memorialized in my March 10 letter, and as such this request is overly broad and unduly burdensome. Plaintiffs have committed to performing a reasonably diligent search for the documents concerning the commercial success – including information concerning competing products (which is how we understand this request) – for the Reminyl®/Razadyne product® that is the subject of that NDA, and Plaintiffs' production of such documents is ongoing. We reiterate our objection that the phrase "competition for any sale" is vague and overly broad.

Call notes  (Request No. 9). First, we note that this request is not limited to the product that is the subject of Janssen's NDA No. 21-169, as agreed by the parties and memorialized in my March 10 letter, and as such this request is overly broad and unduly burdensome. Second, Plaintiffs object to this question as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of evidence that would be admissible in this litigation. This request encompasses an enormous amount of material, and it is unclear how it is reasonably calculated to lead to the discovery of admissible evidence in this case. Your letter provides no explanation, and absent some clarification from Mylan, we do not see why the significant production burden that would result from this request should be imposed on Plaintiffs.

Market data (Request No. 10). First, we note that this request is not limited to the product that is the subject of Janssen's NDA No. 21-169, as agreed by the parties and memorialized in my March 10 letter, and as such this request is overly broad and unduly burdensome. Second, Plaintiffs committed to performing a reasonably diligent search for any documents relevant to the issue of validity of the '318 patent, including objective considerations of non-obviousness. Plaintiffs' document production is

COVINGTON & BURLING

Amy D. Brody, Esq.
Page 5
March 27, 2006

ongoing, and as I mentioned in my March 10 letter, 20-30 boxes of
Reminyl®/Razadyne® marketing-related documents will be produced soon.

Uses of galantamine (Request No. 11). First, we note that this request is
not limited to the product that is the subject of Janssen's NDA No. 21-169, as agreed by
the parties and memorialized in my March 10 letter, and as such this request is overly
broad and unduly burdensome. Plaintiffs' document production is ongoing, and as I
mentioned in my March 10 letter, 20-30 boxes of Reminyl®/Razadyne® marketing-
related documents, many of which are responsive to this request, will be produced
soon.

Marketing documents and information (Request Nos. 12 and 13). First,
we note that this request is not limited to the product that is the subject of Janssen's
NDA No. 21-169, as agreed by the parties and memorialized in my March 10 letter, and
as such this request is overly broad and unduly burdensome. Second, Plaintiffs
committed to performing a reasonably diligent search for responsive, non-privileged
documents, and as I mentioned in my March 10 letter, about 20-30 boxes of marketing-
related documents will be produced soon. We believe that this production will include
the most relevant documents in Plaintiffs' custody related to the marketing of
Reminyl®/Razadyne®.

Sales documentation and data (Request No. 15). First, we note that this
request is not limited to the product that is the subject of Janssen's NDA No. 21-169, as
agreed by the parties and memorialized in my March 10 letter, and as such this request
is overly broad and unduly burdensome. Second, Plaintiffs have already committed to
performing a reasonably diligent search for any documents relevant to the issue of
validity of the '318 patent, including objective considerations of non-obviousness in
Plaintiffs Initial Responses such as commercial success. As to Mylan's specific
requests regarding NDTI data, Xponent data, Xponent PlanTrak data, Formulary Focus
data, IMS data, Scott-Levin data, IPS data, and Early View data, Plaintiffs do not
subscribe to all of these subscription services. Further, per our General Objection M
explained above, we note that this information is not routinely collected or preserved by
any specific individual, and that it is equally available to defendants. Consequently,
such information is overly burdensome to produce when compared to the minimal
burden it would impose upon defendants to simply obtain the identical information
directly from the third party subscription service providers.

Documents produced by or prepared on behalf of Plaintiffs;
Communications between Synaptech and Janssen (Request Nos. 16, 17, 18). First, we
note that this request is not limited to the product that is the subject of Janssen's NDA
No. 21-169, as agreed by the parties and memorialized in my March 10 letter, and as

COVINGTON & BURLING

Amy D. Brody, Esq.
Page 6
March 27, 2006

such this request is overly broad and unduly burdensome. Second, Plaintiffs object to
these requests to the extent that they include documents subject to Federal Rule of Civil
Procedure Rule 26(b)(5) and attorney-client and work product privileges. Subject to and
without waiving any of the previously made objections, responsive, non-privileged
documents can be found in the 42,000 pages of documents that have so far been
produced by the Plaintiffs. For example, as mentioned in the March 10th letter, we
believe that we have produced all non-privileged communications between Janssen and
Dr. Bonnie Davis related to the document categories for which we have indicated we will
produce responsive documents. Privileged documents have been logged, and privilege
logs have been provided to Mylan.

Documents concerning Paragraph IV notifications (Request No. 19). We
will produce responsive, non-privileged documents concerning the defendants'
Paragraph IV notifications, to the extent any exist. We would expect, however, that the
majority of documents on this subject to be in defendants' possession, not Plaintiffs'.

