## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **IN RE: '318 PATENT LITIGATION** | : | **Civil Action No. 05-356 (KAJ)** |
| | : | **(Consolidated)** |
| | : | |
| | : | |
| | : | |
| | : | |

### DEFENDANTS BARR LABORATORIES, INC.'S
### AND BARR PHARMACEUTICALS, INC.'S NOTICE
### OF 30(b)(6) DEPOSITION TO PLAINTIFF SYNAPTECH, INC.

PLEASE TAKE NOTICE THAT, beginning on June 27, 2006 at 9:00 A.M. at the offices of Winston & Strawn, 1700 K Street, N.W., Washington, D.C. 20006. Defendants/ Counterclaim-Plaintiffs Barr Laboratories, Inc. and Barr Pharmaceuticals, Inc. (collectively, "Barr"), will take the deposition of Plaintiff Synaptech, Inc. as represented by the person(s) most knowledgeable with respect to the subject matter topics identified below and designated to testify on behalf of Synaptech, Inc., pursuant to Federal Rule of Civil Procedure 30(b)(6). The oral examination will be taken before a notary public or other person authorized to administer oaths, and will be recorded by stenographic means and/or videotape. The deposition will continue from day to day until completed with such adjournments as to time and place as may be necessary. You are invited to attend and participate.

Barr serves this Notice without waiver of their objections to the deficiencies in Synaptech's document production and other discovery responses concerning the subject matter of the instant Notice, and reserves the right to continue this deposition as necessary in light of any subsequent document production by Synaptech.

## TOPICS

1.      Synaptech's knowledge of P.A. Bhasker's article *Medical Management of Dementia*, THE ANTISEPTIC, 71(1): 45-47 (1974) ("Bhasker") being cited by any United States or foreign patent office or other tribunal in connection with the prosecution of the '318 patent or any foreign equivalent of the '318 patent and Synaptech's knowledge of any statements or arguments made to explain Bhasker.

2.      Synaptech's knowledge of D. Dashlov's article *Nivalin: Application and Rehabilitation Treatment of Cerebral Diseases with Aphasic Syndromes*, MBI MEDICO-BIOLOGIC INFORMATION, 3: 9-11 (1980) ("Dashlov") being cited by any United States or foreign patent office or other tribunal in connection with the prosecution of the '318 patent or any foreign equivalent of the '318 patent and Synaptech's knowledge of any statements or arguments made to explain Dashlov.

3.      Synaptech's knowledge of K.L. Rathmann's article *Alzheimer's Disease: Clinical Features, Pathogenesis, and Treatment*, DRUG INTELL. CLIN. PHARM., 18: 684-91 (1984) ("Rathmann") and/or D.A. Cozanitis' article, *L'hydrobromide de Galanthamine: Un Substitut du Sulfate D'eserine (physostigmine) pour le Traitement des Effects Cerebraux des Substances Anti-Cholinergiques*, NOUV PRESSE MED., 7(45): 4152 (1978) ("Cozanitis") being cited by any United States or foreign patent office or other tribunal in connection with the prosecution of the '318 patent or any foreign equivalent of the '318 patent and Synaptech's knowledge of any statements or arguments made to explain Rathmann and/or Cozanitis.

4.      The factual basis for Synaptech's belief that the Teva Defendants engaged in any licensing activity with Dr. Bonnie Davis or Synaptech.

5.      The facts and circumstances related to Synaptech's efforts to license the

2

subject matter of the '318 patent, including the identity of all companies or individuals contacted regarding licensing the '318 patent and the reasons or explanations given by each company or individual for licensing or not licensing the '318 patent.

6.    The facts and circumstances for Ciba Geigy's decision to abandon the galantamine project as known to Synaptech, or pertaining to the explanation that Ciba Geigy gave to Synaptech for its decision to abandon its galantamine project.

7.    The total amount of royalties received by Synaptech in connection with the subject matter of the '318 patent or resulting from licensing of the '318 patent.

8.    The total amount of royalties received by Synaptech in connection with chemical derivatives of galantamine.

9.    The identity of experts or consultants who have worked or who are working with Synaptech with respect to the subject matter of the '318 patent excluding consulting experts Synaptech has retained for this litigation.

10.    The financial effect on Synaptech, including lost revenues and profits, that Synaptech projects, anticipates, expects, or forecasts should one or more of the Defendants' ANDAs for galantamine hydrobromide receive approval from the FDA.

11.    The factual basis for Synaptech's disagreement, if any, with the positions set forth in any of the Defendants' responses to Plaintiffs' Interrogatories concerning invalidity and secondary considerations of non-obviousness.

