# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

222 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

July 7, 2006

The Honorable Kent A. Jordan
United States District Court
844 North King Street
Wilmington, Delaware 19801

**VIA ELECTRONIC FILING**

Re:   In re: '318 Patent Infringement Litigation, Civil Action No. 05-356-KAJ (consolidated)

Dear Judge Jordan:

    In advance of the July 10, 2006 discovery teleconference, Plaintiffs Janssen Pharmaceutica N.V., Janssen L.P. and Synaptech, Inc. (collectively "Plaintiffs") respond to Defendant Alphapharm Pty, Ltd's ("Alphapharm") July 6, 2006 letter seeking to compel Plaintiffs to produce approximately 1,350 boxes of documents for inspection. Although Plaintiffs have offered to work with defendants concerning an inspection for nearly five months, Alphapharm now makes the demonstrably false charge that Plaintiffs have "refused to allow" inspection. To the contrary, rather than place a single telephone call to Plaintiffs months ago to arrange for an inspection, defendants neglected to act until the waning moments of fact discovery, and now seek relief only after it has ended.

    Alphapharm's reckless accusation that Plaintiffs have been "uncooperative" with respect to the materials in question is easily disproved by the parties' correspondence. On March 10, 2006, Plaintiffs wrote to defendants offering for inspection the approximately 1,200 boxes of marketing-related information that Plaintiffs first described to defendants during a February 13 teleconference. (*See* Calia 3/10/06 letter to Defense Counsel, Ex. A.) Defendants waited for nearly a month before Mylan wrote to inquire about these documents (along with other document production issues). (*See* Brody 4/3/06 letter to Calia, Ex. B.) Plaintiffs responded within two days, suggesting that the parties conduct a teleconference to discuss how to conduct an inspection, and explaining that the mechanics of the inspection would be complicated by the fact that the boxes contain some privileged or patient-sensitive information and because the materials were not all stored in a single location. (*See* Calia 4/5/06 letter to Brody, Ex. C.)

    Again, defendants failed for over a month to follow up on the documents offered for inspection. Eventually, Mylan's counsel sent an email that ignored Plaintiffs' request for a teleconference, and instead asked where the documents were located and when defendants could inspect them. (*See* Brody 5/15/06 email to Calia, Ex. D.) Plaintiffs responded to Mylan's May

15, 2006 email approximately one hour after receiving it, reminding defendants of Plaintiffs' request for a teleconference on the subject, offering to schedule a teleconference to discuss the matter that same week, and requesting information necessary to arrange for the inspection. (*See* Calia 5/15/06 email to Brody, Ex. D.)

Defendants went silent for nearly another month. Mylan's counsel again wrote to Plaintiffs about conducting an inspection, and again ignored Plaintiffs' long-standing request for a teleconference to discuss the logistics of an inspection and our how the parties might address Plaintiffs' concerns about privileged and/or patient-sensitive information in the documents. Instead, Mylan asked for (a) an identification of where the boxes were, and (b) the numbers of such boxes at each location and a description of their contents. (See Brody 6/12/06 letter to Calia, Ex. E.) Plaintiffs promptly responded to this letter by identifying the location and number of boxes and describing the various types of documents contained in the boxes, and yet again explaining the complexity associated with the inspection and the need for the parties to schedule a teleconference to address the logistics. (*See* Calia 6/15/06 letter to Brody, Ex. F.) Plaintiffs' June 15 letter also set forth the clear history of delay by defendants in pursuing this discovery.

In the period from mid-February to mid-June, Mylan (and no other defendant) episodically raised and then abandoned interest in the documents offered for inspection. Counsel for the parties had spoken at numerous depositions and participated in dozens of telephone calls since the inspection was first offered, and not once did any defendant express a desire to inspect documents. Far from having an interest in an inspection "as soon as [defendants] learned about these documents" as Alphapharm inaccurately claims, the incontrovertible record here is one of indifference by the defendants.

Not until June 22 – just one week prior to the close of fact discovery – were Plaintiffs first contacted by counsel for Alphapharm on the subject of a document inspection. (*See* Bernstein 6/22/05 email to Calia, Ex. G.) Up to that point, the only defendant that had ever expressed any interest (albeit only to the limited extent shown above) was Mylan. Alphapharm waited until the eleventh hour to express any interest in these documents[1], and it was not until that point that any defendant agreed to the telephone call that Plaintiffs had proposed in March.

During the June 26 call that followed, Plaintiffs explained to Alphapharm's counsel that because of the need to pre-review the documents for privilege and patient confidentiality concerns, it no longer seemed possible to arrange for any meaningful inspection before the close of fact discovery days later. Counsel for the parties did discuss whether information in the form of an index was available, and Alphapharm's counsel asked to confer with the other defendants

---

[1] Indeed, this was the first inquiry by any Defendant related to the existence of any form of indexing system for the approximately 1,350 boxes of documents, an issue which is now prominently featured in Alphapharm's letter to the Court. As Plaintiffs previously explained to defendants, the only indexes available are either subject to attorney work product protection, having been prepared by outside counsel in connection with this litigation, or cover a broad range of documents kept in long-term storage, and do not relate solely to the Razadyne® product.

and speak again. Plaintiffs' counsel and Alphapharm's counsel spoke again on June 30 – the last day of fact discovery – at which point Plaintiffs made clear that it was simply too late for an inspection and that defendants had delayed too long. Alphapharm's counsel admitted that he was unfamiliar with the correspondence on the subject, that he was to receive a package containing it over the holiday weekend, and that he would review it to determine whether he agreed with Plaintiffs' delay-based objections.

On July 5 – after the close of fact discovery – Alphapharm's counsel left voicemail and email messages indicating that defendants intended to raise this issue with the Court. Contrary to the assertion in Alphapharm's letter, defendants did *not* advise Plaintiffs before the close of fact discovery that they would raise this dispute with the Court. Were that the case, Alphapharm's counsel would not have expressed a need to review the correspondence and consider the issue of delay.

Plaintiffs have fully complied with their discovery obligations in this case, and there can be no serious question that defendants had ample opportunity to inspect the documents offered by Plaintiffs many months ago. Despite the near-daily telephone calls and emails on discovery issues for months, defendants inexplicably refused to participate in a call concerning an inspection until the waning hours of discovery. Having stood silently on the sidelines for so many months, Alphapharm should not be permitted to rely on the accelerated discovery schedule that *defendants* sought, only to ignore the deadline when convenient to do so.

For the reasons set forth above, Alphapharm's motion should be denied.[2]

Respectfully,

/s/ *Steven J. Balick*

Steven J. Balick

SJB/dmf
Enclosures
171060.1

cc:   All defense counsel (via electronic mail, w/ encl.)

---

[2] Alphapharm buries in a footnote a request that the Court prohibit Plaintiffs from taking a non-party deposition in Germany on July 24, 2006. In clear violation of the applicable rules, Alphapharm made no effort whatsoever to meet and confer on this issue, and so this issue should not take up the Court's time on July 10. Plaintiffs note the irony that on the one hand, Alphapharm demands access to 1,350 boxes of documents in July, while on the other hand it claims that Plaintiffs' single third-party deposition in July is somehow prejudicial to defendants.