# RICHARDS, LAYTON & FINGER
A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX (302) 651-7701
WWW.RLF.COM

FREDERICK L. COTTRELL, III
DIRECTOR

DIRECT DIAL NUMBER
302-651-7509
COTTRELL@RLF.COM

August 16, 2006

**VIA ELECTRONIC FILING &
HAND DELIVERY**

The Honorable Kent A. Jordan
United States District Judge
  for the District of Delaware
844 King Street
Wilmington, DE 19801

Re:   In re '318 Patent Infringement Litigation
      Civil Action No. 05-356 (KAJ)

Dear Judge Jordan:

We write this letter on behalf of Defendant Alphapharm Pty. Ltd. ("Alphapharm") in anticipation of the conference call with the Court on August 18, 2006 at 9:00 a.m.

This letter concerns Plaintiffs' refusal to comply with the Court's Order during the July 11, 2006 telephonic hearing that Plaintiffs permit Defendants to inspect the 1350 boxes of marketing-related documents for Razadyne® within 14 days (10 business days) of the July 11th hearing. (Ex. A - 7/11/06 Hearing Tr. at 25-27, see also Ex. B - Alphapharm's 7/6/06 letter). These 1350 boxes reside in two locations – 1200 boxes in Somerset, New Jersey and the remaining 150 boxes in Titusville, New Jersey. After Alphapharm completed the inspection of the 150 boxes in Titusville, Plaintiffs refused to permit inspection of the remaining 1200 boxes in Somerset. The parties held a meet and confer on July 24, 2006 and were unable to resolve their differences.

### Background – Document Inspection in Titusville

On July 14, 2006, Alphapharm started inspecting the 150 boxes of documents in Titusville where it encountered a series of delay tactics by Plaintiffs. Specifically, Alphapharm experienced significant down time waiting for Plaintiffs to pre-screen the boxes before delivering them to Alphapharm. (Exs. C-E - Bernstein and Gupta 7/14/06 and 7/18/06 e-mails). Alphapharm constantly called Plaintiffs to request additional boxes but did not succeed because the telephone was busy on Plaintiffs' end and Alphapharm was not allowed to leave the conference room unattended. (*Id.* and Ex. M. – Calia 7/12/06 e-mail). Alphapharm even asked Plaintiffs for a cell phone number so as to avoid the constant busy signal, but Plaintiffs refused. (Ex. D - Gupta 7/14/06 e-mail). Alphapharm encountered these same delay tactics on

the second day of the document inspection.[1] As such, Alphapharm waited one day before resuming with the inspection so that Plaintiffs could pre-screen and accumulate a sufficient inventory of boxes. The inspection in Titusville resumed and finished on July 19, 2006.

During the inspection, Alphapharm learned for the first time that the Titusville documents were "working files" of Plaintiffs and thus any earlier versions of the documents may exist in Somerset. In view of Plaintiffs inability to keep up with the pace of Alphapharm's inspection of the documents, Alphapharm waited until it finished the inspection in Titusville before moving on to the Somerset inspection. Accordingly, on July 20, 2006, Alphapharm advised Plaintiffs that it wanted to begin the inspection of the 1200 boxes of documents in Somerset. (Ex. G - Gupta 7/20/06 e-mail). Plaintiffs refused stating that (1) during the July 11th hearing Alphapharm limited the inspection to the 150 boxes in Titusville – "a strategy reflected in the Court's Order" and (2) Alphapharm delayed in seeking the inspection of the Somerset documents. (Ex. H - Calia 7/20/06 e-mail). Plaintiffs are wrong on both counts.

### The Court-ordered document inspection covered both the Titusville and Somerset documents and there was no delay in seeking the document inspection in Somerset.

