# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

222 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

August 17, 2006

The Honorable Kent A. Jordan  
United States District Judge  
844 North King Street, Room 6325  
Wilmington, Delaware 19801

VIA ELECTRONIC FILING

Re: *In re '318 Patent Infringement Litigation,*  
C.A. No. 05-356-KAJ (consolidated)

Dear Judge Jordan:

In anticipation of the discovery teleconference set for 9:00 a.m. eastern time tomorrow, plaintiffs respectfully respond to Alphapharm's August 16 letter brief.

Alphapharm self-servingly re-writes history in an effort to justify seeking a dramatic expansion of what was a last-minute request when originally made more than a month ago – and one which the Court granted only with great reluctance and subject to strict limitations. Having virtually ignored the inspection of these documents for an extended period of time, and having ignored repeated offers by plaintiffs to schedule a teleconference to work out the details and logistics of an inspection, Alphapharm suddenly surfaced as discovery literally was ready to close and asked that plaintiffs be ordered to turn themselves inside out to immediately screen 150 boxes of documents for privilege and relevance. Alphapharm's request called for a very substantial investment of time and effort by plaintiffs, even though that task could have been undertaken long beforehand on a far less burdensome basis were it not for Alphapharm's indifference and delay. The Court made very clear that Alphapharm's emergency was of its own making, and that in granting a very limited window to conduct further inspection, the Court was giving Alphapharm an undeserved break. The Court articulated its analysis of the situation far more effectively than can be paraphrased in this letter, and we therefore have attached the Court's comments reflected at pages 25-27 of the July 11 transcript as the most effective possible refresher as to how Your Honor sized up the equities as of July 11 (Ex. A).

With that background for context, we turn to plaintiffs' primary two points in response to Alphapharm's latest request – (i) that the Court's strict two-week window for the inspection of 150 boxes of Titusville documents never was intended to include the inspection of the additional 1200 boxes of documents that Alphapharm now seeks, and (ii) that both on grounds of practicality and fairness, Alphapharm's new request is totally unreasonable.

In its letter brief, Alphapharm contends that at the July 11 hearing the Court ordered plaintiffs to make 1350 boxes of documents available for inspection and copying during a two-

week period. However, the transcript of that hearing plainly reveals that Alphapharm's counsel limited his request to 150 of those boxes, and that the Court ruled only upon this limited request. Although the parties initially discussed 1350 boxes of documents during the July 11 hearing, that changed, as evidenced by the following colloquy between Alphapharm's counsel and the Court:

> Mr. Bernstein:   I can make a statement to Your Honor, <u>we have no desire to search all of the 1,350 boxes</u>.... Now, I understand there may be 150 documents at one storage facility --
>
> The Court:   150 boxes.
>
> Mr. Bernstein:   -- and the other 1,200 are somewhere else. <u>What I would propose is that somehow our people take a shot at those documents. They are manageable, although even 150 boxes are a lot of documents.</u>

(*Id.* at 25:8-20 (emphasis added).)

Immediately after Mr. Bernstein offered this limitation, the Court stated: "All right. Well, here is how the box issue comes out." (*Id.* at 25:21-22.) The Court gave Alphapharm "14 days or 10 business days" to review the 150 boxes (*id.* at 27:21), and ordered the parties to "[g]et on the phone" and coordinate the logistics of the inspection (*id.* at 26:25).

Plaintiffs initiated a teleconference to confer about the inspection on July 11 – the day of the discovery hearing (Ex. B, Calia July 11 e-mail to Bernstein). At no time during that teleconference did Alphapharm mention a desire to inspect the 1200 boxes of Iron Mountain documents. The *only* request by Alphapharm at that time concerned the logistics for inspecting the 128[1] boxes of Titusville documents.

Thereafter, the following events took place:

- Plaintiffs made the Titusville documents available for inspection the very next day. (Ex. C, Calia July 12 e-mail to Gupta and Bernstein.) The total amount of material made available for inspection, all of which needed to be pre-reviewed by plaintiffs' counsel in order to screen for privilege and for sensitive and irrelevant information (e.g., patient identifying information), was approximately 375,000 pages.

