# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

222 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

September 7, 2006

The Honorable Kent A. Jordan
United States District Court
844 King Street
Wilmington, DE  19801

> Re:   In re '318 Patent Infringement Litigation,
>       Civil Action No. 05-356-KAJ (Consolidated)

Dear Judge Jordan:

At the Court's request, I enclose a copy of the transcript of the discovery dispute teleconference that Your Honor held in the above matter during the Rule 30(b)(6) deposition of plaintiff Synaptech, Inc. on August 30, 2006.

Respectfully,

John G. Day

JGD/nml
Enclosure
172931.1

cc:  All defense counsel (via electronic mail; w/ attachment)

72

```
 7              (Brief recess.)
 8              (Telephone conference with Hon.
 9   Jordan.)
10              THE CLERK:  The docket item
11   number for that deposition notice is
12   252 -- it is 06 -- it is 06 -- I'm sorry.
13   05356.
14              HON. JORDAN:  All right, notice
15   of deposition of plaintiff Synaptech.  Is
16   that the document?
17              MR. PAPPAS:  Yes, sir.  Yes,
18   your Honor.
19              HON. JORDAN:  All right.  I have
20   that in front of me and why don't we go
21   ahead and whoever arranged for this call
22   take the ball and tell me what the problem
```

124642.TXT

23    is and what it is you want me to do about

24    it and then I'll take the position from

25    the other side.


73


1

2              MR. PAPPAS:  Very well.  It's

3    George Pappas, who will speak on behalf of

4    plaintiff Synaptech.

5              We are currently having taken a

6    30 (b) (6) notice, or deposition of

7    Synaptech, Inc., the corporation, by the

8    defendants Bar and AlphaPharm.  Synaptech

9    has produced its only employee and

10   executive, Dr. Bonnie Davis, who also

11   happens to be the inventor of the '318

12   patent.

13             As your Honor may recall,

14   Dr. Davis has already been deposed in her

15   personal capacity for 14 hours over a

16   two-day time period by all of the

17   defendants, and at that time there were 7

18   defendants participating in the case.

19             Subsequent to that deposition, a

20   30 (b) (6) notice that we're about to hear

21   today was served on Synaptech.  Your Honor

22   may recall that we had a hearing before

23   you on July 11th where we noted, we on

24   behalf of Synaptech, noted an objection to

25   read deposition in effect of Dr. Bonnie

124642.TXT

74

1
2    Davis and your Honor ruled that a
3    30 (b) (6) could go forward and that
4    Synaptech was to produce an individual
5    prepared to testify about topics
6    appropriate to a 30 (b) (6) witness.
7            Synaptech promptly complied with
8    your Honor's ruling and Dr. Bonnie Davis
9    is here today prepared to testify and has
10   been testifying, your Honor, about 30
11   topics that are all in this notice.
12   Either by reference to documents or to the
13   extent Synaptech has records, she has and
14   is prepared to testify.
15           The difficulty has arisen, your
16   Honor, because -- and I made an oral
17   motion for protective order -- and that's
18   what we're asking your Honor to grant, as
19   I'll address now.  I have not instructed
20   the witness not to answer.  I've followed
21   the rules and made an oral motion for
22   protective order and sought the
23   intervention of your Honor as soon as you
24   are able to accommodate us, and we
25   certainly appreciate that, on such short

75

124642.TXT

1
2    notice.
3            There have been a series of
4    questions this morning, your Honor, that
5    fall outside, clearly outside the scope of
6    any of the 30 topics of the deposition.
7    And when I have asked counsel for
8    AlphaPharm and Bar to make a proffer as to
9    how they're within the scope of any of the
10   topics, which we have prepared Dr. Davis
11   on, as is our obligation under 30 (b) (6),
12   they have repeatedly and steadfastly
13   refused to do so.  I've asked them to make
14   a proffer in an attempt to work out a
15   discovery dispute so we wouldn't have to
16   trouble your Honor, but they have refused
17   to do so.
18           Their position, as expressed to
19   me on the record, has been that, to the
20   extent Dr. Davis said "I don't know" in
21   her personal capacity to any question
22   during two days in February, they are
23   entitled to interrogate her about that
24   even if it is outside the scope of any of
25   the topics of the 30 (b) (6) deposition.

76

1
2    And I have a specific example.
3            If your Honor will note
                         Page 68

124642.TXT

4    paragraph -- topic number 1 reads:

5    "Synaptech's knowledge of P.A. Baskher's

6    article, 'Medical Management of Dementia,'

7    in the Antiseptic Journal." And what they

8    asked us to prepare a corporate

9    representative on is whether or not that

10   article was cited by any United States or

11   foreign patent office or other tribunal in

12   connection with the prosecution of the

13   '318 patent or any foreign equivalent of

14   the '318 patent and Synaptech's knowledge

15   of any statements or arguments made to

16   explain Baskher.