Translations (Request No. 20). We confirm that Plaintiffs are not
withholding any translations of documents on the basis that the translations were
created in anticipation of litigation. To the extent that translations of responsive, non-
privileged documents that Plaintiffs have produced exist, we will produce them.
Defendants should do the same; please let us know if you disagree.

Document retention policy (Request No. 21). Plaintiffs continue to object
to this Request on the grounds that it is overly broad as to time and scope, and that it
would be unduly burdensome to produce the requested documents. Plaintiffs will,
however, produce any document retention policy that can be located by means of a
reasonably diligent search from the groups or departments within Plaintiffs' companies
that were involved in the commercial development and implementation of the
Reminyl®/Razadyne® product from the time period starting with the date of initial
contact between Bonnie Davis and Janssen.

Organizational chart (Request No. 22). As with the above request,
Plaintiffs continue to object to this Request on the grounds that it is overly broad as to
time and scope, and that it would be unduly burdensome to produce the requested
documents. Plaintiffs will, however, produce any organizational charts that can be
located by means of a reasonably diligent search from the groups or departments within
Plaintiffs' companies that were involved in the commercial development and
implementation of the Reminyl®/Razadyne® product from the time period starting with
the date of initial contact between Bonnie Davis and Janssen.

COVINGTON & BURLING

Amy D. Brody, Esq.
Page 7
March 27, 2006

Interrogatories

*Plaintiffs' Objections*

        For the same reasons set forth above concerning Plaintiffs' responses to Mylan's document requests, we believe that the objections we have lodged concerning Mylan's interrogatories are appropriate and we therefore will not withdraw them. Nevertheless, we will supplement those responses as set forth below.

        As you know, we agreed to supplement responses concerning claim construction and the objective considerations of non-obviousness in my March 10 letter. We intend to supplement those responses this week. We have also agreed, as set forth below, to supplement other responses, but we may not be in a position to do so this week. Separately, Plaintiffs believe that the defendants should supplement their interrogatories as well. While we will address this in separate correspondence, please let us know whether Mylan agrees to supplement its interrogatory responses concerning its various contentions in this case, as Plaintiffs have agreed to do.

*Specific Responses*

        <u>Interrogatory No. 1</u>: As I stated in my March 10 letter, Plaintiffs will supplement their interrogatory answer concerning claim construction. We will not, however, provide the "claim chart" that you have demanded, but we will instead identify and provide definitions for claim terms that may be in dispute.

        <u>Interrogatory Nos. 3 (conception), 4 (reduction to practice), and 5 (first offer for sale, publication, and public use)</u>: During the February deposition of Bonnie Davis, defendants had the opportunity to explore these topics as extensively as they wished. Nevertheless, we agree to supplement Plaintiffs' interrogatory responses.

        <u>Interrogatory No. 6</u>: As I also mentioned in my March 10 letter, Plaintiffs will be supplementing their interrogatory answers identifying the applicable objective considerations of non-obviousness. While our ability to do so is hampered by the lack of production of related information by the defendants, we will nevertheless supplement our responses with the information currently available while reserving the right to supplement further once defendants have complied with their discovery obligations.

COVINGTON & BURLING

Amy D. Brody, Esq.
Page 8
March 27, 2006

Sincerely,

Kurt G. Calia

cc:    All defense counsel (via email; see attached service list)
       Steven Balick, Esq. (via email)

# SERVICE LIST

By Electronic Mail and First Class Mail: / By Electronic Mail:

| | |
|---|---|
| William A. Rakoczy *(wrakoczy@rmmslegal.com)*<br>Christine J. Siwik *(csiwik@rmmslegal.com)*<br>Amy D. Brody *(abrody@rmmslegal.com)*<br>Lara Monroe-Sampson *(lmonroe-sampson@rmmslegal.com)*<br>**Rakoczy, Molino, Mazzochi, Siwik LLP**<br>6 West Hubbard Street, Suite 500<br>Chicago, IL 60610<br>312.527.2157/phone; 312.527.4205/fax | Mary B. Matterer *(mmatterer@morrisjames.com)*<br>**Morris James Hitchens & Williams LLP**<br>222 Delaware Avenue<br>10th Floor<br>P.O. Box 2306<br>Wilmington, DE 19899-2306<br>302.888.6800/phone; 302.571.1750/fax |