12.    The facts and circumstances known to Synaptech related to Plaintiffs' claim that the invention(s) claimed in claims 1 and 4 of the '318 Patent are non-obvious based on their "commercial success" as defined in *Graham v. John Deere Co.*, 383 U.S. 1 (1966), in particular, Synaptech's knowledge of Plaintiffs' claim that Razadyne has been a "tremendous

commercial success, whether measured by prescriptions, total sales or overall profitability" and identify the documents that Synaptech is aware of that Plaintiffs rely on for this claim.

13.    The facts and circumstances known to Synaptech related to any assertion by Plaintiffs that secondary considerations of non-obviousness as defined in *Graham v. John Deere Co.*, 383 U.S. 1 (1966), other than commercial success, render the '318 patent non-obvious.

14.    Marketing strategies, marketing plans, and projected sales of Synaptech's galantamine drug product for the treatment of mild to moderate Alzheimer's disease.

15.    Synaptech's knowledge of dosage studies, performed by or on behalf of Synaptech, relating to the use of galantamine for the treatment of Alzheimer's disease and related dementias.

16.    Synaptech's knowledge of the minimum and maximum therapeutically effective dose of galantamine hydrobromide that can be administered orally for the treatment of Alzheimer's disease and related dementias and the basis for Synaptech's knowledge of such dosage limitations.

17.    Synaptech's knowledge of how Dr. Bonnie Davis arrived at the dosage range of 10-2000 mg in claim 4 and Synaptech's knowledge of whether there is any published literature that discloses that doses of galantamine hydrobromide of greater than 32 mg are therapeutically effective for the treatment of Alzheimer's disease and related dementias.

18.    Customers, revenues, and profits related to sales of galantamine for treating Alzheimer's disease.

19.    Expenses and costs related to sales of galantamine for treating Alzheimer's disease.

20.    Information related to customer purchase decisions related to galantamine for treating Alzheimer's disease including any survey data.

21.    The uses for which Reminyl® / Razadyne® drug product, is prescribed, used, and/or taken, including but not limited to National Drug and Therapeutic Index data.

22.    Facts and circumstances surrounding any "experiments underway using animal models," as referenced in the Amendment of April 10, 1986, submitted on behalf of Bonnie Davis during the prosecution of the '318 patent, including without limitation the person(s) or entity(ies) performing any experiments and the person(s) or entity(ies) funding any experiments, including the identity of all individuals knowledgeable regarding same and the identity and location of all documents referring or relating to same.

23.    Facts and circumstances surrounding the statement in the Amendment of April 10, 1986, submitted on behalf of Dr. Bonnie Davis during the prosecution of the '318 patent, that "[g]alanthamine and its properties have been known for many years."

24.    Synaptech's explanation of the problems in the field of galantamine hydrobromide, and acetylcholinesterase inhibitors, including but not limited to physostigmine, and/or any drugs used for the treatment of mild to moderate dementia of the Alzheimer's type that were existing before January 15, 1986, including any attempted solutions to those problems, whether such attempts succeeded or failed, and including the identity of all individuals knowledgeable regarding same and the identity and location of all documents referring or relating to same.

25.    Any documents related to the foregoing topics that were either not produced in this case or destroyed and the circumstances under which the documents were withheld from production or destroyed, the identification of all persons with knowledge of the

documents and/or their contents, and, in the case of documents destroyed, the dates of the destruction.

26.     Synaptech's knowledge of any head-to-head clinical trials comparing Razadyne to any other drug used for the treatment of Alzheimer's disease and the outcome of such studies.

27.     Synaptech's knowledge of the FDA-reviewed pivotal trial involving galantamine referenced in Plaintiffs' interrogatory responses.

28.     Synaptech's knowledge of Dr. Mary Sano, including any relationship between Plaintiffs and Dr. Sano and monies paid by Plaintiffs to Dr. Sano related to Razadyne or the subject matter of the '318 patent.

29.     The identity and location of documents and things concerning the foregoing topics.

30.     Persons knowledgeable regarding subject matter of the foregoing topics.


Respectfully submitted,


John C. Phillips, Jr. (#110)
Brian E. Farnan (#4089)
PHILLIPS, GOLDMAN & SPENCE, P.A.
1200 North Broom St.
Wilmington, DE 19806
Tele:  (302) 655-4200
Fax:  (302) 655-4210
JCP@pgslaw.com

and

6

George C. Lombardi (admitted *pro hac vice*)
Taras A. Gracey (admitted *pro hac vice*)
Lynn M. Ulrich (admitted *pro hac vice*)
Mustafa A. Hersi (admitted *pro hac vice*)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Tele: (312) 558-5600
Fax: (312) 558-5700
lulrich@winston.com

*Attorneys for Defendants Barr Laboratories,
Inc. and Barr Pharmaceuticals, Inc.*

Date: June 6, 2006