During the July 11th teleconference, Alphapharm made it clear that its objective was to inspect *all* 1350 boxes to the extent that the boxes contain promotional materials:

**Mr. Bernstein:** I can make a statement to Your Honor, we have no desire to search all of the 1,350 boxes. Many of the materials, as stated in the letters we received from Janssen's counsel, we are not interested in. **We're not interested in adverse events reports. We're not interested in raw data. We're just interested in promotional materials.** Now, I understand there may be 150 documents at one storage facility -

**The Court:** 150 boxes.

**Mr. Bernstein:** -- and the other 1,200 are somewhere else. What I would propose is that somehow our people take a shot at those documents. They are manageable, although even 150 boxes are a lot of documents. (Ex. A - July 11, 2006 Hearing Tr. at 25, lines 8 - 20) (Emphasis added).

When Alphapharm's attorney Mr. Bernstein stated that he was not interested in searching all of the 1350 boxes, he was referring to not searching the boxes that contain only raw clinical data or adverse events data. (Ex. I - Gupta 7/20/06 email). Mr. Bernstein limited only the subject matter of the boxes to be searched.

In deciding to grant Alphapharm's request for the document inspection, the Court *never* limited the number of boxes that could be inspected, only the amount of time available for the inspection:

---

[1] Because of theses delays, Alphapharm asked to continue with the inspection after 4:00 p.m. during the weekdays and during the daytime on the weekends so as to expedite the process but Plaintiffs refused. (Ex. F - Calia 7/14/06 e-mail).

-2-

RLF1-3048576-1

| | |
|---|---|
| **The Court:** | All right. Well here is how the **box issue** comes out. ... I'll give you two weeks to get something worked out ... (Ex. A at 25, lines 21 - 22, Ex. A. at 26, line 23) (Emphasis added). |

Thus, neither Mr. Bernstein nor the Court limited the document inspection to the Titusville documents. Furthermore, during the July 11th teleconference, Plaintiffs' counsel George Pappas reiterated that the scope of the search would be all 1350 boxes and Plaintiffs would be reviewing them:

| | |
|---|---|
| **Mr. Pappas:** | Yes, Your Honor. Only one issue, and that is with respect to the **1,350 boxes, we will start screening those now.** We're reviewing them for production and will endeavor obviously to review them and turn them over within 14 days, and believe we can do so. But if we need a couple of extra days, we may have to come back to the Court for that. |
| **The Court:** | Well, that is all right because I said, and am trying to make clear, while I don't think the plaintiffs here are utterly without fault, you could have been doing this screening a long time ago. ... So if you need some time, within bounds of reason, you take more time. (*Id* at 36, lines 6-19) (Emphasis added). |

Mr. Pappas' dialogue with the Court clearly shows that Plaintiffs understood that the Court-ordered inspection applied to all 1350 boxes.

Plaintiffs' delay argument is premised on the fact that Alphapharm waited nine (9) days from the July 11th hearing to request inspection of the Somerset documents. (Exs. J and K - Calia 7/21/06 and 7/24/06 e-mails). In view of the significant delays that Alphapharm encountered during the Titusville inspection, as well as learning that the Titusville documents were "working files," it was entirely appropriate for Alphapharm to wait until after it finished the inspection in Titusville before moving on to the inspection in Somerset. (Ex. L – Gupta 7/24/06 e-mail). Therefore, there was no delay.

By granting the Somerset inspection, Alphapharm is not asking the Court to adjust any of the discovery deadlines and the parties would continue with expert discovery. Plaintiffs should not be able to benefit from their delay tactics by preventing Defendants access to relevant discovery.

### Relief Sought

Alphapharm respectfully requests that the Court order Plaintiffs to permit Defendants to inspect the 1200 boxes in Somerset. Alphapharm further requests that the Court order Plaintiffs to pre-screen the documents for privileged materials, adverse events data, raw clinical data, Razadyne ER formulation and non-Razadyne material within fourteen (14) days of the Order after which Defendants shall have seven (7) days to inspect the documents.

Respectfully,

*/s/ Frederick L. Cottrell, III*

Frederick L. Cottrell, III (#2555)

FLC,III/afg
Encl.
cc:     Counsel of Record