- Alphapharm's counsel delayed two days, until Friday July 14, before sending three people to begin the inspection and copying process. (Ex. D, Gupta July 13 e-mail to Calia.) Alphapharm never sent more than four people (three lawyers and a summer associate) at any time to inspect documents, despite the Court's 14 calendar-day limit on the inspection period and despite the volume of material to be inspected.

- Alphapharm completed its inspection on July 19. (Ex. E, Bernstein July 19 email to Calia.)

- Plaintiffs produced copies of the responsive, non-privileged documents on July 27. (Ex. F, Beckmann July 27 letter to defendants' counsel.)

---

[1] Although the parties believed at the July 11 hearing that there were 150 boxes of documents at the Titusville facility, there turned out to be only 128 boxes.

Only after its review of the Titusville documents was complete, on July 20 – nine days after the discovery hearing – did Alphapharm inquire about a possible inspection of the documents at Iron Mountain. (Alphapharm Letter-Brief at 2.) Alphapharm has never explained the nine-day delay, other than a nebulous reference to "work product." (Ex. G, Gupta July 24 e-mail to Calia.) And, Alphapharm's July 20 request sought to begin the inspection of Iron Mountain materials – all 1200 boxes of it – on July 24, which was the day before the end of the two-week inspection period set by the Court.

Alphapharm relies principally upon a clarifying remark by plaintiffs' counsel at the *end* of the discovery hearing, in which he sought confirmation whether it would be acceptable to the Court if it were to take "a couple of extra days" to pre-screen the Titusville documents. (Ex. H at 36:6-12.) Plaintiffs' counsel simply misspoke when he inadvertently referred to 1350 boxes instead of the 150 boxes to which Alphapharm's counsel's request had been limited. As the Court will no doubt appreciate, to pre-screen 128 boxes of documents would (and did) take a number of days. To pre-screen the literally millions of documents contained in 1350 boxes would take dramatically longer, and it makes no sense whatsoever that plaintiffs ever believed the collection and screening being discussed was for 1350 boxes. Plaintiffs never would have believed it possible to pre-screen so staggering a volume of material in so short a time period – just as Alphapharm's counsel cannot seriously claim to have believed themselves capable of reviewing 1350 boxes of documents in just 10 business days (it took them four days to screen just one tenth that volume at Titusville).

Moreover, the Iron Mountain documents are located at multiple facilities, and normally at least five-weeks' notice would be required to move them to a single location. In no event could the 1200 boxes be shipped to a single location in less than two weeks. Once the boxes arrive, the documents they contain would need to be pre-reviewed by both Iron Mountain staff and plaintiffs' counsel before they could be produced for inspection. And because the conference room at the Somerset facility where the review would take place can hold only 200 boxes at a time, plaintiffs would need to arrange for a staging area in which to conduct the pre-screening and storage of the boxes awaiting inspection. The conference room only would be available to Alphapharm's counsel for six hours each day – from 9:00 a.m. to noon, and from 1:00 p.m. to 4:00 p.m – and would require constant monitoring by Iron Mountain staff. Plaintiffs estimate that to move the documents to a single location, pre-screen them, and have Alphapharm review them, would take a *minimum* of eight weeks.

In short, the inspection of the Iron Mountain documents would be an enormously burdensome and time-consuming task – one that never could be accomplished in anywhere close to the three weeks that Alphapharm projects, one that never was contemplated during the July 11 hearing, and one that Alphapharm, having been "asleep at the switch" (7-11-06 tr. at 26), has no right to request at this late date and on this record. Accordingly, plaintiffs respectfully request that Alphapharm's request be denied.

Respectfully,

/s/ Steven J. Balick

Steven J. Balick

Attachments
cc: All defense counsel (via electronic mail, w/attachments)