17          Now, it has been testified to

18   that Dr. Davis, in accordance with her

19   30 (b) (6) obligations, checked with the

20   Synaptech records, as they were held by

21   her patent attorney, John Richards, who

22   advised her that the P.A. Baskher article

23   was never cited in connection with the

24   '318 patent by the United States Patent

25   Office or any foreign tribunal in

77

1

2    connection with the prosecution of the

3    '318 patent.

4           Notwithstanding that testimony,

5    counsel for the defendants attempted to

6    ask her general questions about the

Page 69

124642.TXT

7    Baskher article.  That is not a topic,

8    your Honor, of any of the 30 categories of

9    the deposition.

10          Then, to make matters even more

11    beyond the scope, they placed before her a

12    document previously identified as a

13    defendants' exhibit, entitled "Translation

14    of Nullity Action Filed in Germany by

15    Waldheim on 1 June 1995."

16          Now, first, your Honor, a

17    nullity action is not part of the

18    prosecution of any patent.  It's an action

19    that takes place in Europe after a patent

20    has been granted.  If the defendants

21    wanted to inquire into that and get the

22    Synaptech position, they could have put us

23    on notice.  We've spent an extremely high

24    amount of time preparing this witness to

25    testify on 30 topics.  They did not so

78

1

2    note it.

3          To make matters, in our view,

4    your Honor, worse, in the nullity action,

5    which is not an action, by the way, by a

6    foreign tribunal, the document they put

7    before her is the translation of a

8    position taken by another company called

9    Waldheim, in Europe, so it's not an action

124642.TXT

10    taken by a European patent authority.

11    There are certain references cited in

12    there by the Waldheim company in bringing

13    the nullity action.  Not one of the those

14    references cited in that nullity action

15    are contained in paragraphs 1, 2, or 3 of

16    the corporate notice that the defendants

17    have served.

18         The relief, therefore, we ask,

19    your Honor, is that my oral motion on

20    behalf of Synaptech be granted and that

21    the 30 (b) (6) deposition, as your Honor

22    ordered, go forward on all 30 of the

23    topics, which, to the extent Synaptech has

24    knowledge and documents, Dr. Davis is

25    prepared to testify, but that your Honor

79

 1

 2    respectfully direct the defendants that

 3    under the guise of a 30 (b) (6) deposition

 4    they are not entitled to ask her, as the

 5    corporate representative, about any

 6    question in February that she may not have

 7    known the answer to if it's outside the

 8    scope of the 30 (b) (6) topics.

 9         What we did in preparing her,

10    your Honor, when you said in your

11    transcript they were entitled to do a

12    properly prepared 30 (b) (6) witness, we

Page 71

124642.TXT

13    went back through the transcript of
14    February, we found the instances where
15    Dr. Davis said she did not know the
16    answer, and to the extent those "do not
17    know" answers were clearly within the
18    purview of any of the 30 topics in the
19    corporate notice, we made sure that she
20    was prepared.  And she's prepared on much
21    more, because these 30 topics, your Honor,
22    go far beyond some of the areas that were
23    covered in February.
24            HON. JORDAN:  Okay.
25            MR. PAPPAS:  That's our relief

                                              80


1
2    your Honor.
3            HON. JORDAN:  I'm pretty sure I
4    got your position.  Who's speaking on
5    behalf of Bar and AlphaPharm?  I assume
6    you have a joint position.
7            (Via Telephone.)
8            MR. GRACEY:  Yes, your Honor.
9    This is Taras Gracey on behalf of
10   Mr. Bar.  Mr. Bernstein may want to add
11   something on each of the several things,
12   your Honor.
13            Thank you, first of all, for
14   your time.  I really appreciate it in the
15   middle of a deposition.  I know your
                    Page 72

124642.TXT

16    schedule is tight.

17              Secondly, your Honor, I just

18    wanted to make a comment:  After your July

19    11th ruling for Mr. Pappas to say they

20    promptly complied, here we are six weeks

21    later and we finally get Dr. Davis, but,

22    at any rate, your Honor, as far as the

23    substance goes, I want to read to you what

24    your Honor said.  It said, "You go

25    ahead..." -- this is your Honor

81

1

2    speaking  -- "You go ahead and give up

3    Dr. Davis again, but the questioning

4    should be limited to the newly produced

5    material or questions related to newly

6    produced material or questions that are

7    related to the I don't knows that emerge

8    during her individual deposition." That's

9    the basis, your Honor -- that is one of

10    the bases that we began asking Dr. Davis

11    about Waldheim and the fact that

12    Galanthamine was being used to treat

13    Alzheimer's long before Dr. Davis ever

14    came up with her idea.

15              The second concept is, your

16    Honor, there is -- a secondary

17    consideration under the law is also called

18    simultaneous invention, and we want to

Page 73

124642.TXT

19    probe her as representative to Synaptech
20    about the nature of the simultaneous
21    invention of using Galanthamine to treat
22    Alzheimer's.  It's certainly a fair topic
23    and certainly covered by our 30 (b) (6)
24    notice.
25            Your Honor, one other thing.