***Counsel for Defendants Mylan Pharmaceuticals Inc. & Mylan Laboratories Inc.***

By Electronic Mail and First Class Mail: / By Electronic Mail:

| | |
|---|---|
| Edward C. Donovan *(edonovan@kirkland.com)*<br>Karen M. Robinson *(krobinson @kirkland.com)*<br>Corey J. Manley *(cmanley@kirkland.com)*<br>**Kirkland & Ellis LLP**<br>655 Fifteenth Street, NW<br>Suite 1200<br>Washington, DC 20005-5793<br>202.879.5000/phone; 202.879.5200/fax | Josy W. Ingersoll *(jingersoll@ycst.com)*<br>John W. Shaw *(jshaw@ycst.com)*<br>**Young Conaway Stargatt & Taylor LLP**<br>The Brandywine Building<br>1000 West Street<br>17th Floor<br>Wilmington, DE 19899-0391<br>302.571.6600/phone; 302.571.1253/fax |

***Counsel for Defendants Teva Pharmaceuticals USA, Inc. & Teva Pharmaceuticals Industries Ltd.***

| | |
|---|---|
| Taras A. Gracey *(tgracey@winston.com)*<br>Lynn M. Ulrich *(lulrich @winston.com)*<br>Brian L. Franklin *(bfranklin@winston.com)*<br>**Winston & Strawn LLP**<br>35 West Wacker Drive<br>Chicago, IL 60601<br>312.558.5600/phone; 312.558.5700/fax | |

***Counsel for Defendants Barr Laboratories, Inc. and Barr Pharmaceuticals, Inc.***

| | |
|---|---|
| Barbara S. Wahl *(wahl.barbara@arentfox.com)*<br>Richard J. Berman *(berman.richard@arentfox.com)*<br>D. Jacques Smith *(smith.jacques@arentfox.com)*<br>Janine A. Carlan *(carlan.janine@arentfox.com)*<br>John K. Hsu *(hsu.john@arentfox.com)*<br>**Arent Fox PLLC**<br>1050 Connecticut Avenue, NW<br>Washington, DC 20036-5339<br>202.857.6000/phone; 202.857.6395/fax | Philip A. Rovner *(provner@potteranderson.com)*<br>**Potter Anderson & Corroon LLP**<br>1313 N. Market Street<br>Hercules Plaza, 6th Floor<br>P.O. Box 951<br>Wilmington, DE 19899-0951<br>302.984.6000/phone; 302.658.1192/fax |

***Counsel for Defendants Par Pharmaceutical, Inc. and Par Pharmaceutical Companies, Inc.***

| | |
|---|---|
| Robert J. Gunther, Jr. *(robert.gunther@lw.com)*<br>James P. Barabas *(james.barabas@lw.com)*<br>**Latham & Watkins LLP**<br>885 Third Avenue, Suite 1000<br>New York, NY 10022-4834<br>212.906.1200/phone; 212.751.4864/fax | Richard D. Kirk *(rkirk@bayardfirm.com)*<br>**The Bayard Firm**<br>222 Delaware Avenue, Suite 900<br>P.O. Box 25130<br>Wilmington, DE 19899<br>302.655.5000/phone; 302.658.6395/fax |

***Counsel for Defendants Purepac Pharmaceutical Co. & Alpharma, Inc.***

DC: 2022539-1

| | |
|---|---|
| Stuart Sender (ssender@budd-larner.com)<br>**Budd Larner, P.C.**<br>150 John F. Kennedy Parkway<br>Short Hills, NJ 07078-0999<br>973.315.4462/phone; 973.379.7734/fax | Richard L. Horwitz<br>David E. Moore<br>**Potter Anderson & Corroon LLP**<br>1313 N. Market Street<br>Hercules Plaza, 6th Floor<br>P. O. Box 951<br>Wilmington, DE 19899<br>302.984.6000/phone; 302.658.1192/fax |
| *Counsel for Defendants Dr. Reddy's Laboratories, Inc. and Dr. Reddy's Laboratories, Ltd.* | |

| | |
|---|---|
| Alan Bernstein    (abernstein@crbcp.com)<br>Mona Gupta    (mgupta@crbcp.com)<br>**Caesar, Rivise, Bernstein, Cohen & Pokotilow, Ltd.**<br>1635 Market Street, 11th floor<br>Philadelphia, PA 19103-2212<br>215.567.2010/phone; 215.751.1142/fax | Frederick L. Cottrell, III    (cottrell@rlf.com)<br>Anne Shea Gaza    (gaza@rlf.com)<br>**Richards, Layton & Finger, P.A.**<br>One Rodney Square<br>P.O. Box 551<br>Wilmington, DE 19899<br>302.651.7700/phone; 302.651.7701/fax |
| *Counsel for Defendant Alphapharm Pty Ltd.* | |

| | |
|---|---|
| Steven J. Balick (sbalick@ashby-geddes.com)<br>John G. Day    (jday@ashby-geddes.com)<br>**Ashby & Geddes**<br>222 Delaware Ave., 17th Floor<br>P.O. Box 1150<br>Wilmington, DE 19899<br>302.654.1888/phone; 302.654.2067/fax | |
| *Counsel for Plaintiffs Janssen Pharmaceutica N.V., Janssen, L.P., and Synaptech, Inc.* | |