82

1
2            HON. JORDAN:  Hold on just a
3    minute.  Hold on just a minute.  I know
4    you have to have me on a speaker,
5    because  --
6            MR. GRACEY:  No, actually on I'm
7    on a handset.
8            HON. JORDAN:  Then I need you to
9    give me first the page cite ruling you
10    said I was -- you quote -- you quoted me
11    from July 11th.  What page were you
12    looking at?
13            MR. GRACEY:  Page 13, your
14    Honor, top of the page.
15            HON. JORDAN:  Let me get there
16    real quick.  Then, moving forward off of
17    that -- well, here's what I need you to
18    respond to.  I need you to respond to
19    first the specific assertion that you're
20    asking questions outside the 30 (b) (6)
21    notice and topic.  I mean, we'll get to
                    Page 74

124642.TXT

22    what I take is your alternative argument.

23    Maybe I'm wrong about this, but your other

24    argument was that my oral ruling was such

25    that you didn't have to stick with

83

1

2    topics.  If that's -- if that's one of

3    your arguments, we can deal with that

4    later.  But first I want you to address

5    the assertion that you are asking

6    questions outside the noticed topics.

7            MR. GRACEY:  Well, that is --

8    that assertion, with all due respect, is

9    incorrect.  As I pointed out, the

10   simultaneous invention is a secondary

11   consideration, and that is something that

12   we would like to probe and we are going to

13   produce to your Honor at the bench trial

14   testified that Waldheim, at very least,

15   simultaneously invented the use of --

16   using Galanthamine to treat Alzheimer's.

17           HON. JORDAN:  Which numbered --

18   I'm sorry, that is -- numbered topic are

19   you looking to say that -- asking this

20   about the Waldheim references within what

21   you put them on notice of?

22           MR. GRACEY:  Sure, your Honor.

23   That is topic 13, your Honor, and we don't

24   list out all the -- we list the case,

Page 75

124642.TXT

25    which is the John Deere case.  The topic

84

1
2    12 has the secondary consideration on
3    commercial success and topic 13 has all
4    the other secondary considerations other
5    than commercial success.
6              HON. JORDAN:  Okay.  Now, we'll
7    pursue this a little bit further, but I
8    also want you to answer the charge that
9    Mr. Pappas's made on this call, that he
10   asked you this same sort of question that
11   I'm asking, and you just wouldn't engage
12   in the discussion, where he was asking,
13   "So what topic exactly are you pointing
14   to?" and you folks just wouldn't respond
15   to that.
16             MR. GRACEY:  Your Honor, we
17   started out the deposition with about a
18   ten-minute conversation where Mr. Pappas
19   made his position known and we said we
20   believe at the outset of the deposition
21   any of the I don't knows that Bonnie gave,
22   Dr. Davis gave, in her personal deposition
23   were fair game.  He said he disagreed and
24   then there was -- I mean, once we had that
25   position, we already knew we may have to

Page 76

124642.TXT

85

1
2  come to your Honor, so when we were asking
3  the question we were asking, this was
4  under the gamut of the I don't knows and
5  he already made his position clear that he
6  was going to seek a protective order.  So
7  that's the reason.
8          And one other thing on that
9  note, your Honor.  Throughout these
10 depositions, Mr. Pappas has, and his
11 co-counsel have, been giving quite long
12 speaking objections, and, you know, it's
13 highly objectionable.  I would like some
14 guidance from your Honor on his
15 objections, whether they should be just to
16 form or whether he can give the long
17 speaking objections that he's been
18 giving.
19         With that being said, and
20 perhaps you can do that at the end of the
21 call, that's the context of the I don't
22 knows and the reason that they're -- I
23 mean we gave a proffer, I mean, at the
24 very beginning of the deposition.
25         HON. JORDAN:  All right.

86

1

124642.TXT

2          MR. PAPPAS:  Your Honor, may I

3  respond?

4          HON. JORDAN:  Yeah, briefly.

5          MR. PAPPAS:  First of all, your

6  Honor, there have been no speaking

7  objections.  There have been statements of

8  our position in an attempt to work this

9  discovery dispute out.  Second, your

10  Honor, when we served 30 (b) (6) notices

11  earlier in this case and asked the

12  defendants to produce witnesses on their

13  assertions of invalidity, I have that

14  other transcript, your Honor advised the

15  plaintiffs that those kinds of requests,

16  such as 13 in this notice, were far too

17  broad.  Your Honor directed me that if we

18  wanted to talk about specific issues, such

19  as nonobviousness, secondary indicia, we

20  were to tell the defendant what factors we

21  wanted to integrate a 30 (b) (6) about

22  with specificity, and we did that, your

23  Honor.

24          So, third, they've never made

25  simultaneously invention an issue in this

87

1

2  case, and your Honor can look throughout

3  the 30 topics.  There is no reference to

4  us producing a witness on alleged

Page 78

124642.TXT
5    simultaneous invention.  We've done our

6    best, your Honor, to prepare one woman to

7    testify on 30 topics, but they want to ask

8    her about anything they want to ask her

9    about.

10          HON. JORDAN:  All right.  I've

11   got -- I'm confident I have both side's

12   position here.

13          AlphaPharm, do you feel like you

14   need to weigh in here?

15          MR. BERNSTEIN:  Thank you, your

16   Honor.  Briefly, I hope.  It's always been

17   my understanding that when a side puts up

18   a 30 (b) (6) witness and the questioner

19   goes beyond the 30 (b) (6) topics -- and

20   I'm not saying this was done here -- that

21   the rulings are that the question should

22   still be answered if the witness can

23   answer them, and that's what I think

24   should apply here, and I said so on the

25   record:  Please allow the witness to

                                              88

1

2    answer the question and then, at the end

3    of the day, we'll sum up all those

4    instances where in this case Mr. Pappas

5    believes that we've gone beyond the

6    30 (b) (6), sum them all up and come to

7    your Honor on another day and say, here's

                    Page 79

124642.TXT

8  the situation, these are the -- these are

9  the questions which one side believes go

10  beyond the 30 (b) (6) and your Honor makes

11  a ruling, instead of having to stop as we

12  do here and spend all this time just on

13  the one question.

14         So, in other words, the witness

15  should be permitted to the answer the

16  question if he or she can, even if one

17  side believes that it's beyond the

18  30 (b) (6) topics.

19         HON. JORDAN:  Okay.

20         MR. PAPPAS:  And, your Honor,

21  you know, we disagree.  We're here, we

22  have a prepared witness prepared to give

23  the corporate position.

24         HON. JORDAN:  I gotcha.  You

25  don't have to --

89

1

2         MR. PAPPAS:  Thank you.

3         HON. JORDAN:  You don't need to

4  respond any further.  And, in fact, you're

5  about to win, so you can relax.  I'm

6  telling you that, all, that it is not

7  sufficient notice, in my view, to say the

8  indicia and then think that that covers

9  you if you're going to start pulling out

10  specific references and inquiring about

Page 80

124642.TXT
11    them.  That's just not -- that just isn't

12    fair notice, in my view.  That is such a

13    broad statement.  I mean, you might as

14    well have given her a notice that says,

15    come prepared to talk about why your

16    patent is or isn't valid.  And you

17    shouldn't expect the witness to come

18    prepared for that.

19             And, more to the point, and this

20    goes to the AlphaPharm position I've just

21    heard, it's not incumbent upon people to

22    show up at depositions and allow their

23    witnesses to testify without decent

24    preparation and then go back and try to

25    figure out whether it was objectionable or

                                                    90

1

2    not later.

3             I think any one of you attorneys

4    would be loath to set your client in front

5    of opposing counsel to be grilled on a

6    subject that they hadn't had a chance to

7    discuss with their own counsel and then

8    say, well, it's okay, because later we can

9    talk to the judge about it.  That's not

10   the way the system is supposed to work and

11   I think the plaintiffs are right to be

12   concerned that that's what's going on

13   here.

                    Page 81

124642.TXT

14          So I don't know enough about

15  what's going forward with the deposition

16  to know whether or not this is going to

17  keep everybody on the reservation, but I

18  can tell you that, based on this bit that

19  I've had so far, the defense is off the

20  reservation.  Certainly, when I spoke on

21  July 11th, I did not intend to override

22  the federal rules of civil procedure which

23  require you to give a notice of topics in

24  a 30 (b) (6) notice.  Nothing there was

25  meant to relieve you of the obligation to

91

1

2   give notice of what you intended to

3   inquire about.  To the extent you did give

4   notice, that's the scope within which you

5   have to operate and you should be talking

6   to each other and not refusing to talk to

7   each other about what that scope is when

8   you run into a difficulty.

9           So that if there's a sensible,

10  reasonable, rational relation between a

11  question and a noticed topic, I expect the

12  plaintiffs to sit back and let the witness

13  answer the question, and if the defense

14  can't point to that kind of a

15  relationship, the defense should not be

16  asking the question.  Pretty much, it's

Page 82

124642.TXT
17    that simple.

18              I'll reiterate:  To the extent

19    any of these 30 topics -- and I haven't

20    been sitting here reading through all of

21    them -- to the extent that any of them are

22    so broad that it really can't fairly be

23    said to give somebody notice of what

24    you're hitting them with, no, then

25    that's -- you can -- you can bank on

92

1

2    people sticking to this general rationale,

3    which is 30 (b) (6) witnesses have a right

4    to know the sorts of things you're going

5    to be inquiring into with sufficient

6    specificity to have been prepared to

7    discuss it.

8              MR. GRACEY:  You know, your

9    Honor, if I may.  Several things:  First,

10    it's just unbelievable that Bonnie Davis

11    doesn't know, isn't prepared to discuss

12    the nullity proceeding.  This was her very

13    invention that was being challenged and

14    successfully so to the point where they

15    had to reach a settlement.

16              That's the first issue, that she

17    does know this, they're afraid of it, they

18    don't want to talk about it, and they

19    haven't been able to talk about it or

124642.TXT
20    wanted to talk about it at her personal

21    dep or at this dep.

22           Secondly, with respect to this

23    topic, reason why we didn't lay out every

24    single topic, is because of the plaintiffs

25    refused to answer our interrogatories

93

1

2     until long into this case identifying what

3     secondary considerations they were relying

4     on.  These are the same plaintiffs who

5     wouldn't even identify what claim they

6     were asserting.  They wanted us to

7     identify at the beginning of the case what

8     claims we thought we infringed.  They're

9     just putting a horse behind -- in -- you

10    know, behind the cart, not in front of the

11    horse -- the cart and so --

12           HON. JORDAN:  I can't solve that

13    problem for you at this point.  If you had

14    come to me and said, judge, we can't frame

15    a 30 (b) (6) notice because they won't

16    tell us what they're relying on, or they

17    haven't answered something properly -- I

18    mean, you may have a valid gripe, but

19    that's not something that I can address in

20    this context, because the fair issue

21    before me is, are you asking questions

22    that are inside or outside the scope of

124642.TXT
23    what you noticed.

24              MR. GRACEY:  It is inside.

25              HON. JORDAN:  And when you say,


94


1

2     well, we think it's inside because we said

3     secondary considerations, I'm agreeing

4     with the plaintiff that that doesn't tell

5     somebody you're going to be talking about

6     a nullity proceeding from 1995.  If you

7     had wanted to ask about that, you should

8     have and certainly could have, if you say,

9     well, she knew about it, she had to know

10    about it, that tells me that you probably

11    knew about it too.  And if that's

12    something you wanted to ask about, you

13    should have put it in.

14              Look, I'm not -- I'm not looking

15    at this circumstance and saying that

16    anybody here is lily white and not

17    involved in gamesmanship.  I think there's

18    gamesmanship going on on both sides.

19    That's the message I'm getting here, that

20    you were maybe playing your cards close to

21    the vest, and maybe you have a legitimate

22    reason to a certain extent, or maybe you

23    were doing it because you wanted to have

24    the advantage of some surprise, but

25    whatever your motivations were, what I'm

124642.TXT

95

1
2    ruling on, and I hear you, you're unhappy
3    with it, you go ahead and reserve your
4    objection on the record, my ruling to you
5    is, if you had a problem with what their
6    discovery responses were and you thought
7    you couldn't properly notice the
8    deposition because of their failures,
9    that's something you could have and should
10   have brought up with me and with them
11   promptly.  You can't show up at the
12   deposition and say, "They should have
13   known this, certainly they knew about
14   this."
15            I'm not looking at this -- I'm
16   not looking at the Notice of Deposition
17   that you did send and seeing this fairly
18   noticed.  So if you feel like now we're
19   unfairly corralled because the plaintiffs
20   gamed us by not responding, I can only
21   answer you by saying that's something you
22   should have spoken to me about in the
23   course of trying to prepare a 30 (b) (6)
24   and said, hey, judge, we can't -- we can't
25   properly notice this deposition because

96

124642.TXT

1

2    they won't respond.  And I could have

3    dealt with it then.  But I can't deal with

4    it now while you've got the deponent in

5    the room and plaintiffs can tell me in a

6    way I think is persuasive, judge, it's

7    just not on the list they sent.

8           MR. GRACEY:  Your Honor, we did

9    bring it to your attention and you did

10   force them to answer the interrogatories.

11   So you did resolve that and you resolved

12   it in our favor.  But I just think this is

13   manifestly unfair, because they are

14   playing hide the ball, your Honor, and

15   this our last shot and this is going to be

16   grossly prejudicial to the defendants in

17   the preparation for their case.  We're not

18   allowed now to inquire about, from what

19   I'm hearing from you, this -- this

20   incredibly important issue in the case,

21   and it sounds like -- and I want to get a

22   clear record here.  Are you also ruling

23   that, therefore, we can't ask Dr. Davis,

24   as the corporate representative of

25   Synaptech, about the unexpected benefits,

97

1

2    about the long-felt need, about the

3    skepticism and -- skepticism and -- in the
          Page 87

124642.TXT

4    field and the failure of others, because

5    those are secondary considerations that

6    the plaintiffs are in as well?  And if

7    that's your ruling, then this deposition

8    has just become incredibly, incredibly

9    short.

10        HON. JORDAN:  I believe my

11   ruling is -- and, you're right, got to

12   have a clear record here, that this has to

13   be something they were fairly on notice

14   of.  So what --

15        MR. BERNSTEIN:  Your Honor, this

16   is Alan Bernstein.  I hope I didn't

17   interrupt you.  My concern is we're going

18   to go back in the deposition room and the

19   questions are going to be asked and

20   Mr. Pappas is going to say, that's outside

21   the scope of any of these topics, give me

22   and offer of why it is, and then we come

23   and say, well, it is because of A, B, C,

24   and he says, no, I disagree with you.  So

25   are we to come back to you on another

98

1

2    telephone call?

3        HON. JORDAN:  You know, if you

4    have to do that, you have to do that.  If

5    I've got to baby-sit the lawyers in this

6    case to get a deposition to move forward,

Page 88

124642.TXT

7    I'll do it.
8            MR. BERNSTEIN:  I appreciate
9    that.
10           HON. JORDAN:  I will say, it's
11   not common to have to do that, but, if
12   that's what's necessary, I will do it.
13   And if I have to reconvene the deposition
14   in my courtroom, I'll do it, but I'm
15   expecting counsel on all sides to behave
16   sensibly, and --
17           MR. BERNSTEIN:  I hear you.
18           HON. JORDAN:  -- and that's the
19   bottom line.  That ought to be clear.
20           Look, there are some things you
21   could probably say, reasonably, if both
22   sides are being reasonable, are within the
23   scope of this notice, including as
24   something as broad as secondary
25   considerations.

99

1
2            If there's something that's been
3    revealed in discovery that the parties
4    have discussed, that is something that's
5    been an issue and it's been going back and
6    forth in contention and interrogatories,
7    everybody knows, hey, well, we're talking
8    about commercial success here because
9    we've had things going back and forth on
                   Page 89

124642.TXT

10    that, and it's been an issue, it's been a
11    subject of dispute, it's been an issue
12    of  -- in other depositions, well, you
13    know, maybe you could fairly make the case
14    to me that people know that's in the
15    case.  They know it because it's been
16    discussed.  It's been --
17              MR. GRACEY:  But Waldheim is at
18    the center of this case.  Plaintiffs know
19    it, they're fighting us about giving us
20    documents about it.  They've been claiming
21    all kinds of privilege with respect to
22    Bonnie Dave's deposition and the whole
23    Waldheim nullity proceeding.  I would
24    challenge Mr. Pappas to tell you that they
25    don't know anything about the nullity

                                                100

 1
 2    proceeding, that Bonnie Davis doesn't know
 3    anything, that they don't know it's at the
 4    heart of the case, because that's not the
 5    case; it's at the heart of the case.  I
 6    just didn't spring this on her at this
 7    deposition.  She was asked about it in her
 8    personal deposition and pulled all these I
 9    don't knows or we got privilege objections
10    launched.
11              HON. JORDAN:  Well, I thought I
12    heard Mr. Pappas tell me a moment ago that
                      Page 90

124642.TXT

13    this has never been an issue in the case.

14    Maybe I misheard him.  But that's what I

15    thought I heard.

16         MR. PAPPAS:  Your Honor, what I

17    said, that never -- they did not put us on

18    notice.  They wanted to talk to us about

19    the nullity proceeding, and they've known

20    about it, so my point was is that if they

21    wanted to question about it, the 30 (b)

22    (6), they could have put it in the

23    notice.  That's what your Honor has told

24    us as a way to pave in the case so we know

25    how to prepare the witness. This is a

101

1

2    witness, your Honor, who has already been

3    deposed for 14 hours.

4         HON. JORDAN:  Well, guess what,

5    Mr. Pappas?  She might be deposed more

6    than that, because if it is in fact the

7    case that what they're telling me is that

8    nobody could be surprised by this, nobody

9    could reasonably be surprised by this, and

10    they'll get another crack at her.  So what

11    I'm trying to get you people to do is

12    behave within the rules, in a reasonable

13    fashion, so that evidence is on the

14    record.  That's what -- that's what the

15    aim of the federal rules is, that's my aim

Page 91

124642.TXT

16    here.  Ultimately, some fact finder is

17    going to have to sit down with you in a

18    courtroom.  Both sides are entitled to

19    explore the other side's position.

20        If you're right, Mr. Pappas,

21    that this is just out of left field,

22    nobody could have fairly considered what

23    came before this deponent today as

24    something that she should have been

25    prepared about, then they won't get

102

1

2    another crack on this issue.  And right

3    now, I'm telling you, on this nullity

4    thing, they don't get to pursue it further

5    today.  I don't have time to listen to you

6    two develop a record on that.

7        But I'm not prepared at all to

8    say that it's impossible that your witness

9    might be in the witness chair again if

10    it's apparent to me after further

11    development that your side is the one

12    that's being unreasonable in taking

13    positions.

14        See, you lived with this case,

15    every day, you folks.  I don't know how

16    many other cases you got, but obviously

17    this is one that's absorbing a lot of

18    people's time and effort and energy and

Page 92

124642.TXT

19    attention.

20            I want to do justice by you

21    people and your clients, considering how

22    much effort has gone into it.  On this

23    phone call, can I resolve all your

24    disputes?  No.  I can't.  Can I say that

25    looking at this record I don't see

103

1

2    something about a Waldheim reference or a

3    nullity proceeding, and, therefore, I feel

4    comfortable saying it wasn't noticed and

5    so you don't get it?  Yes.  I do feel

6    comfortable saying that.

7            Does that mean that if Bar can

8    come forward and say, wait, Judge, that's

9    just not fair because of all these other

10   things that happened before, which should

11   have put them on notice, if it could -- if

12   it's within the realm of possibility, that

13   your witness will be back testifying on

14   this point.  I won't make you have her

15   testify today unprepared on that point,

16   but I also won't say the subject is closed

17   now and forever, because if they make a

18   record before me that shows you folks

19   should have been prepared and you weren't,

20   and what I'm dealing with is hide the

21   ball, as they assert, then she will be
                    Page 93

124642.TXT

22    back.

23          So I hope everybody feels like

24    when they go back in the room they're a

25    little bit chastened and nobody feels like

104

1

2    they're sitting in the position of power

3    to just obstruct either, on one side, for

4    the plaintiffs, or to run rough-shod over

5    an unprepared witness on the other side.

6          MR. PAPPAS:  Your Honor, we

7    certainly, on behalf of plaintiff, we are

8    prepared to have Dr. Davis testify about

9    all these 30 topics.

10          HON. JORDAN:  And that's all she

11    has to do.

12          MR. PAPPAS:  And she's ready to

13    do that, your Honor.

14          HON. JORDAN:  Then you guys can

15    go back in this room and you can take this

16    deposition up and it shouldn't be a

17    problem.  And if you hit a problem, you

18    ought to be talking to each other how it's

19    within a 30 (b) (6), and we have to get

20    back on the phone today.  And if we have

21    to recess this and I have to require some

22    more detailed description of topics, I

23    guess we'll do that.

24          MR. BERNSTEIN:  Your Honor, Alan
                    Page 94

124642.TXT

25    Bernstein, again, quickly.

105

 1

 2            With reference to the seven-hour

 3    limit on depositions, would you please

 4    tell me if I'm correct in my belief that

 5    the time we spent in setting up this phone

 6    call and having it does not count toward

 7    the seven hours.

 8            HON. JORDAN:  Yes, you're

 9    correct.  That's deponent time.  And now

10    listen, speaking of conduct in

11    depositions, it is the custom and practice

12    in this court that depositions are not to

13    be a platform for speaking objections. If

14    you want to put a position on the record

15    and the other side has any concern that it

16    might affect the witness' testimony, you

17    can reserve that position until a time

18    when there's a break.  If it's crucial

19    that the position be put on immediately,

20    you can excuse the deponent from the room,

21    put it on the record and deal with it.

22    The objections ought to be limited to

23    specific statements that will signal the

24    court if and when I have to address the

25    admissibility of deposition testimony.

124642.TXT

106

1
2          So, the short of it is,
3    everybody ought to know that speaking
4    objections are out of bounds and they
5    ought not be going on.
6          So, as to the specific issue,
7    let's recap:  The Waldheim reference, the
8    nullity proceeding, unless and until the
9    folks on the defense side of the table can
10   persuade me that this is something that
11   it's a shock to them that nobody could
12   read this deposition notice and not
13   understand it was in there, you bear the
14   blame for that.  If you wanted it and you
15   knew about it, you should have had it in
16   the notice.  But I'm not cutting off your
17   ability to come back to me on that.
18          As to the rest of the deposition
19   issues, if you got 30 topics out there,
20   you go ahead and run with them.  And I
21   can't give you, I don't think, any better
22   effort and guidance than this.  I'm not
23   going to have a witness deposed on topics
24   that weren't fairly signaled as the
25   subject of discussion, nor will I tolerate

107

1

124642.TXT
2      an attempt to dodge issues that are
3      solidly in the case and were fairly
4      signaled to the other side.  And if we
5      have to have a whole other hearing to deal
6      with it and for people to take their
7      positions, I guess we'll go there.  But
8      I'm hoping we don't have to.  So, having
9      said that, I think that's about what I can
10     do for you for now.
11             MR. PAPPAS:  Thank you.
12             MR. BERNSTEIN:  Thank you, your
13     Honor.
14             MR. GRACEY:  Your Honor, I just
15     wanted to be clear, that, based on your
16     ruling, therefore, are we not allowed to
17     inquire Ms. Davis about any of the
18     secondary considerations of
19     nonobviousness, other than success -- I
20     need it clear on the record, your Honor.
21             MR. PAPPAS:  Your Honor, I can
22     address that and again resolve an issue
23     that hopefully you'll never have to take
24     up.
25             HON. JORDAN:  Why don't you see

                                                    108


1
2      what you can do.  I've tried to explain to
3      you, and maybe I haven't done it
4      effectively, that that is such a broad
                        Page 97

124642.TXT

5      topic that it could well be that you've

6      set it up in a way where I'm going to have

7      to rule against you on certain things.

8      However, if the other side and you are

9      able to agree that, yeah, this was in it,

10     then everybody knew this was in it based

11     on our previous exchanges, then you can

12     inquire about it.  So there's something

13     for you to discuss there.  And I can't

14     give the yes or no that you're pressing

15     for.

16             MR. GRACEY:  The reason I say

17     it's really not that broad, there's about

18     six secondary considerations other than

19     ground case, and so that it sounds like

20     there's -- this would encompass, you know,

21     40 topics in and of itself and it really

22     does that, but I just got to know whether

23     we're going to be allowed to go forward on

24     that or not.  And if we're not, we're not,

25     and we'll deal with that however we end up

109

1

2      dealing with it.  But if we are, I just

3      want Mr. Pappas to hear from your Honor,

4      here's what we are our allowed and here's

5      what we are not allowed to do.  And I want

6      the record clear, if we're not allowed to

7      discuss any of them, if that's the

Page 98

124642.TXT

8    ruling --

9            HON. JORDAN:  You've heard wrong

10   then.  So let me try to say it again.  I'm

11   aware of what the Graham secondary

12   consideration factors are.  What I've

13   tried to put you folks straight on is, I'm

14   not going to have you pull out references

15   to some foreign proceedings and say, oh,

16   this relates to this, and, therefore, it

17   is something they should have known about

18   in this context.  If you have questions

19   about those Graham factors, fine.  If you

20   have specific questions about documents

21   that are in the case and that the parties

22   have discussed and have been the subject

23   of previous interactions in such a way

24   that you can persuade me everybody knew

25   this was going to be in this deposition,

110

1

2    there's no way that a rational person

3    couldn't have fairly understood that, then

4    you can ask about it.

5            So you ought to ask your

6    questions, and if they're going to object,

7    you make them go on record as objecting

8    and you make your record.  So what I'm

9    telling you is, I can't at this point say,

10   well, the judge said I can't ask anything,

Page 99

124642.TXT

11    so I'll -- so that's done.  What I've

12    tried to tell you is, I can't give you

13    that definitive a ruling, because I don't

14    know what your course of discovery is.

15              I can tell you that your topic,

16    as a general statement, is so broad in

17    this context as to be problematic, and it

18    has caused a problem.  If you wanted the

19    Waldheim and the nullity stuff, you should

20    have noticed it.  It's too broad to say

21    it's covered by secondary considerations,

22    but that doesn't mean there may not be

23    other topics that fit within secondary

24    considerations that you can fairly ask

25    about.

111

1

2               So you go ahead and ask your

3     questions, you make him object, you guys

4     make your record, and we'll deal with it

5     when you've made your record. That's

6     definitive and clear for you now?

7               MR. GRACEY:  Yes.

8               HON. JORDAN:  Okay.  I will need

9     a copy of this transcript, so I'll ask the

10    court reporter and the parties to please

11    arrange, because I got the feeling that we

12    may have to revisit this.  And, if we do,

13    I'd like us all to be able, even though I

Page 100

124642.TXT
14    sense Bar's counsel's frustration here, he
15    feels this is about as clear as mud --
16    that may be the case -- I hope not -- but,
17    if it is, at least we're going to have the
18    muddy record before us, if we ever have to
19    get back together on this.
20              MR. PAPPAS:  We'll make sure,
21    your Honor, you get a copy.
22              MR. GRACEY:  I just feel that
23    Janssen and Synaptech are being awarded
24    for hiding the ball, and that's the game
25    they've been playing throughout this

                                              112

1
2    litigation.  I just -- that's the
3    frustration you're hearing.
4              MR. PAPPAS:  Your Honor, I have
5    to object to that.
6              HON. JORDAN:  Please don't.
7    There's enough time for you guys to talk
8    it out in front of me later.  You've got a
9    witness now, she's a busy lady probably,
10   she's, you know, not eager, I'm sure, to
11   wait while we are pointing the finger at
12   each other here.  Take it back in the
13   room, get done what you need to do, Bar,
14   make your record.  If you can persuade me
15   that, yeah, this has been hide the ball
16   and it's been unfair, I won't hesitate to
                    Page 101

124642.TXT

17   make them bring her back.

18          MR. GRACEY:  Thank, your Honor.

19          HON. JORDAN:  All right, we're

20   done.

21          (Telephone conference

22   terminates.)

23          (Time noted:  12:11 p.m.)

24          (Recess.)

25

113